## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>DAVID'S BRIDAL, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 18-12635 (LSS)<br><br>Jointly Administered |

### NOTICE OF COMMENCEMENT OF CASES
### UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

-AND-

### SUMMARY OF JOINT PREPACKAGED CHAPTER 11 PLAN AND NOTICE OF HEARING TO CONSIDER (A) ADEQUACY OF DISCLOSURE STATEMENT AND SOLICITATION PROCEDURES; (B) CONFIRMATION OF PLAN OF REORGANIZATION; AND (C) RELATED MATERIALS

**PLEASE TAKE NOTICE THAT:**

1. On November 19, 2018 (the "**Petition Date**"), David's Bridal, Inc. and its debtor affiliates, as debtors and debtors in possession (collectively, the "**Debtors**"), each commenced a case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"). On the Petition Date, the Debtors filed the *Joint Prepackaged Chapter 11 Plan of Reorganization under Chapter 11 of the Bankruptcy Code*, dated as of November 18, 2018 (the "**Prepackaged Plan**"),[2] and a disclosure statement for the Prepackaged Plan, dated as of November 18, 2018 (the "**Disclosure Statement**"), pursuant to sections 1125 and 1126(b) of the Bankruptcy Code.

**Prepackaged Plan and Disclosure Statement**

2. Copies of the Prepackaged Plan and the Disclosure Statement may be obtained free of charge by visiting the website maintained by the Debtors' voting agent, Donlin, Recano & Company, Inc. (the "**Voting Agent**" or "**Donlin**"), at www.donlinrecano.com/davidsbridal. Copies of the Prepackaged Plan and the Disclosure Statement may also be obtained by calling

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: David's Bridal, Inc. (4563); DB Investors, Inc. (8503); DB Holdco, Inc. (4567); and DB Midco, Inc. (3096). The location of the Debtors' corporate headquarters is 1001 Washington Street, Conshohocken, Pennsylvania 19428.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Prepackaged Plan.

the Voting Agent at (212) 771-1128 or sending an electronic mail message to DBvote@DonlinRecano.com.

3. The Prepackaged Plan provides for a reorganization transaction pursuant to which:

- All existing commitments under the Prepetition Term Loan Agreement will be terminated and each holder of an allowed Prepetition Term Loan Claim will receive its Pro Rata share of (i) the Takeback Term Loan, (ii) the Term Loan Stock Allocation and (iii) the right to participate in the Priority Exit Facility. The holders of Allowed Prepetition Term Loan Claims shall be deemed to have waived, and shall not receive any recovery on account of, any deficiency claim.

- The Debtors' Unsecured Notes will be cancelled and each holder of an Allowed Unsecured Notes Claim will receive its Pro Rata share of (i) the Unsecured Notes Stock Allocation and (ii) the Warrants.

- On the Effective Date, all Interests in DB Parent shall be cancelled. Subject to the reasonable consent of the Required Supporting Term Lender and the Crossover Holder, Interests in all other Debtors shall not be modified by the Plan, such that the Company's pre-bankruptcy corporate structure will be preserved.

- All Priority Non-Tax Claims, Other Secured Claims, Prepetition ABL Claims,[3] General Unsecured Claims (other than claims waived by the Supporting Sponsors) and Intercompany Claims and Intercompany Interests are unimpaired by the Plan and will be satisfied in full.

- Within sixty (60) days following the Effective Date, the Reorganized Debtors will adopt a post-restructuring management incentive plan (the "**Management Incentive Plan**"), under which up to ten percent (10%) of the New Common Stock (on a fully diluted basis) will be reserved for issuance as awards to members of the Reorganized Debtors' management.

4. Only holders of Claims in Class 4 (Prepetition Term Loan Claims) and Claims in Class 5 (Unsecured Notes Claims) are entitled to vote to accept or reject the Prepackaged Plan. All other classes of Claims or Interests were either presumed to accept or deemed to reject the Prepackaged Plan. On November 18, 2018, the Debtors commenced solicitation of votes to accept the Prepackaged Plan from the holders of Claims in Class 4 and Class 5 of record as of

---

[3] To the extent not previously refinanced by the DIP ABL Facility pursuant to a separate Bankruptcy Court order approving the Debtors' chapter 11 financing, all existing commitments under the Prepetition ABL Agreement will be terminated and each holder of an Allowed Prepetition ABL Facility Claim will receive Cash in the full amount of its Allowed Prepetition ABL Facility Claim from the proceeds of the Exit ABL Facility.

November 15, 2018. **The deadline for the submission of votes to accept or reject the Prepackaged Plan is December 18, 2018, at 5:00 p.m. (prevailing Eastern Time).**

**Combined Hearing**

5. A combined hearing to consider (a) the adequacy of (i) the Disclosure Statement and (ii) the solicitation procedures utilized in connection with the solicitation of votes to accept or reject the Prepackaged Plan (the "**Solicitation Procedures**") and (b) confirmation of the Prepackaged Plan, and any objections thereto, will be held before the Honorable Laurie Selber Silverstein, United States Bankruptcy Judge, in Courtroom #2 of the United States Bankruptcy Court, 824 Market Street, 6th Floor, Wilmington, Delaware 19801, **on January 4, 2019, at 1:30 p.m. (prevailing Eastern Time)** or as soon thereafter as counsel may be heard (the "**Combined Hearing**"). The Combined Hearing may be adjourned from time to time without further notice other than an announcement of the adjourned date or dates in open court or at the Combined Hearing, and notice of such adjourned date(s) will be available on the electronic case filing docket and the Voting Agent's website at www.donlinrecano.com/davidsbridal.

6. Any objections to the Disclosure Statement, the Solicitation Procedures, and/or confirmation of the Prepackaged Plan must: (a) be in writing; (b) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (c) state the legal and factual basis for and nature of any objection; (d) conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware; and (e) be filed with the Bankruptcy Court, together with proof of service, and served on the following parties so as to be received by **no later than December 21, 2018, at 5:00 p.m. (prevailing Eastern Time) (the "Plan/Disclosure Statement Objection Deadline"):**

   a. the Debtors, c/o David's Bridal, Inc., 1001 Washington Street, Conshohocken, PA 19428, Attn: Lori Cochran Kinkade;

   b. the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Timothy Fox (Timothy.Fox@usdoj.gov);

   c. proposed counsel to the Debtors, (i) Debevoise & Plimpton LLP, 919 Third Avenue, New York, NY 10022, Attn: M. Natasha Labovitz (nlabovitz@debevoise.com) and (ii) Young Conaway Stargatt & Taylor LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: Edmon Morton (emorton@ycst.com);

   d. counsel to the agent for the proposed debtor-in-possession lenders, (i) Morgan, Lewis & Bockius LLP, 101 Park Avenue, New York, NY 10178, Attn: Glenn Siegel (glenn.siegel@morganlewis.com) and (ii) Morgan, Lewis & Bockius LLP, One Federal Street, Boston, MA 02110, Attn: Matthew Furlong (matthew.furlong@morganlewis.com);

e. counsel to the ad hoc term lender group, Jones Day, 250 Vesey Street, New York, NY 10281, Attn: Scott J. Greenberg (sgreenberg@jonesday.com) and Michael J. Cohen (mcohen@jonesday.com);

f. counsel to Oaktree Capital Management, L.P., Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019, Attn: Alan Kornberg (akornberg@paulweiss.com) and John T. Weber (jweber@paulweiss.com);

g. counsel to the Supporting Sponsors, Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, DE 19801, Attn: Norman L. Pernick (npernick@coleschotz.com) and Kate Stickles (kstickles@coleschotz.com); and

h. counsel to Solace Capital Partners, L.P., (i) Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, NY 10004, Attn: Brad Eric Scheler (brad.scheler@friedfrank.com) and Peter B. Siroka (peter.siroka@friedfrank.com) and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 N Market St. #1800, Wilmington, DE 19801, Attn: Derek C. Abbott (dabbott@mnat.com).

**Section 341(a) Meeting**

7. A meeting of creditors pursuant to section 341(a) of the Bankruptcy Code (the "Section 341(a) Meeting") will be deferred until **February 4, 2019**. **If the Prepackaged Plan is confirmed by February 4, 2019, the Debtors will not convene a Section 341(a) Meeting.** If the Section 341(a) Meeting will be convened, the Debtors will file, serve on the parties on whom it served this notice, and post on the Voting Agent's website at www.donlinrecano.com/davidsbridal, not less than seven (7) days before the date scheduled for such meeting, a notice of the date, time, and place of such meeting. The meeting may be adjourned or continued from time to time by notice at the meeting, without further notice to creditors.

**Summary of the Prepackaged Plan[4]**

8. **Classification and Treatment.** A chart summarizing the treatment provided by the Prepackaged Plan to each class of Claims and Interests is included in **Annex A**.

---

[4] The statements contained herein are summaries of the provisions contained in the Disclosure Statement and the Prepackaged Plan and do not purport to be precise or complete statements of all the terms and provisions of the Prepackaged Plan or documents referred to therein. For a more detailed description of the Prepackaged Plan, please refer to the Disclosure Statement. Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Prepackaged Plan. The Prepackaged Plan provisions that relate to paragraphs 8-11 of this notice are set forth in **Annex A**.

01:23889133.1

4

9. **Treatment of Employee Contracts and Interests.** Pursuant to the Prepackaged Plan, the Debtors will assume all Employee Arrangements and all Benefit Plans existing as of the Petition Date and continue to honor obligations to employees in the ordinary course of business, except that any Interests in the Debtors granted to current or former employees, officers, directors, or contractors under any Employee Arrangement shall be deemed cancelled on the Effective Date. Any Other Interests granted prior to the Effective Date to a current or former employee, officer, director or contractor under an Employee Arrangement or otherwise shall be deemed cancelled on the Effective Date. For the avoidance of doubt, if a Benefit Plan or an Employee Arrangement is assumed and the Benefit Plan or Employee Arrangement provides in part for an award or potential award of Interests in the Debtors, such Benefit Plan or Employee Arrangement shall be assumed in all respects other than the provisions of such agreement relating to Interest awards.

10. **Releases. Please be advised that under the Prepackaged Plan, the following holders are deemed to have granted the releases contained in Section 10.6 of the Prepackaged Plan (as reflected on Annex A):**

   a. **holders of impaired Claims or Interests <u>except</u> those (I) deemed to reject the Prepackaged Plan or who voted to reject or abstained from voting on the Prepackaged Plan <u>and</u> (II) who have indicated on their ballot that they have opted out of granting the releases provided in the Prepackaged Plan; and**

   b. **holders of unimpaired Claims or Interests who do not timely object to the releases provided in the Prepackaged Plan by filing an objection with the Bankruptcy Court before the Plan/Disclosure Statement Objection Deadline. IF YOU DO NOT OBJECT TO THE RELEASES CONTAINED IN THE PREPACKAGED PLAN BY THE PLAN/DISCLOSURE STATEMENT OBJECTION DEADLINE, YOU WILL BE DEEMED TO HAVE CONSENTED TO SUCH RELEASES.**

**Election to withhold consent to the releases contained in the Prepackaged Plan is at the holder's option.**

11. The Prepackaged Plan also contains other release, discharge, and injunction provisions that may affect your rights.

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PREPACKAGED PLAN, INCLUDING THE DISCHARGE, INJUNCTION, RELEASE, AND EXCULPATION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.**

| Dated: | November 21, 2018<br>Wilmington, Delaware | */s/ Jaime Luton Chapman* |
|---|---|---|

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Robert S. Brady (No. 2847)
Edmon L. Morton (No. 3856)
Jaime Luton Chapman (No. 4936)
Tara C. Pakrouh (No. 6192)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Tel: (302) 571-6600
Fax: (302) 571-1253
Email: rbrady@ycst.com
emorton@ycst.com
jchapman@ycst.com
tpakrouh@ycst.com

-and-

**DEBEVOISE & PLIMPTON LLP**
M. Natasha Labovitz (admitted *pro hac vice*)
Nick S. Kaluk III (admitted *pro hac vice*)
Daniel E. Stroik (admitted *pro hac vice*)
919 Third Avenue
New York, New York 10022
Tel: (212) 909-6000
Fax: (212) 909-6836
Email: nlabovitz@debevoise.com
nskaluk@debevoise.com
destroik@debevoise.com

-and-

**DEBEVOISE & PLIMPTON LLP**
Craig A. Bruens (admitted *pro hac vice*)
801 Pennsylvania Avenue N.W.
Washington, D.C. 20004
Tel: (202) 383-8000
Fax: (202) 383-8118
Email: cabruens@debevoise.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

01:23889133.1

6

# Annex A

# Selected Prepackaged Plan Provisions

# Classification and Treatment Chart

| Class | Claim or Equity Interest | Treatment | Impaired or Unimpaired | Entitled to Vote on the Plan | Approx. Recovery[1] |
|---|---|---|---|---|---|
| 1 | Priority Non-Tax Claims | Except to the extent that a holder of an Allowed Priority Non-Tax Claim against any of the Debtors agrees to a less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Priority Non-Tax Claim, at the option of the Debtors (subject to the reasonable consent of the Required Supporting Term Lenders and the Crossover Holder) or the Reorganized Debtors, as applicable, (i) each such holder shall receive payment in Cash in an amount equal to the Allowed amount of such Claim, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is reasonably practicable, (ii) such holder's Allowed Priority Non-Tax Claim shall be Reinstated, or (iii) such holder shall receive such other treatment consistent with section 1129(a)(9) of the Bankruptcy Code so as to render such holder's Allowed Priority Non-Tax Claim Unimpaired. | Unimpaired | No (Presumed to accept) | 100% |
| 2 | Other Secured Claims | Except to the extent that a holder of an Allowed Other Secured Claim against any of the Debtors agrees to a less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Other Secured Claim, at the option of the Debtors (with the consent of the Required Supporting Term Lenders and the Crossover Holder) or the Reorganized Debtors, as applicable, on the later of the Effective Date and the date that is ten (10) Business Days after the date such Other Secured Claim becomes an Allowed Claim, or as soon thereafter as is reasonably practicable, each holder of an Allowed Other Secured Claim shall receive on account of such Allowed Claim (i) Cash in an amount equal to the Allowed amount of such Claim, (ii) Reinstatement of such holder's Allowed Other Secured Claim, or (iii) such other treatment sufficient to render such holder's Allowed Other Secured Claim Unimpaired. | Unimpaired | No (Presumed to accept) | 100% |

---

[1] The amounts and/or percentages set forth under Approximate Recovery are based on the range of reorganized equity value of the Debtors as described in the Valuation Analysis described in the Disclosure Statement. They represent the midpoint within the Debtors' range of estimated recoveries.

| Class | Claim or Equity Interest | Treatment | Impaired or Unimpaired | Entitled to Vote on the Plan | Approx. Recovery[1] |
|---|---|---|---|---|---|
| 3 | Prepetition ABL Claims | Except to the extent that a holder of an Allowed Prepetition ABL Claim agrees to a less favorable treatment of such Claim or has been indefeasibly paid in full in Cash at the default rate or "rolled up" or converted into DIP ABL Claims pursuant to the applicable DIP Order before the Effective Date, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Prepetition ABL Claim, on the Effective Date, each holder of an Allowed Prepetition ABL Claim shall (i) receive Cash in the full amount of its Allowed Prepetition ABL Claim and (ii) all issued and undrawn Letters of Credit (as defined in the Prepetition ABL Agreement) shall be replaced or cash collateralized in the amounts specified under the Prepetition ABL Agreement, from the proceeds of the Exit ABL Facility and the existing commitments under the Prepetition ABL Agreement shall be terminated. | Unimpaired | No (Presumed to accept) | 100% |
| 4 | Prepetition Term Loan Claims | Except to the extent that a holder of an Allowed Prepetition Term Loan Claim agrees to a less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Prepetition Term Loan Claim, on the Effective Date, each holder of an Allowed Prepetition Term Loan Claim shall receive its Pro Rata Share of (i) the Takeback Term Loan, (ii) the Term Loan Stock Allocation and (iii) the right to participate in the Priority Exit Facility (and receive the Supplemental Securities in accordance thereof). The holders of Allowed Prepetition Term Loan Claims shall be deemed to have waived, and shall not receive any recovery on account of, any deficiency claim. | Impaired | Yes | 70.8% |
| 5 | Unsecured Notes Claims | Except to the extent that a holder of an Allowed Unsecured Notes Claim agrees to a less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Unsecured Notes Claim, on the Effective Date, each holder of an Allowed Unsecured Notes Claim shall receive its Pro Rata share of (i) the Unsecured Notes Stock Allocation and (ii) the Warrants. | Impaired | Yes | 4.4% |
| 6 | General Unsecured Claims | Except to the extent that a holder of an Allowed General Unsecured Claim agrees to a less favorable treatment of such Claim or has been paid before the Effective Date, on and after the Effective Date, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Claim, (i) the Reorganized Debtors shall continue to pay or treat each Allowed General Unsecured Claim in the ordinary course of business as if the Chapter 11 Cases had never been commenced, or (ii) such holder will | Unimpaired | No (Presumed to accept) | 100% |

| Class | Claim or Equity Interest | Treatment | Impaired or Unimpaired | Entitled to Vote on the Plan | Approx. Recovery[1] |
|---|---|---|---|---|---|
| | | receive such other treatment so as to render such holder's Allowed General Unsecured Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code, in each case subject to all defenses or disputes the Debtors and the Reorganized Debtors may have with respect to such Claims, including as provided in Section 6.17 of the Plan; provided that, notwithstanding the foregoing, the Allowed amount of General Unsecured Claims shall be subject to and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable; *provided*, *further*, that the Supporting Sponsors holding General Unsecured Claims shall be deemed to have waived such Claims and shall not receive any distributions on account of such Claims. | | | |
| 7 | Intercompany Claims | On the Effective Date, or as soon as practicable thereafter, all Intercompany Claims shall be paid, adjusted, continued, settled, Reinstated, discharged, contributed to capital, or eliminated, in each case to the extent determined to be appropriate by the Debtors (with the consent of the Required Supporting Term Lenders and the Crossover Holder) or the Reorganized Debtors, as applicable, subject to the Restructuring Transactions. | Unimpaired | No (Presumed to accept) | 100% |
| 8 | Intercompany Interests | On the Effective Date, or as soon as practicable thereafter, all Intercompany Interests shall be Reinstated (i) subject to the reasonable consent of the Required Supporting Term Lenders and the Crossover Lenders and (ii) the Restructuring Transactions. | Unimpaired | No (Presumed to accept) | 100% |
| 9 | Parent Interests | Holders of Parent Interests shall not receive or retain any property under the Plan on account of such Parent Interests. On the Effective Date, or as soon as practicable thereafter, all Interests shall be deemed cancelled without further action by or order of the Bankruptcy Court, and shall be of no further force and effect, whether surrendered for cancellation or otherwise. | Impaired | No (Deemed to reject) | 0% |

## Select Defined Terms

"**Supporting Noteholder**" has the meaning ascribed to it in the Restructuring Support Agreement.

"**Exculpated Parties**" means each of the following solely in their capacities as such: (a) the Debtors; (b) the Reorganized Debtors; (c) each of the Restructuring Support Parties; and (d) with respect to each of (a) and (b), to the extent employed in such capacities on or after the Petition Date, each of their respective directors, officers, partners, managers, trustees, assigns, employees, agents, advisory board members, attorneys, financial advisors, investment bankers, accountants, consultants and other professionals or representatives.

"**Released Parties**" means each of, and solely in its capacity as such, (a) the Debtors or the Reorganized Debtors, (b) the DIP ABL Facility Agent, (c) the DIP ABL Secured Parties, (d) the DIP Term Loan Facility Agent, (e) the DIP Term Loan Secured Parties, (f) the Supporting Term Lenders, (g) the Crossover Holder, (h) the Supporting Noteholders, (i) the Supporting Sponsors, (j) the Unsecured Notes Indenture Trustee, (k) the Exit ABL Facility Agent, (l) the Priority Exit Facility Agent, (m) the Exit Facility Lenders, (n) the Takeback Term Loan Agent, (o) the Prepetition ABL Secured Parties, (p) the Prepetition Term Loan Secured Parties and (q) the Related Parties for each of the foregoing; *provided that*, Released Parties shall exclude any of the foregoing parties that do not (or are not deemed to) provide the releases under the Plan.

"**Releasing Parties**" means each of, and solely in its capacity as such, (a) the Debtors or the Reorganized Debtors, (b) the DIP ABL Facility Agent, (c) the DIP ABL Secured Parties, (d) the DIP Term Loan Facility Agent, (e) the DIP Term Loan Secured Parties, (f) the Supporting Term Lenders, (g) the Crossover Holder, (h) the Supporting Noteholders, (i) the Supporting Sponsors, (j) the Unsecured Notes Indenture Trustee, (k) the Exit ABL Facility Agent, (l) the Priority Exit Facility Agent, (m) the Exit Facility Lenders, (n) the Takeback Term Loan Agent, (o) the Prepetition ABL Secured Parties, (p) the Prepetition Term Loan Secured Parties and (q) all Holders of Claims or Interests (i) who vote to accept the Plan, (ii) who are Unimpaired under the Plan and do not timely object to the releases provided herein, (iii) whose vote to accept or reject the Plan is solicited but do not vote either to accept or to reject the Plan and do not opt out of granting the releases herein, or (iv) who vote to reject the Plan but do not opt out of granting the releases herein.

"**Reorganized Debtors**" means each of the Debtors, as reorganized on the Effective Date in accordance with the Plan, including any newly-formed Entity that is a transferee or successor thereto by merger, consolidation, transfer or otherwise pursuant to the Restructuring Transactions.

## Section 5.12 of the Prepackaged Plan: Employee Matters

(a)  Subject to Section 5.12(c) of the Plan, on the Effective Date, the Reorganized Debtors shall be deemed to have assumed all employee compensation plans, Benefit Plans, employment agreements, offer letters, or award letters to which any Debtor is a party (collectively, the "**Employee Arrangements**"); *provided that* notwithstanding anything contrary in the Employee

Arrangements, the consummation of the Plan shall not be treated as a change in control or change of control or other similar transaction under the Employee Arrangements.

(b)     Within sixty (60) days following the Effective Date, the New Board shall establish the Management Incentive Plan for members of the Reorganized Debtors' management. The participants and the amounts allocated under the Management Incentive Plan and other terms and conditions thereof shall be determined in the sole discretion of the New Board.

(c)     Any Parent Interests granted prior to the Effective Date to a current or former employee, officer, director or contractor under an Employee Arrangement or otherwise shall be deemed cancelled on the Effective Date. For the avoidance of doubt, if a Benefit Plan or an Employee Arrangement is assumed and the Benefit Plan or Employment Arrangement provides in part for an award or potential award of Interests in the Debtors, such Benefit Plan or Employment Arrangement shall be assumed in all respects other than the provisions of such agreement relating to Interest awards.

### Section 10.3 of the Prepackaged Plan: Discharge of Claims and Termination of Interests

**Upon the Effective Date and in consideration of the Distributions to be made hereunder, except as otherwise expressly provided herein, each holder (as well as any representatives, trustees, or agents on behalf of each holder) of a Claim or Interest and any affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights, and liabilities that arose prior to the Effective Date. Upon the Effective Date, all such Entities shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Interest in the Debtors against the Debtors, the Reorganized Debtors, or any of their assets or property, whether or not such holder has filed a proof of Claim and whether or not the facts or legal bases therefor were known or existed prior to the Effective Date.**

### Section 10.4 of the Prepackaged Plan: Term of Injunction or Stays

**Unless otherwise provided herein, the Confirmation Order, or in a Final Order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.**

### Section 10.5 of the Prepackaged Plan: Injunction

**(a)     Upon entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan in relation to any Claim or Interest extinguished, discharged or released pursuant to the Plan.**

**(b)** Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court or as agreed to by the Debtors and a holder of a Claim against or Interest in the Debtors, all Entities who have held, hold, or may hold Claims against or Interests in any or all of the Debtors (whether proof of such Claims or Interests has been filed or not and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, solely with respect to any Claims, Interests, and Causes of Action that will be or are extinguished, discharged, or released pursuant to the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) on account of or in connection with or with respect to any such Claims or Interests or against or affecting the Released Parties or the property of any of the Released Parties, (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Released Parties or the property of any of the Released Parties, (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Released Parties or the property of any of the Released Parties, (iv) asserting any right of setoff, directly or indirectly, against any obligation due the Released Parties or the property of any of the Released Parties, except as contemplated or allowed by the Plan; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

**(c)** By accepting Distributions pursuant to the Plan, each holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth in this Section 10.5.

**(d)** The injunctions in this Section 10.5 shall extend to any successors of the Debtors and the Reorganized Debtors and their respective property and interests in property.

**<u>Section 10.6(a) of the Prepackaged Plan: Releases by Debtors</u>**

Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, on and after the Effective Date, except for the right to enforce the Plan or any right or obligation arising under the Definitive Documents that remains in effect after the Effective Date, effective as of the Effective Date and to the fullest extent permitted by applicable law, for good and valuable consideration provided by each of the Released Parties, the adequacy of which is confirmed by this Plan, the Released Parties shall be deemed released and discharged by the Debtors, the Reorganized Debtors, and the Estates, and any person seeking to exercise the rights of the Estates, including any successors to the Debtors or any Estates representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, from any and all Claims, obligations, rights, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses, and

01:23889133.1

**liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Estates, whether known or unknown, asserted or unasserted, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, contingent or fixed, existing or hereinafter arising, in law, equity or otherwise, that the Debtors, the Reorganized Debtors, the Estates, or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Estates, the conduct of the Debtors' businesses, the Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the Debtors' restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the DIP ABL Facility Documents, the DIP Term Loan Documents, the DIP Orders, the Disclosure Statement, the Restructuring Support Agreement, any Restructuring Transactions and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), and the negotiation, formulation, or preparation thereof, the solicitation of votes with respect to the Plan, or any other act or omission, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including, without limitation, all Avoidance Actions;** *provided that* **nothing in this Section 10.6(a) shall be construed to release the Released Parties from gross negligence, willful misconduct or intentional fraud as determined by a Final Order.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the foregoing release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that such release is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims released thereby; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Estates asserting any Claim or Cause of Action released pursuant to such release.**

### Section 10.6(b) of the Prepackaged Plan: Releases by Holders of Claims or Interests

**Notwithstanding anything contained in the Plan to the contrary, on and after the Effective Date, except for the right to enforce the Plan or any right or obligation arising under the Definitive Documents that remains in effect after the Effective Date, effective as of the Effective Date and to the fullest extent permitted by applicable law, for good and valuable consideration provided by each of the Released Parties, the adequacy of which is confirmed by this Plan, the Releasing Parties are deemed to have fully, conclusively, absolutely and irrevocably released and discharged the Released Parties from any and all Claims, obligations, rights, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses, and liabilities whatsoever, including any derivative claims,**

**asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Estates, whether known or unknown, asserted or unasserted, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, contingent or fixed, existing or hereinafter arising, in law, equity or otherwise, that any such Releasing Party would have been legally entitled to assert (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Estates, the conduct of the Debtors' businesses, the Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the Debtors' restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Prepetition ABL Documents, the Prepetition Term Loan Documents, DIP ABL Facility Documents, the DIP Term Loan Documents, the DIP Orders, the Disclosure Statement, the Restructuring Support Agreement, any Restructuring Transactions and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), and the negotiation, formulation, or preparation thereof, the solicitation of votes with respect to the Plan, or any other act or omission, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including, without limitation, all Avoidance Actions; *provided that* nothing in this Section 10.6(a) shall be construed to release the Released Parties from willful misconduct or intentional fraud as determined by a Final Order.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the foregoing release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that such release is: (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise of the Claims released thereby; (5) in the best interests of the Debtors and all holders of Claims and Interests; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Debtors, the Reorganized Debtors, or the Estates asserting any Claim or Cause of Action released pursuant to such release.**

### Section 10.7 of the Prepackaged Plan: Exculpation

**Notwithstanding anything herein to the contrary, and to the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby released and exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, remedy, loss, and liability for any claim in connection with or arising out of the administration of the Chapter 11 Cases, the negotiation, formulation, preparation, and pursuit of the Disclosure Statement, the Restructuring Support Agreement, the transactions relating to the Debtors' restructuring, the Plan, or the solicitation of votes for, or confirmation of, the Plan, the funding or consummation of the Plan (including the Plan Supplement), the Definitive Documents, the**

**Restructuring Transactions, or any related agreements, instruments, or other documents, the solicitation of votes on the Plan, the offer, issuance, and Distribution of any Securities issued or to be issued pursuant to the Plan, whether or not such Distribution occurs following the Effective Date, the occurrence of the Effective Date, negotiations regarding or concerning any of the foregoing, or the administration of the Plan or property to be distributed under the Plan, except for actions determined by Final Order to constitute gross negligence, willful misconduct, or intentional fraud. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting such Exculpated Parties from liability. Nothing herein shall be deemed to be a release or waiver of the Reorganized Debtors' obligations under the Exit Facility Documents.**