## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>DAVID'S BRIDAL, INC., *et al.*,[1]<br><br>              Debtors. | Chapter 11<br><br>Case No. 18-12635 (LSS)<br><br>Jointly Administered<br><br>**Hearing Date: December 18, 2018 at 2:00 p.m. (EST)**<br>**Objection Deadline: December 11, 2018 at 4:00 p.m. (EST)** |

### DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO EMPLOY AND RETAIN EVERCORE GROUP L.L.C. AS INVESTMENT BANKER EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rules 2014-1 and 2016-2(h) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), (a) authorizing them to employ and retain Evercore Group L.L.C. ("**Evercore**") as their investment banker in accordance with the terms and conditions set forth in that certain engagement letter, dated as of April 3, 2018 (as amended on November 16, 2018, the "**Engagement Letter**"), a copy of which is attached as **Exhibit 1** to the Proposed Order, (b) approving the terms of Evercore's employment and retention, including the fee and expense structure and the indemnification, contribution, reimbursement and related provisions set forth in the Engagement Letter, (c) waiving certain informational requirements of Local Rule 2016-2 and

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: David's Bridal, Inc. (4563); DB Investors, Inc. (8503); DB Holdco, Inc. (4567); and DB Midco, Inc. (3096). The location of the Debtors' corporate headquarters is 1001 Washington Street, Conshohocken, Pennsylvania 19428.

(d) granting such other and further relief as is just and proper. In support of this Application, the Debtors submit the Declaration of Stephen Goldstein, a Senior Managing Director of Evercore (the "**Goldstein Declaration**"), which is attached hereto as **Exhibit B** and incorporated herein. In further support of this Application, the Debtors respectfully state as follows:

## Jurisdiction and Venue

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Debtors consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 327(a) and 328 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-2(h).

## Background

4.      The Debtors are an international bridal retailer and the leading U.S. destination for bridal gowns, wedding-related apparel, social occasion apparel, accessories and services.

5.      On November 19, 2018 (the "**Petition Date**"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. Each Debtor is authorized to continue to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no trustee, examiner or statutory committee has been appointed in these chapter 11 cases.

6.      Before the Petition Date, the Debtors entered into a restructuring support agreement (the "**Restructuring Support Agreement**") with (a) holders of approximately 85% of the approximately $481 million in outstanding principal amount of Prepetition Term Loans, (b) holders of approximately 97% of the $270 million in outstanding principal amount of Unsecured Notes and (c) the Debtors' principal equity holders, outlining the material terms for a joint prepackaged chapter 11 plan of reorganization (the "**Prepackaged Plan**").  The Prepackaged Plan provides for the restructuring of the Prepetition Term Loans and Unsecured Notes while leaving General Unsecured Claims unimpaired.

7.      The Debtors commenced the solicitation of votes of impaired creditors on the Prepackaged Plan before filing these chapter 11 cases.  On the Petition Date, the Debtors filed the Prepackaged Plan [Docket No.12] and the related disclosure statement [Docket No. 13] (the "**Disclosure Statement**").  The solicitation period for the Prepackaged Plan will remain open until December 18, 2018.  The Court has scheduled a combined hearing on January 4, 2019, to consider approval of the Disclosure Statement and confirmation of the Prepackaged Plan.

8.      Additional information regarding the Debtors, including their business operations, corporate and capital structure, and the events leading to the Petition Date, is more fully set forth in the *Declaration of Joan Hilson, Executive Vice President and Chief Financial and Operating Officer of the Debtors, in Support of First Day Pleadings* [Docket No. 19] (the "**First Day Declaration**").[2]

### Evercore's Qualifications

9.      The Debtors seek to retain Evercore as their investment banker because, among other things, Evercore has extensive experience and an excellent reputation in providing high

---

[2]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration or the Prepackaged Plan (as defined above).

quality investment banking services to debtors and creditors in bankruptcy reorganizations and other restructurings.

10.    Established in 1996, Evercore is a leading independent investment banking advisory and investment management firm.  Evercore's investment banking business includes its advisory business, which counsels multinational corporations on mergers and acquisitions, divestitures, special committee assignments, recapitalizations, restructurings and other strategic transactions.  In addition, through its investment banking business, Evercore provides capital markets advice, underwrites securities, raises funds for financial sponsors, and offers equity research and agency-only equity securities trading for institutional investors.  Evercore's investment management business includes private equity investing, institutional asset management and wealth management.  Evercore and its affiliates serve a diverse set of clients around the world from its offices in New York, Boston, Chicago, Los Angeles, Washington D.C., San Francisco, Houston, Minneapolis, Palo Alto, Menlo Park, Hong Kong, Singapore, London, Aberdeen, Mexico City, Monterrey, São Paulo and Rio de Janeiro.  Since its founding, Evercore's corporate advisory and restructuring advisory groups have advised on over $2.0 trillion of transactions.  Its restructuring professionals provide investment banking services in financially distressed situations, including advising debtors, creditors and other constituents in chapter 11 proceedings and out-of-court restructurings.

11.    Evercore and its professionals have extensive experience working with financially troubled companies from a variety of industries in complex financial restructurings, both out of court and in chapter 11 cases.  Evercore professionals have actively been retained as investment bankers in numerous cases, including, among others:  *In re Southeastern Grocers, LLC*, Case No. 18-10700 (Bankr. D. Del. April 23, 2018); *In re Tops Holding II Corp.*, Case No. 18-22279

(Bankr. S.D.N.Y. Mar. 22, 2018); *In re Fieldwood Energy* LLC, Case No. 18-30648 (Bankr. S.D. Tex. Mar. 8, 2018); *In re Pac. Drilling S.A.*, Case No. 17-131393 (Bankr. S.D.N.Y. Jan. 26, 2018); *In re Orchard Acquisition Co., LLC (J.G. Wentworth)*, Case No. 17-12914 (Bankr. D. Del. Jan. 5, 2018); *In re Castex Energy Partners, L.P.*, Case No. 17-35835 (Bankr. S.D. Tex. Dec. 4, 2017); *In re GulfMark Offshore, Inc.*, Case No. 17-11125 (Bankr. D. Del. June 15, 2017); *In re Vanguard Nat. Res., LLC*, Case No. 17-30560 (Bankr. S.D. Tex. Mar. 20, 2017); *In re Azure Midstream Partners, LP*, Case No. 17-30461 (Bankr. S.D. Tex. Mar. 10, 2017); *In re Am. Gilsonite Co.*, Case No. 16-12316 (Bankr. D. Del. Nov. 18, 2016); *In re CJ Holding Co.*, Case No. 16-33590 (Bankr. S.D. Tex. Sept. 12, 2016); *In re Midstates Petroleum Co., Inc.*, Case No. 16-32237 (Bankr. S.D. Tex. July 12, 2016); *In re Chaparral Energy, Inc.*, Case No. 16-11144 (Bankr. D. Del. June 10, 2016); *In re Ryckman Creek Res., LLC*, Case No. 16-10292 (Bankr. D. Del. Feb. 29, 2016); *In re Energy & Exp. Partners, Inc.*, Case No. 15-44931 (Bankr. N.D. Tex. Feb. 8, 2016); *In re Parallel Energy LP*, Case No. 15-12263 (Bankr. D. Del. Dec. 16, 2015); *In re The Great Atl. & Pac. Tea Co., Inc.*, Case No. 15-23007 (Bankr. S.D.N.Y. Aug. 11, 2015); *In re Altegrity, Inc.*, Case No. 15-10226 (Bankr. D. Del. March 16, 2015); *In re Mineral Park, Inc.*, Case No. 14-11996 (Bankr. D. Del. Sept. 23, 2014 & Oct. 2, 2014); *In re Energy Future Holdings Corp.*, Case No. 14-10979 (Bankr. D. Del. Sept. 16, 2014); *In re FAH Liquidating Corp. (Fisker Automotive)*, Case No. 13-13087 (Bankr. D. Del. March 31, 2014); *In re Synagro Technologies, Inc.*, Case No. 13-11041 (Bankr. D. Del. May 23, 2013); *In re Ormet Corp.*, Case No. 13-10334 (Bankr. D. Del. Apr. 18, 2013); *In re Otelco Inc.*, Case No. 13-10593 (Bankr. D. Del. Apr. 18, 2013); *In re RDA Holding Co.*, Case No. 13-22233 (Bankr. S.D.N.Y.  Mar. 25, 2013); *In re Inspiration Biopharmaceuticals, Inc.*, Case No. 12-18687 (Bankr. D. Mass. Dec. 19, 2012); *In re Broadview Networks Holdings, Inc.*, Case No. 12-13581 (Bankr. S.D.N.Y. Sept. 14,

2012); *In re Circus & Eldorado Joint Venture*, Case No. 12-51156 (Bankr. D. Nev. July 6, 2012); *In re Delta Petroleum Corp.*, Case No. 11-14006 (Bankr. D. Del. Jan. 11, 2012); *In re Trico Marine Servs., Inc.*, Case No. 10-12653 (Bankr. D. Del. Oct. 6, 2010); *In re CIT Group Inc.*, Case No. 09-16565 (Bankr. S.D.N.Y. Nov. 24, 2009); *In re General Motors Corp.*, Case No. 09-50026 (Bankr. S.D.N.Y. Oct. 28, 2009); *In re Lyondell Chem. Co.*, Case No. 09-10023 (Bankr. S.D.N.Y. Feb. 25, 2009); *In re PRC, LLC*, Case No. 08-10239 (Bankr. S.D.N.Y. Jan. 23, 2008); *In re Delphi Corp.*, Case No. 05-44481 (Bankr. S.D.N.Y. Oct. 8, 2005); *In re Northwest Airlines Corp.*, Case No. 05-17930 (Bankr. S.D.N.Y. Sept. 14, 2005); *In re Adelphia Commc'ns Corp.*, Case No. 02-41729 (Bankr. S.D.N.Y. June 25, 2002); *In re UAL Corp.*, Case No. 02-48191 (Bankr. N.D. Ill. Dec. 9, 2002); *In re ICH Corp.*, Case No. 02-10485 (Bankr. S.D.N.Y. Feb. 5, 2002).[3]

12.     The resources, capabilities and experience of Evercore in advising the Debtors are crucial to the Debtors' chapter 11 strategy.  An investment banker with a deep bench of experience, such as Evercore, fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals.  The Debtors require the services of a capable and experienced investment banker such as Evercore.

13.     Since its retention on April 3, 2018 and up to the Petition Date, Evercore provided extensive prepetition services to the Debtors in preparation for the Debtors' restructuring efforts, including assisting management in developing a long-range business plan, conducting extensive meetings and negotiations with the various parties in interest, facilitating extensive diligence for the various parties in interest, assisting in developing a communications plan and providing additional financial advice and investment banking services in preparation for the filing of these

---

[3]     Because of the voluminous nature of the orders cited in this Application, they are not attached to the Application.  Copies of these orders are available upon request to the Debtors' proposed counsel.

chapter 11 cases.  As a result, Evercore has acquired significant knowledge of the Debtors and their businesses and is intimately familiar with the Debtors' financial affairs, debt structure, business operations, capital structure, key stakeholders, financing documents and other related material information.  In providing prepetition services to the Debtors, Evercore has worked closely with the Debtors' senior management and their other advisors and has familiarity with the other major stakeholders that will be involved in these chapter 11 cases.  Further, Evercore, along with the Debtors' other advisors, was instrumental in designing an overall restructuring strategy and in negotiations with key stakeholders across the Debtors' capital structure regarding the restructuring contemplated by the Prepackaged Plan.  Accordingly, Evercore has developed relevant experience and expertise regarding the Debtors that (a) makes Evercore a natural selection as the Debtors' investment banker and (b) will assist Evercore in providing effective and efficient services in these chapter 11 cases.  Indeed, if the Debtors were required to retain an investment banker other than Evercore in connection with these chapter 11 cases, the Debtors, their estates and all parties in interest would be prejudiced by the time and expense necessary to familiarize another firm with the intricacies of the Debtors and their business operations.

## Services to Be Provided by Evercore

14.     The parties have entered into the Engagement Letter, which governs the relationship between the Debtors and Evercore.  The terms and conditions of the Engagement Letter were negotiated at arm's length and in good faith between the Debtors and Evercore and reflect the parties' mutual agreement as to the substantial efforts that will be required in this

engagement.  Under the Engagement Letter, in consideration for the compensation contemplated

thereby, Evercore has provided and has agreed to provide the following services:[4]

(a) Reviewing and analyzing the Company's business, operations and financial projections;

(b) Advising and assisting the Company in a Transaction, if the Company determines to undertake such a transaction;

(c) Providing financial advice in developing and implementing a Comprehensive Restructuring, which would include:

    i. Evaluating Transaction alternatives and the financial implications on the Company's capital structure and financial condition;

    ii. Assisting the Company in structuring and effecting any Transaction;

    iii. Advising the Company on tactics and strategies for negotiating with various stakeholders regarding any Transaction;

    iv. Acting as a dealer manager to the extent required;

    v. Assisting the Company in developing a restructuring plan or plan of reorganization, including a plan of reorganization pursuant to the Bankruptcy Code (any such plans are referred to generically herein as the "**Plan**");

    vi. Advising the Company on tactics and strategies for negotiating with various stakeholders regarding the Plan;

    vii. Providing testimony, as necessary, with respect to matters on which Evercore has been engaged to advise the Company in any proceedings under the Bankruptcy Code that are pending before a court (generically referred to herein as the "**Bankruptcy Court**") exercising jurisdiction over the Company as a debtor; and,

    viii. Providing the Company with other financial restructuring advice or other customary investment banking advice as Evercore and the Company may deem appropriate.

(d) If the Company pursues a Financing, assisting the Company in:

    i. Structuring and effecting a Financing;

---

[4] The summaries provided in this Application are provided for convenience only.  In the event of any inconsistency between any summary and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter shall control.  Capitalized terms used but not otherwise defined in the summaries of the Engagement Letter contained herein shall have the meanings ascribed to such terms in the Engagement Letter.

ii. Identifying potential Investors and, at the Company's request, contacting such Investors; and

iii. Working with the Company in negotiating with potential Investors.[5]

15.     The services that Evercore will provide to the Debtors are necessary to enable the Debtors to maximize the value of their estates.  The Debtors believe that the services will not duplicate the services that other professionals will be providing to the Debtors in these chapter 11 cases.  Specifically, Evercore will carry out unique functions and will use reasonable efforts to coordinate with the Debtors' other retained professionals to avoid the unnecessary duplication of services.

### Professional Compensation and Fee Applications

16.     In consideration of the services to be provided by Evercore, and as more fully described in the Engagement Letter, subject to the Court's approval, the Debtors have agreed to pay Evercore the proposed compensation set forth in the Engagement Letter (the "**Fee Structure**").  The principal terms of the Fee Structure include the following:

(a) A monthly fee (a "**Monthly Fee**") of $300,000, payable on April 3, 2018, and of $150,000 on the 1st day of each subsequent month until the earlier of the consummation of any Transaction or the termination of Evercore's engagement. After the payment of the first five (5) Monthly Fees, 50% of the Monthly Fees actually paid shall be credited (without duplication) against any Bank Amendment Fee, Exchange Offer Fee, Comprehensive Restructuring Fee, and/or Financing Fee (each defined below and each a "**Transaction Fee**"), that becomes payable under the Engagement Letter; provided, that, any such credit of fees contemplated by this sentence shall only apply to the extent that all such Monthly Fees and the Transaction Fee are approved in their entirety by the Bankruptcy Court pursuant to a final order not subject to appeal and which order is acceptable to Evercore.

---

[5] Nothing contained in the Engagement Letter shall constitute an express or implied commitment by Evercore to act in any capacity or to underwrite, place or purchase any financing or securities, which commitment, if any, shall be set forth in a separate underwriting placement or other appropriate agreement relating to a Financing.

(b) A fee (a "**Bank Amendment Fee**"), payable upon the consummation of any Bank Amendment, equal to 0.70% of the outstanding indebtedness of any affected Credit Facilities, including any outstanding letters of credit.

(c) A fee (an "**Exchange Offer Fee**"), payable upon the consummation of any Exchange Offer, equal to 1.25% of the aggregate principal amount of the Senior Notes exchanged in such Exchange Offer, including any Senior Notes repurchased contemporaneously as part of such exchange, redemption, or refinancing.

(d) A fee (a "**Comprehensive Restructuring Fee**"), payable upon the consummation of any Comprehensive Restructuring, equal to 1.00% of (i) the aggregate principal amount outstanding (including letters of credit) of the Credit Facilities and (ii) the aggregate principal amount of Senior Notes, in each case affected in such Comprehensive Restructuring. For the avoidance of doubt, if a Comprehensive Restructuring Fee is earned, no Bank Amendment Fee or Exchange Offer Fee shall be payable.

(e) A fee (a "**Financing Fee**"), payable upon consummation of any Financing and incremental to any Bank Amendment Fee, Exchange Offer Fee, and/or Comprehensive Restructuring Fee, equal to the applicable percentage(s), as set forth in the table below:

| Financing | As a Percentage of Financing Gross Proceeds[6] |
|---|---|
| Indebtedness Secured by a First Lien | 1.0% |
| Indebtedness Secured by a Junior Lien, Unsecured and/or Subordinated | 2.5% |
| Equity or Equity-linked Securities/Obligations | 4.0% |

(f) In addition to any fees that may be payable to Evercore and, regardless of whether any transaction occurs, the Company shall promptly reimburse to Evercore (i) all reasonable expenses (including travel and lodging, data processing and communications charges, courier services and other appropriate expenditures) and (ii) other documented reasonable fees and expenses, including expenses of counsel, if any.

(g) If Evercore provides services to the Company for which a fee is not provided in the Engagement Letter, such services shall, except insofar as they are the subject of a separate agreement, be treated as falling within the scope of this Agreement, and the Company and Evercore will agree upon a fee for such services based upon good faith negotiations.

---

[6] Gross proceeds shall include all amounts committed, whether or not drawn

(h) More than one fee may be payable to Evercore under the Engagement Letter (and as summarized in subparagraphs 16(b), 16(c), 16(d), and/or 16(e) above) in connection with any single transaction or a series of transactions, and the Company and Evercore have agreed that, if more than one fee becomes so payable to Evercore in connection with a series of transactions, each such fee shall be paid to Evercore.

(i) If a Transaction is to be completed through a pre-packaged Plan or similar pre-arranged Plan (i) $2,500,000 of the Comprehensive Restructuring Fees (described in subparagraph (d) above) shall be earned and shall be payable upon the execution of definitive agreements or delivery of binding consents with respect to such Plan and (ii) the remainder of fees outlined in such paragraph shall be earned and shall be payable upon consummation of such Plan; provided, further, that in the event that Evercore is paid a fee in connection with a pre-packaged Plan or similar pre-arranged Plan, and such Plan is not thereafter consummated, then such fee previously paid to Evercore may be credited by the Debtors against any subsequent fee that becomes payable by the Debtors to Evercore.

17.     As set forth in the Goldstein Declaration, Evercore has no agreement with any other entity to share with such entity any compensation received by Evercore in connection with the Debtors' bankruptcy cases, other than as permitted by Bankruptcy Code section 504.

### The Fee Structure is Appropriate and Reasonable and Should be Approved under Section 328(a) of the Bankruptcy Code

18.     The Debtors believe that the Fee Structure is comparable to those generally charged by investment bankers of similar stature to Evercore for comparable engagements, both in and out of bankruptcy proceedings, and reflects a balance between a fixed, monthly fee and a contingency amount, which is tied to the consummation and closing of the transactions contemplated by the Debtors and Evercore in the Engagement Letter.

19.     The Fee Structure summarized above and fully set forth in the Engagement Letter is consistent with Evercore's normal and customary billing practices for comparably sized and complex cases and transactions, both in- and out-of-court, involving the services to be provided in connection with these chapter 11 cases.  Moreover, the Fee Structure is consistent with and typical of arrangements entered into by Evercore and other investment banks in connection with

the rendering of comparable services to clients such as the Debtors. Evercore and the Debtors believe that the Fee Structure is both reasonable and market-based.

20. To induce Evercore to represent the Debtors, the Fee Structure was established to reflect the difficulty of the extensive assignments Evercore has undertaken and expects to undertake and to account for the potential for an unfavorable outcome resulting from factors outside of Evercore's control.

21. The Debtors and Evercore negotiated the Fee Structure to function as an interrelated, integrated unit, in correspondence with Evercore's services, which Evercore renders not in parts, but as a whole. It would be contrary to the intention of Evercore and the Debtors for any isolated component of the Fee Structure to be treated as sufficient consideration for any isolated portion of Evercore's services. Instead, the Debtors and Evercore intend that Evercore's services be considered as a whole that is to be compensated by the Fee Structure in its entirety.

22. Evercore's restructuring expertise, as well as its capital markets knowledge, financing skills and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of Evercore's engagement, were important factors in determining the Fee Structure. The ultimate benefit to the Debtors derived from the services provided by Evercore pursuant to the Engagement Letter cannot be measured by a reference to the number of hours expended by Evercore's professionals.

23. The Fee Structure has been agreed upon in anticipation that a substantial commitment of professional time and effort will be required of Evercore and its professionals and in light of the fact that (a) such commitment may foreclose other opportunities for Evercore and (b) the actual time and commitment required of Evercore and its professionals to perform its

services may vary substantially from week to week and month to month, creating "peak load" issues for Evercore.

24.     In light of the foregoing and given the numerous issues that Evercore may be required to address in the performance of its services pursuant to the Engagement Letter, Evercore's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Evercore's services for both in-court and out-of-court engagements of this nature, the Debtors believe that the Fee Structure is fair and reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

### Record Keeping and Applications for Compensation

25.     It is not the general practice of investment banking firms, including Evercore, to keep detailed time records similar to those customarily kept by attorneys and required by Local Rule 2016-2(d).  Because Evercore does not ordinarily maintain contemporaneous time records in tenth-hour (.10) increments or provide or conform to a schedule of hourly rates for its professionals, pursuant to Local Rule 2016-2(h), Evercore requests that it be excused from compliance with such information requirements set forth in Local Rule 2016-2(d) and from compliance with any Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals pursuant to section 331 of the Bankruptcy Code (an "**Interim Compensation Order**") with respect to Evercore's professional fees only. Evercore should be required to maintain time records in half-hour (0.50) increments, not decimal hours, setting forth, in a summary format, a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors.

26.     Evercore will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services.  Evercore's applications for

compensation and expenses will be paid by the Debtors pursuant to the terms of the Engagement Letter, in accordance with Local Rule 2016-2(e) and any applicable procedures established by the Court, pursuant to an Interim Compensation Order or otherwise.

### Payments to Evercore Prior to the Petition Date

27.      In connection with their prepetition engagement, the Debtors were required to pay Evercore certain monthly fees.  During the 90 days immediately preceding the Petition Date, Evercore received fee payments totaling $2,950,000 and expense reimbursement payments totaling $40,057.62, which includes $15,000 paid on account of anticipated expenses.  Other than as set forth herein, Evercore did not receive any payments from the Debtors during the 90 days immediately preceding the Petition Date.

28.      Within one year prior to the Petition Date, the Debtors paid Evercore $3,850,000 in fees and $71,167.90 in expense reimbursements for services rendered in connection with both the prepetition engagement and Evercore's engagement under the Engagement Letter, which includes the expense reimbursement reserve described in the immediately preceding paragraph.[7]

29.      As of the Petition Date, the Debtors did not owe Evercore for any fees or expenses incurred prior to the Petition Date.

### Indemnification Provisions

30.      Pursuant to Schedule I to the Engagement Letter, the Debtors have agreed, among other things, to indemnify, hold harmless and provide contribution and reimbursement to Evercore and its affiliates, counsel and other professional advisors, and the respective directors,

---

[7]      The amounts in this paragraph include $150,000.00 in fees and $9,142.50 in expense reimbursements for preliminary investment banking services rendered prior to the date of the Engagement Letter.

officers, controlling persons, agents and employees of each of the foregoing under certain circumstances.[8]

31.     The Debtors and Evercore believe that the indemnification provisions contained in Schedule I to the Engagement Letter are customary and reasonable for investment banking engagements, both in and out of court, and, as modified by the Proposed Order, reflect the qualifications and limitations on indemnification provisions that are customary in this district and other jurisdictions.  *See, e.g.*, *In re Southeastern Grocers, LLC*, Case No. 18-10700 (Bankr. D. Del. April 23, 2018); *In re Tops Holding II Corp.*, Case No. 18-22279 (Bankr. S.D.N.Y. Mar. 22, 2018); *In re Chaparral Energy, Inc.*, Case No. 16-11144 (Bankr. D. Del. June 10, 2016); *In re Energy & Exp. Partners, Inc.*, Case No. 15-44931 (Bankr. N.D. Tex. Feb. 8, 2016); *In re Energy Future Holdings Corp.*, Case No. 14-10979 (Bankr. D. Del. Sept. 16, 2014); *In re FAH Liquidating Corp. (Fisker Automotive)*, Case No. 13-13087 (Bankr. D. Del. March 31, 2014); *In re Synagro Technologies, Inc.*, Case No. 13-11041 (Bankr. D. Del. May 23, 2013); *In re Ormet Corp.*, Case No. 13-10334 (Bankr. D. Del. Apr. 18, 2013); *In re Otelco Inc.*, Case No. 13-10593 (Bankr. D. Del. Apr. 18, 2013); *In re RDA Holding Co.,* Case No. 13-22233 (Bankr. S.D.N.Y. Mar. 25, 2013); *In re CIT Group Inc.*, Case No. 09-16565 (Bankr. S.D.N.Y. Nov. 24, 2009); *In re General Motors Corp.*, Case No. 09-50026 (Bankr. S.D.N.Y. Oct. 28, 2009); *In re Lyondell Chem. Co.*, Case No. 09-10023 (Bankr. S.D.N.Y. Feb. 25, 2009).

32.     The terms and conditions of the Engagement Letter were negotiated by the Debtors and Evercore at arm's length and in good faith.  The Debtors respectfully submit that the

---

[8]     Schedule I to the Engagement Letter provides, in part, that the Debtors will indemnify and hold harmless Evercore and each Indemnified Person (as defined in the Engagement Letter) from and against any losses, claims or proceedings, directly or indirectly related to or arising out of Evercore's engagement, except to the extent that any such loss, claim, damage, liability or expense is finally judicially determined to have resulted primarily from such Indemnified Person's gross negligence, bad faith or willful misconduct.  To the extent that the description in this Application and the terms of Schedule I to the Engagement Letter are inconsistent, the terms of Schedule I to the Engagement Letter shall control.

indemnification, contribution, exculpation, reimbursement and other provisions contained in Schedule I to the Engagement Letter, viewed in conjunction with the other terms of Evercore's proposed retention, are reasonable and in the best interests of the Debtors, their estates and creditors in light of the fact that the Debtors require Evercore's services to successfully reorganize. Accordingly, as part of this Application, the Debtors request that the Court approve the Engagement Letter.

## **Basis for Relief**

33. The Debtors seek authority to employ and retain Evercore as their investment banker under section 327 of the Bankruptcy Code, which provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the Debtors in carrying out their duties under this title." 11 U.S.C. § 327(a). Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy Code and provides that "a person is not disqualified for employment under section 327 of the Bankruptcy Code by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

34. In addition, the Debtors seek approval of the Engagement Letter (including, without limitation, the Fee Structure and the indemnification provisions in Schedule I) pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327. . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. . . ." 11 U.S.C. § 328(a). Section 328 of the Bankruptcy Code permits the compensation of professionals, including investment bankers, on more flexible terms that reflect the nature of

their services and market conditions.  As the United States Court of Appeals for the Fifth Circuit

recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum*

*Co.)*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to
> work for bankruptcy estates where their compensation would be
> subject to the uncertainties of what a judge thought the work was
> worth after it had been done.  That uncertainty continues under the
> present § 330 of the Bankruptcy Code, which provides that the
> court award to professional consultants "reasonable compensation"
> based on relevant factors of time and comparable costs, etc.  Under
> present § 328 the professional may avoid that uncertainty by
> obtaining court approval of compensation agreed to with the
> trustee (or debtor or committee).

*Id.* at 862 (citations omitted), *cited in Riker, Danzig, Scherer, Hyland & Perretti LLP v. Official*

*Comm. of Unsecured Creditors (In re Smart World Techs. LLC)*, 383 B.R. 869, 874

(S.D.N.Y. 2008).  Owing to this inherent uncertainty, courts have approved similar arrangements

that contain reasonable terms and conditions under section 328 of the Bankruptcy Code.  *See,*

*e.g.*, *In re Chaparral Energy, Inc.*, Case No. 16-11144 (Bankr. D. Del. June 10, 2016); *In re*

*Energy & Exp. Partners, Inc.*, Case No. 15-44931 (RFN) (Bankr. N.D. Tex. Feb. 8, 2016).

35.    Furthermore, the Bankruptcy Abuse Prevention and Consumer Protection Act of

2005 amended section 328(a) of the Bankruptcy Code, which now provides as follows:

> The trustee, or a committee appointed under section 1102 of this
> title, with the court's approval, may employ or authorize the
> employment of a professional person under section 327 or 1103 of
> this title, as the case may be, on any reasonable terms and
> conditions of employment, including on a retainer, on an hourly
> basis, *on a fixed or percentage fee basis*, or on a contingent fee
> basis.

11 U.S.C. § 328(a) (amendment emphasized).  This change makes clear that the Debtors are able

to retain a professional on a fixed or percentage fee basis, such as the Fee Structure, with

bankruptcy court approval.

36.     The Engagement Letter appropriately reflects (a) the nature and scope of services to be provided by Evercore, (b) Evercore's substantial experience with respect to investment banking services and (c) the fee structures typically utilized by Evercore and other leading investment bankers that do not bill their clients on an hourly basis.

37.     Similar fixed and contingency fee arrangements have been approved and implemented by courts in other large chapter 11 cases. *See, e.g.*, *In re Southeastern Grocers, LLC*, Case No. 18-10700 (Bankr. D. Del. April 23, 2018); *In re Tops Holding II Corp.*, Case No. 18-22279 (Bankr. S.D.N.Y. Mar. 22, 2018); *In re Fieldwood Energy* LLC, Case No. 18-30648 (Bankr. S.D. Tex. Mar. 8, 2018); *In re Pac. Drilling S.A.*, Case No. 17-131393 (Bankr. S.D.N.Y. Jan. 26, 2018); *In re Orchard Acquisition Co., LLC (J.G. Wentworth)*, Case No. 17-12914 (Bankr. D. Del. Jan. 5, 2018); *In re Castex Energy Partners, L.P.*, Case No. 17-35835 (Bankr. S.D. Tex. Dec. 4, 2017); *In re GulfMark Offshore, Inc.*, Case No. 17-11125 (Bankr. D. Del. June 15, 2017); *In re Vanguard Nat. Res., LLC*, Case No. 17-30560 (Bankr. S.D. Tex. Mar. 20, 2017); *In re Azure Midstream Partners, LP*, Case No. 17-30461 (Bankr. S.D. Tex. Mar. 10, 2017); *In re Am. Gilsonite Co.*, Case No. 16-12316 (Bankr. D. Del. Nov. 18, 2016); *In re CJ Holding Co.*, Case No. 16-33590 (Bankr. S.D. Tex. Sept. 12, 2016); *In re Midstates Petroleum Co., Inc.*, Case No. 16-32237 (Bankr. S.D. Tex. July 12, 2016); *In re Chaparral Energy, Inc.*, Case No. 16-11144 (Bankr. D. Del. June 10, 2016); *In re Energy & Exp. Partners, Inc.*, Case No. 15-44931 (Bankr. N.D. Tex. Feb. 8, 2016); *In re Parallel Energy LP*, Case No. 15-12263 (Bankr. D. Del. Dec. 16, 2015); *In re The Great Atl. & Pac. Tea Co., Inc.*, Case No. 15-23007 (Bankr. S.D.N.Y. Aug. 11, 2015); *In re Altegrity, Inc.*, Case No. 15-10226 (Bankr. D. Del. March 16, 2015); *In re Energy Future Holdings Corp.*, Case No. 14-10979 (Bankr. D. Del. Sept. 16, 2014); *In re Broadview Networks Holdings, Inc.*, Case No. 12-13581 (Bankr. S.D.N.Y. Sept. 14, 2012);

*In re Circus & Eldorado Joint Venture*, Case No. 12-51156 (Bankr. D. Nev. July 6, 2012); *In re Delta Petroleum Corp.*, Case No. 11-14006 (Bankr. D. Del. Jan. 11, 2012); *In re Trico Marine Servs., Inc.*, Case No. 10-12653 (Bankr. D. Del. Oct. 6, 2010); *In re CIT Group Inc.*, Case No. 09-16565 (Bankr. S.D.N.Y. Nov. 24, 2009); *In re General Motors Corp.*, Case No. 09-50026 (Bankr. S.D.N.Y. Oct. 28, 2009); *In re Lyondell Chem. Co.*, Case No. 09-10023 (Bankr. S.D.N.Y. Feb. 25, 2009). Accordingly, the Debtors believe that Evercore's retention on the terms and conditions proposed herein is appropriate.

### Evercore's Disinterestedness

38.     To the best of the Debtors' knowledge and except to the extent disclosed herein and in the Goldstein Declaration: (a) Evercore is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code and does not hold or represent an interest materially adverse to the Debtors' estates; and (b) Evercore has no connection to the Debtors, their creditors or other parties in interest in these chapter 11 cases.

39.     As set forth in further detail in the Goldstein Declaration, Evercore has certain connections with creditors, equity security holders and other parties in interest in these chapter 11 cases. All of these matters, however, are unrelated to these chapter 11 cases. The Debtors and Evercore do not believe that any of these matters represent an interest materially adverse to the Debtors' estates or otherwise create a conflict of interest regarding the Debtors or these chapter 11 cases.

40.     To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of Evercore's retention are discovered or arise, Evercore will use reasonable efforts to file promptly a supplemental declaration, as required by Bankruptcy Rule 2014(a).

01:23913292.1

## **Notice**

41.     The Debtors will provide notice of this application to: (a) the Office of the United States Trustee for the District of Delaware; (b) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims; (c) counsel to the lenders and agent under the Debtors' prepetition ABL facility; (d) counsel to the ad hoc term loan lender group; (e) counsel to Oaktree Capital Management, L.P.; (f) counsel to the agent under the Debtors' prepetition term loan facility; (g) counsel to the lenders and agent under the Debtors' postpetition DIP ABL facility; (h) counsel to the lenders and agent under the Debtors' postpetition DIP term loan facility; (i) the indenture trustee for the Debtors' outstanding bond issuance; (j) each of the counsel to the parties to the Restructuring Support Agreement, dated as of November 18, 2018; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

## **No Prior Request**

42.     No prior application for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **<u>Exhibit A</u>**: (<u>i</u>) granting the relief sought herein; and (<u>ii</u>) granting to the Debtors such other and further relief as the Court may deem proper.

Dated: November 29, 2018
      Conshohocken, Pennsylvania

Respectfully submitted,


*/s/ Joan Hilson*
Joan Hilson
Executive Vice President and Chief Financial and
Operating Officer of each of the Debtors