IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| DAVID'S BRIDAL INC., *et al.*, | ) ) ) | Case No. 18-12635 (LSS) |
| Debtors. | ) ) ) ) ) ) ) ) ) ) | Jointly Administered<br>**Related to Docket Nos. 138, 12 and 13**<br>**Objection Deadlines:**<br>**December 14, 2018 (Assumption Notice)**<br>**December 21, 2018 (Plan and Disclosure)**<br>**Hearing Date: January 4, 2019 at 1:30 p.m.**<br>**(Plan and Disclosure)** |

**WEINGARTEN'S LIMITED OBJECTION TO (1) NOTICE OF ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF DEBTORS AND RELATED PROCEDURES, (2) JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, AND (3) DISCLOSURE STATEMENT FOR THE JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Landlords Weingarten Nostat, Inc. ("WNI") and Weingarten/Miller/Aurora II LLC and GDC Aurora, LLC, as tenants in common ("WMA"), for which Weingarten Realty Investors serves as managing agent (collectively, "Weingarten"), object, to the extent set forth herein, to:

(i) the *Notice of Assumption of Executory Contracts and Unexpired Leases of Debtors and Related Procedures* [D.I. 138] (the "Assumption Notice");

(ii) the *Joint Prepackaged Chapter 11 Plan of Reorganization under Chapter 11 of the Bankruptcy Code* [D.I. 12] (the "Plan"); and to

(iii) the *Disclosure Statement for Joint Prepackaged Chapter 11 Plan of Reorganization under Chapter 11 of the Bankruptcy Code* [D.I. 13] (the "Disclosure Statement").

Subject to satisfactory resolution of the issues raised below, and any others that may arise or which it may raise, Weingarten generally does not oppose Debtors' assumption of leases or confirmation of the Plan.

## BACKGROUND

*The Bankruptcy Cases*

1. Debtors, David's Bridal, Inc., *et al.* (the "Debtors"), commenced the captioned cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on November 19, 2018 (the "Petition Date").

2. On the Petition Date, the Debtors filed the Plan and Disclosure Statement; and a combined hearing on the adequacy of the Disclosure Statement and confirmation of the Plan is set for January 4, 2019.

3. The Plan provides for deemed assumption of leases; and the Debtors have stated it is their intention to assume all of their unexpired non-residential real property leases. *See* Plan at § 8.1; and *Debtors' Motion for Entry of an Order Extending Time to Assume or Reject Unexpired Leases of Nonresidential Real Property* [D.I. 141] ¶¶ 9-10.

4. On November 30, 2018, the Debtors filed the Assumption Notice, which requires he filing of all assumption related objections by December 14, 2018.

*Weingarten's Leases with David's Bridal*

5. WNI is lessor of non-residential real property to Debtor David's Bridal, Inc. ("David's Bridal") located at 7135 East Camelback Road, Suite 105, Scottsdale, AZ 85251, pursuant to that certain unexpired Shopping Center Lease dated September 16, 2009, as amended (the "Scottsdale Lease"). A true and correct copy of the Scottsdale Lease, including amendatory and related change of ownership documents, is attached as **Exhibit A**.

6. WMA is lessor of non-residential real property to David's Bridal located at the Aurora City Place Shopping Center, 100 S. Abilene, Unit B, Aurora, CO 80012, pursuant to that certain unexpired Lease Contract dated October 1, 2002, as amended (the "Aurora Lease" and

together with the Scottsdale Lease, the "Unexpired Leases"). A true and correct copy of the Aurora Lease, including amendments, is attached as **Exhibit B**.

7. The current base monthly rent amounts due under the Unexpired Leases are $19,701.50 for the Scottsdale Lease, and $13,996.41 for the Aurora Lease. In addition, among all of the obligations of David's Bridal under the Unexpired Leases, it is obligated:

    (i)    under the Aurora Lease, to:

        \*    pay its share of the "Common Area Operating Costs" (as defined in the Aurora Lease) of the Aurora Shopping Center, as additional rent, *see* § 22.01;

        \*    pay for its own utilities, *see* § 5.01; and

        \*    maintain certain required insurance policies, *see* § 12.04; and

    (ii)    under the Scottsdale Lease, to:

        \*    pay percentage rent on gross sales;[1]

        \*    pay its own tax obligations, *see* § 7;

        \*    maintain certain required insurance policies, *see* § 8.3;

        \*    maintain the leased premises, *see* § 11.1; and

        \*    pay for its utility usage, *see* § 12.1.

8. Both the Aurora Lease and the Scottsdale Lease authorize, but do not obligate, WMA and WNI to make payment relating to any unperformed tax, utility, insurance and maintenance obligations and/or to cure any default of David's Bridal with respect thereto. *See e.g.,* Aurora Lease at § 16.02; Scottsdale Lease at §§ 8.3. 11.1, 12.1 and 22.2(f). Some of the

---

[1] See Assignment and Assumption of, and Amendment to, Lease, and Landlord's Consent dated as of March 30, 2012 and attached in **Exhibit A** with the Scottsdale Lease.

foregoing obligations are not necessarily known to Weingarten "in real time" and may not become known as issues (*i.e.*, defaults that require curing or for which Weingarten might have the right to pay and recover from David's Bridal). Some may involve periodic reporting and reconciliation procedures.[2]

9. In addition, each of the Unexpired Leases requires David's Bridal to indemnify Weingarten for tort and other claims related to acts or omissions which may have occurred to date (or which may occur hereafter), which acts or omissions and such resulting indemnifiable claims may not be known to Weingarten at this time. *See* the Aurora Lease at § 12.01 and the Scottsdale Lease at § 8.4.

10. These kinds of obligations under the Unexpired Leases (hereafter, collectively, the "Inchoate Obligations"), technically may have accrued to date and may continue to accrue, but may not yet be known, and/or may not yet be due and payable, and/or may not be due and payable as of the date set for the hearing on confirmation of the Plan.[3]

## OBJECTIONS

**1. The Plan Cannot Provide for Post-Confirmation Assumption or Rejection of Leases**

11. The Plan generally provides for the deemed assumption of leases with certain exceptions.[4] Assumption of a lease is to occur "[a]s of and subject to the occurrence of the Effective Date."[5] Confirmed plans usually do not become effective until sometime after (and sometimes well after) entry of a confirmation order; thus, Weingarten assumes that this provision

---

[2] For example, under the Scottsdale Lease, David's Bridal has 20 days after the end of each quarter and 30 days after each year to report gross sales, upon which percentage rent is calculated.

[3] As of the Petition Date, there were no billed but unpaid amounts due in connection with the Aurora Lease, and there was $965.69 in billed and unpaid amounts due in connection with the Scottsdale Lease. In addition, each of the Unexpired Leases provides for recovery of attorneys' fees, costs and other expenses in connection with the enforcement of the landlord's rights and the tenant's obligations thereunder.

[4] *See* Plan at § 8.1(a).

[5] *Id*.

means (and submits that under applicable law, it must mean) that although the <u>final</u> decision about assumption of a lease will be made by the Confirmation Date,[6] such assumption will not become technically "final" until the occurrence of the Effective Date along with, and when, all other Plan provisions become final and binding.

12. Weingarten submits in this regard that the Plan cannot contain any provision that would allow the Debtors to "change their minds" about assumption after the Confirmation Date, so long as the Plan confirmed on the Confirmation Date becomes effective, especially in the context of any post-confirmation dispute over cure issues, as allowing such is both contrary to bankruptcy law and may improperly and inequitably impact the resolution such cure issues.

13. To be confirmable a plan must comply with all applicable provisions of Title 11.[7] Section 1123 of the Bankruptcy Code provides that a plan may, "subject to section 365," provide for the assumption or rejection of contracts and leases.[8] Section 365 of the Bankruptcy Code provides that Debtors have until the earlier of "(i) … 120 days after the date of the order for relief [subject to the 90 day extension contemplated in section 365(d)(4)]; or (ii) the date of the entry of an order confirming a plan" to assume or reject.[9]

14. However, subparagraph (iii) of §8.1(a) of the Plan, with respect to "an Assumption Dispute" makes the Plan at best unclear with respect to the Debtors' intent, and

---

[6] Capitalized terms not defined herein have the meanings given to them in the Plan. The Confirmation Date under the Plan is the date on which the Confirmation Order is entered. *See* Plan § 1.20.

[7] 11 U.S.C. § 1129(a)(1).

[8] 11 U.S.C. § 1123(b)(2).

[9] 11 U.S.C. § 365(d)(4). *See, e.g., NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 529 (1984) ("In a Chapter 11 reorganization, a debtor-in-possession has until a reorganization plan is confirmed to decide whether to accept or reject an executory contract, although a creditor may request the Bankruptcy Court to make such a determination within a particular time."); *see also Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 46 (2008) ("We agree with Bildisco's commonsense observation that the decision whether to reject a contract or lease must be made before confirmation."); *University Medical Center v. Sullivan*, 125 B.R. 121, 124 (E.D. Pa. 1991) ("A debtor under Chapter 11 must elect to assume or reject any executory contract by the time a reorganization plan is confirmed . . . ").

5

obligation, to assume or reject by the Confirmation Date; and, to the extent the Debtors seek to bake a "change of mind" proviso into the Plan based on an Assumption Dispute that is not resolved in their subjective favor, renders the Plan contrary to the Debtors' obligations under sections 1129(a)(1), 1123 and 365, and not confirmable.[10]

15. The Plan defines an Assumption Dispute as:

> [A]n objection or dispute relating to assumption of an executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, including to any Cure Amount or adequate assurance of future performance under an executory contract or unexpired lease to be assumed, which objection or dispute has been timely filed or interposed in accordance with the Plan and applicable law and has not been withdrawn or determined by a Final Order.

*See* Plan at § 1.5.

16. Accordingly, either to the extent the "[a]s of and subject to the occurrence of the Effective Date" language and/or the Assumption Dispute provision and/or any other provision of the Plan seeks to keep rejection "alive" as a possibility after the Confirmation Date, Weingarten objects to the assumption procedures set forth in the Plan, and to the Assumption Notice, and submits the Plan cannot be confirmed if it contains such procedures.[11]

**2. The Plan May Improperly Discharge and Release Claims Under Assumed Leases**

17. Weingarten assumes, in the absence of an Assumption Dispute, that all undisputed, liquidated amounts due and owing under the Unexpired Leases as of the Effective

---

[10] Weingarten does not object to post-Confirmation Date resolution of cure issues, but such cannot result in a rejected lease simply because the Debtors did not get what they may have wanted out of the cure resolution process.

[11] Weingarten further objects, on disclosure grounds, to the extent the Debtors attribute a meaning to Plan § 8.1(a) including, without limitation, the "[a]s of and subject to the occurrence of the Effective Date" language and/or the Assumption Dispute provision, or any other provision, that is inconsistent with the Debtors' obligations under sections 1129(a)(1), 1123 and 365. Debtors should make clear, for disclosure purposes, their interpretation of such provisions and/or their intent generally with respect to the timing of assumption/rejection decisions under the Plan.

6

Date will be paid promptly and Debtors thereafter will be obligated to perform all their obligations thereunder as such may arise in the ordinary course.

18. It is axiomatic that a lease must be assumed in its entirety; it may not, expressly or by implication, be assumed in part and rejected in part.[12] Assumption of a lease means both that the debtor is entitled to the benefits of the lease, but also is subject to its burdens.[13] The debtor must perform an assumed lease "in full, just as if the bankruptcy had not intervened."[14]

19. Weingarten submits the foregoing principles apply to any obligation under an assumed lease regardless whether it relates to a post or pre-Effective Date time period or obligation and including, without limitation, the Inchoate Obligations.

20. The Inchoate Obligations certainly have a possibility of (i) relating to the pre-Effective Date period, (ii) being unknown to Weingarten at this time or at any time leading up to confirmation and resolution of Cure Amounts (and thus, not a "monetary default" that is subject to a cure at this time or prior to confirmation),[15] and (iii) becoming due in the ordinary course long after assumption.

---

[12] *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984); *Department of the Air Force v. Carolina Parachute Corp.*, 907 F.2d 1469, 1472 (4th Cir. 1990); *In re Chicago, R.I. & Pac. R.R.*, 860 F.2d 267, 272 (7th Cir. 1988); *Richmond Leasing Co. v. Capital Bank*, 762 F.2d 1303, 1311 (5th Cir. 1985); *In re B & L Oil Co.*, 782 F.2d 155, 157 (10th Cir. 1987); *Lee v. Schweiker*, 739 F.2d 870, 876 (3d Cir. 1984); *In re Washington Capital & Aviation Leasing*, 157 B.R. 167, 172 (Bankr. E.D. Va. 1993).

[13] *See, e.g., Covington v. Covington Land L.P.*, 71 F.3d 1221, 1226 (6th Cir. 1995) ("When a debtor assumes the lease or contract under § 365, it must assume both the benefits and the burdens of the contract. Neither the debtor nor the bankruptcy court may excise material obligations owing to the non-debtor contracting party."); *In re Pacific Exp. Inc.*, 780 F.2d 1482 (9th Cir. 1986); *In re Godwin Bevers Co., Inc.*, 575 F.2d 805, 807 (10th Cir. 1978) (trustee who accepts executory contract takes burdens with benefits); *In re Fitch*, 174 B.R. 96, 101 (Bankr. S.D. Ill. 1994) ("debtor cannot change the nature of a contract merely by ... assum[ing] it ... debtor may not 'conditionally' assume such a contract, and ... must assume its burdens as well as its benefits").

[14] *In re Frontier Properties*, 979 F.2d 1358, 1367 (9th Cir. 1992); *In re Airlift Int'l*, 761 F.2d 1503 (11th Cir. 1985); *In re Steelship Corp.*, 576 F.2d 128, 132 (8th Cir. 1978).

[15] The Plan defines "Cure Amount," at § 1.25, in relevant part as "the amount of Cash or other property the Debtors must distribute, . . . to (a) cure a monetary default as required by section 365(b)(1) . . . in accordance with the terms of an . . . unexpired lease."

7

21. Weingarten submits the Plan as drafted is not clear on this point, and that the language used therein may render its terms contrary to black letter assumption rules. Weingarten submits the Plan must be revised prior to confirmation to make clear, and to ensure, that all terms and obligations of assumed leases survive confirmation of the Plan without exception. Otherwise, the Plan cannot be confirmed as it would not satisfy the requirements of § 1129(a)(1).

22. The problematic language in this regard can be summarized in four places. First, the Plan definition of "Claim" is adopted from the Bankruptcy Code definition without change, and, thus, is, and apparently is intended to be, extremely broad even in the context of claims under assumed leases.[16]

23. Second, §§ 10.2 and 10.3 of the Plan as written suggest that an argument later could be made that the Inchoate Obligations were Claims as of confirmation but were released and discharged by confirmation of the Plan.[17] Section 10.2 makes the terms of the Plan binding on all holders of Claims whether or not they are impaired and whether or not they were deemed to accept or reject the Plan.[18] Section 10.3 provides for a discharge of all Claims accruing as of the Effective Date, regardless whether the Claim holders knew (or reasonably could know) that it

---

[16] *See* Plan § 1.17.

[17] Weingarten does not concede this point, but given the very broad definition of Claim together with the provisions of the Plan noted herein make the possibility of such an argument being made in some non-bankruptcy forum realistic and not theoretical.

[18] Section 10.2 of the Plan provides:

> As of the Effective Date, the Plan shall bind all holders of Claims against and Interests in the Debtors and their respective successors and assigns, notwithstanding whether any such holders were (a) Impaired or Unimpaired under the Plan, (b) deemed to accept or reject the Plan, (c) failed to vote to accept or reject the Plan, or (d) voted to reject the Plan.

25697182.1 12/11/2018

held a Claim and regardless whether the legal basis for the claim existed prior to the Effective Date.[19]

24. Third, the Plan contains "customary" chapter 11 release and injunction provisions at §§ 10.5 and 10.6.[20] Among the "Releasing Parties" bound by such sections are "all Holders of Claims . . . (ii) who are Unimpaired under the Plan and do not timely object to the releases provided herein." Plan, § 10.6.

25. Fourth, and most troubling, perhaps, § 8.3 of the Plan appears explicitly to provide for an improper release of Claims held by landlords in connection with assumed leases, as follows:

> *Assumption* or assumption and assignment of any executory contract or unexpired lease pursuant to the Plan, or otherwise, *shall*, *subject to satisfaction of the Cure Amount, result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary*, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, *arising under any assumed* or assumed and assigned executory contract or unexpired *lease at any time before the effective date of the assumption* or assumption and assignment.

(emphasis supplied).

26. Thus, the Plan is not at all clear that confirmation will be without prejudice to the rights of lessors with assumed leases to be able to pursue all claims they may have against the

---

[19] Section 10.3 of the Plan provides, in relevant part:

> Upon the Effective Date . . . each holder . . . of a Claim . . . shall be deemed to have forever waived, released, and discharged the Debtors, . . . of and from any and all Claims, Interests, rights, and liabilities that arose prior to the Effective Date. Upon the Effective Date, all such Entities shall be forever precluded and enjoined, . . . from prosecuting or asserting any such discharged Claim against or terminated Interest in the Debtors against the Debtors, the Reorganized Debtors, or any of their assets or property, whether or not such holder has filed a proof of Claim and whether or not the facts or legal bases therefor were known or existed prior to the Effective Date.

[20] The foregoing statement is qualified on the basis that Weingarten has not "fly-specked" the language of these provisions and fully reserves all rights to argue they are not within the scope of accepted law or otherwise reasonable or necessary under the circumstances.

9

Debtors after confirmation. There is either, or both, a lack of adequate disclosure in support of the Plan in this regard or the Plan, again, is not confirmable as written.

27. Weingarten submits these provisions must be clarified, in the Pan and/or in the order confirming the Plan, to make clear that Debtors are fully and unconditionally obligated to perform all provisions of the Unexpired Leases post-confirmation, if assumed, including, without limitation, the Inchoate Obligations. Weingarten suggests that language like that which has been included in other plans confirmed in this and other courts that have addressed this issue be incorporated into the Plan, with contrary provisions being deleted from the Plan.[21]

### 3. The Plan Improperly Purports to Provide for Assignment of Leases

28. Section 8.2(b) of the Plan provides, in relevant part:

> Subject to satisfaction of the conditions set forth in Section 8.1(a) of the Plan, resolution of any Assumption Dispute in accordance with Section 8.2 of the Plan, and the occurrence of the Effective Date, entry of the Confirmation Order shall constitute approval of the assumptions or assumptions and assignments provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a determination by the Bankruptcy Court that the Reorganized Debtors have provided adequate assurance of future performance under each assumed executory contract

---

[21] For illustrative purposes, subject to further review, consideration and revision, and mindful that other landlords may have suggested language or comments to any final amendment of the Plan in this regard, Weingarten submits that the following language may be acceptable:

> Notwithstanding anything to the contrary in this Plan, with respect to any assumed lease of nonresidential real property to which any of the Debtors are parties (the "Assumed Leases"), the Debtors and Reorganized Debtors shall remain liable for all amounts or obligations coming due at any time under the Assumed Leases including, without limitation: (1) amounts owed under the Assumed Leases that are unbilled or not yet due as of the Confirmation Hearing, regardless of when such amounts accrued, such as common area maintenance, insurance, taxes, and similar charges; (2) any regular or periodic adjustment or reconciliation of charges under the Assumed Leases which are not due or have not been determined as of the date of the Confirmation Hearing; (3) any percentage rent that may come due under the Assumed Leases; (4) any and all indemnification obligations under the Assumed Leases regardless when the act or event occurred to which the indemnification obligation relates or applies; and (5) any unpaid Cure Amounts or post-assumption obligations under the Assumed Leases, in each case calculated in accordance with the terms of the Assumed Lease. All rights of the parties under any Assumed Lease or applicable law for setoff, recoupment, or subrogation shall survive, notwithstanding any term or condition of the Plan to the contrary.

and unexpired lease. Each executory contract and unexpired lease assumed *or assumed and assigned pursuant to the Plan* shall vest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law, *provided* that **the assumption of executory contracts and unexpired leases hereunder may include the assignment of certain of such contracts to Affiliates**.

(emphasis supplied).

29. Based on its review to date, Weingarten submits there is no notice or disclosure, either in the Assumption Notice, the Disclosure Statement, or otherwise, with respect to any proposed assignment of leases to anyone.

30. Weingarten objects to any proposed assignment in the absence of all required disclosure and information about any proposed assignee and further reserves all its rights to object to any proposed, specific assignment.[22]

## **RESERVATION OF RIGHTS AND JOINDER**

31. Weingarten reserves its right to assert any and all other claims, whether based on cure or otherwise, or objections to assumption or to confirmation of the Plan that may arise hereafter arising out of or related to the Unexpired Leases or the Plan and Disclosure Statement (as such may be amended hereafter).

32. To the extent not inconsistent herewith, Weingarten hereby joins in objections that may be raised by other, similarly situated, landlords.

---

[22] The Unexpired Leases contain provisions which allow assignments in certain circumstances; but, of course, the terms and conditions of any such assignments must be known before such lease provisions can be analyzed to determine whether or not a proposed assignment is "permitted" under the lease, notwithstanding the applicability and effect, if any, of the Bankruptcy Code, with respect to any proposed assignment.

11
25697182.1 12/11/2018

WHEREFORE, Weingarten respectfully objects to the Assumption Notice, the Plan and to the Disclosure Statement; and requests such relief as the Court deems just and proper.

Dated: December 11, 2018 **SAUL EWING ARNSTEIN & LEHR LLP**

/s/ *John D. Demmy*
John D. Demmy (Bar No. 2802)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: 302-421-6848
Facsimile: 302-421-5881
E-mail: john.demmy@saul.com

*Attorneys for Weingarten Nostat, Inc. and Weingarten/Miller/Aurora II LLC and GDC Aurora, LLC, as tenants in common*

12