# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| DAVID'S BRIDAL, INC. *et al*[1]., | Case No. 18-12635 (LSS)<br>Jointly Administered |
| Debtors. | **Related to Docket Nos. 138, 12 & 13**<br>Objection Deadline: December 14, 2018 Assumption<br>December 21, 2018 Plan and Disclosure<br>Hearing Date: January 4, 2019 at 1:30 p.m. |

### SPRING CREEK IMPROVEMENTS, LLC, FAIRVIEW HEIGHTS IMPROVEMENTS, LLC, AGREE LIMITED PARTNERSHIP, RAMCO WEST OAKS II, LLC, AND VILLA VIEW, LLC'S LIMITED OBJECTION TO (1) NOTICE OF ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF DEBTORS AND RELATED PROCEDURES, (2) JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, AND (3) DISCLOSURE STATEMENT FOR THE JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

SPRING CREEK IMPROVEMENTS, LLC, FAIRVIEW HEIGHTS IMPROVEMENTS, LLC, AGREE LIMITED PARTNERSHIP, RAMCO WEST OAKS II, LLC, AND VILLA VIEW, LLC (collectively "Landlords"), hereby file this limited objection (the "Objection"), by and through their undersigned counsel, to the *Notice of Assumption of Executory Contracts and Unexpired Leases of Debtors and Related Procedures* [D.I. 138] (the "Assumption Notice"); the *Joint Prepackaged Chapter 11 Plan of Reorganization under Chapter 111 of the Bankruptcy Code* [D.I. 12] (the "Plan"); and to the *Disclosure Statement for Joint Prepackaged Chapter 11 Plan of Reorganization under Chapter 11 of the Bankruptcy Code* [D.I. 13] (the "Disclosure Statement"), and respectfully represent as follows:

Subject to the resolution of the issues raised herein, and any others that may arise or which may be raised, Landlords generally do not oppose confirmation of the Plan or assumption of their leases.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: David's Bridal, Inc. (4563); DB Investors, Inc. (8503)'; DB Holdco, Inc. (4567); and DB Midco Inc. (3096). The location of the Debtors; corporate headquarters is 1001 Washington Street, Conshohocken, PA 19428.

## BACKGROUND FACTS

1. David's Bridal, Inc., *et al.* (the "Debtors"), filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code on November 19, 2018 (the "Petition Date"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

2. On the Petition Date, the Debtors filed their Plan and Disclosure Statement and set a combined hearing for January 4, 2019 on the adequacy of the Disclosure Statement and confirmation of the Plan.

3. The Plan's terms provide for the deemed assumption of the leases and the Debtors have stated their intention to assume all of their unexpired non-residential real property leases. *See* Plan at §8.1 and the *Debtor's Motion for Entry of an Order Extending Time to Assume or Reject Unexpired Leases of Nonresidential Real Property* [D.I. 141] ¶ 9-10.

4. On November 30, 2018, the Debtors filed the Assumption Notice [D.I. 138] which requires the filing of all assumption related objections by December 14, 2018.

5. The Debtors lease retail space (the "Premises") from each of the Landlords pursuant to unexpired leases of nonresidential real property (each a "Lease" or "Leases") which may be assumed.

6. Each Lease is a lease "of real property in a shopping center" as that term is used in Section 365(b)(3). *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

7. The Assumption Notice does not list each specific lease and does not provide a cure amount for any lease. The Assumption Notice requires landlords to assert that a cure amount is due in the ordinary course. Landlords herein will assert the amounts that are currently

2

owing, to ensure that all outstanding balances are accounted for, and to account for accrued but unbilled charges which may come due in the future.

8. The Landlords are currently owed the following amounts subject to additional qualifications and modifications (such as reimbursement of attorney's fees) are forth below:

| Landlord | Store # | Landlord's Cure Claim |
|---|---|---|
| SPRING CREEK IMPROVEMENTS, LLC | #195 Fayetteville, AR | $106.32<br><br>Attorney's Fees $500.00<br><br>**$606.32** |
| FAIRVIEW HEIGHTS IMPROVEMENTS, LLC | Fairview Heights, IL | $12,926.24<br><br>Attorney's Fees $500.00<br><br>**$13,426.24** |
| AGREE LIMITED PARTNERSHIP | Toledo, OH | $0.00<br><br>Attorney's Fees $500.00<br><br>**$500.00** |
| RAMCO WEST OAKS II, LLC, | #279 Novi, MI | $2,107.47<br><br>Attorney's Fees $500.00<br><br>**$2,607.47** |
| VILLA VIEW, LLC | Portage, MI | $0.00<br><br>Attorney's Fees $500.00<br><br>**$500.00** |

220732934.1 39960/343357

9. The current base monthly amount due under the Spring Creek Improvements lease is monthly rent, plus the Debtor's pro rata share of the Common Area Maintenance, Taxes, and Insurance.

10. The current base monthly amount due under the Fairview Heights lease is $10,996.88 per month plus monthly CAM of $962.89, and monthly real estate taxes of $963.87.

11. The current base monthly amount due under the Agree Limited Partnership lease is $14,460.00 and monthly CAM of $1,700.

12. The current base monthly amount due under the West Oaks II lease is monthly rent, plus electric usage, and the Debtor's pro rata share of the Common Area Maintenance, Taxes, and Insurance.

13. The current base monthly amount due under the Villa View lease is $12,750 increasing to $13,500 on January 1, 2019 plus monthly CAM of $930 and all taxes and insurance when billed.

14. In addition, each of the Leases requires the Debtors to indemnify the Landlord for tort and other claims related to acts or omissions which may have occurred or may hereafter occur, which acts or omissions and the resulting indemnifiable claims may not be known to the Landlord at this time.

## BACKGROUND FACTS

15. Section 365(b) requires that a debtor cure all defaults in conjunction with a lease assumption.

16. In addition to rent and related monthly charges, attorney's fees, costs, and interest, some charges for which the Debtors bear responsibility under the Lease which have not been

4

reconciled and/or adjusted from pre-petition (or possible post-petition) periods. The Leases are triple-net leases, where the Debtors pay rent and related lease charges in advance for each month. The Debtors pay fixed minimum rent, along with a pro-rata share of expense such as real property taxes, insurance, common area maintenance ("CAM") fees, annual percentage rent, and the like. Certain charges, such as CAM and real property taxes are estimated prospectively, billed to and paid by the tenant during the year, and then reconciled after year-end. The reconciliation compares the amounts estimated and paid against actual charges incurred at the shopping center. To the extent the estimated payments do not cover actual charges incurred under the lease, the result is an additional amount (or debit) for which the tenant is liable. In some instances, year-end reconciliations and adjustments for previous years for the Premises may not yet be complete (i.e. year-end reconciliations and adjustments that accrued through 2018 and 2019 may not have been billed). In other instances, certain charges may be paid in arrears, and cannot be calculated until a year or more after year end. Since these accrued, but unbilled, charges are not yet due under the Leases, they do not create a current default but gives rise to a requirement to cure by the Debtors at this time.

17. Nevertheless, the Debtors continue to be responsible for all such accrued and accruing charges under the Lease, and must pay such charges as and when they come due under the Leases. The Debtors must take the assumption of any Lease subject to its terms, as well as pay all obligations owing under such Lease, including obligations that have accrued but may not have been billed under the Lease. Any final order should clearly state that the Debtors will assume the Lease obligations and pay them when due, regardless of whether they relate to the period prior to, or after the assumption. In addition, any provision in an order that purports to provide a release of further liability based upon a payment of cure amounts, should specify that

such release does not apply to the obligation to pay accrued, but unbilled, charges that come due under the Leases.

18. In addition to monetary obligations that Debtor must satisfy under Section 365 of the Bankruptcy Code, the Leases also provide that Debtor must indemnify and hold the Landlord harmless with regard to existing claims as well as with regard to events which may have occurred pre-assumption but which are not made known to the Landlord or Debtors until some period post-assumption. Accordingly, either the Debtor must assume all indemnification liabilities or must be required to evidence, or obtain adequate insurance in order to guaranty that their indemnity responsibilities will be met. Claims for indemnity may include, but are not limited to, claims for personal injuries which occur at the leaseholds, where either the Landlord is joined as a party defendant, damage, and destruction to the property by Debtor or its agents, claims for environmental damage or environmental clean-up etc.

19. The order confirming the Proposed Plan should specify that the Landlords' claims for additional rent and charges and indemnity obligations under their Lease are not released, and that the Debtors remain liable to the Landlord for such obligations, and all municipal violations regardless of when the obligations accrued.

20. The Landlords reserve the right to increase or further reconcile the cure claims set forth herein for items such as, but not limited to, claims for rent, taxes, common area maintenance, costs, fees, and any additional cure amounts due under the Leases, as the Debtor is still in the property and are accruing expenses.

21. Landlords reserve any and all rights to supplement or amend this Objection and expressly reserve the right to object to any additional relief sought by the Debtors in connection with any lease assignment. The Landlords also respectfully reserves the right to object to the

adequate assurance of future performance in connection with the Leases by any successful bidder.

22. To the extent that rent, attorneys' fees or other charges continue to accrue either before or after a potential assumption, or a Landlord suffers other pecuniary losses under its Lease, Landlord reserves its right to amend its cure amounts for such amounts or for any other reasons.

23. The Leases contain provisions for recovery of attorney's fees, costs, and interest in the event that a Landlord is required to take legal action to protect its interests. The Debtors are obligated to cure all defaults under the Leases, and compensate the Landlord for its actual pecuniary loss as a result of defaults under the Lease. *See* 11 U.S.C. §365(b)(1)(A) and (B). The principle is well-recognized. *In Re LCO Enterprises,* 12 F.3d 938, 941 (9th Cir. 1993); *Elkton Associates v. Shelco Inc. (Matter of Shelco)*, 107 B.R. 483, 487 (Bankr. D. Del. 1989).

24. The Cure Amounts set forth above, pursuant to the terms of the Lease and 11 U.S.C. §365(b), includes a reasonable amount for attorneys' fees, which is less than those actually incurred as a result of the Debtors' bankruptcy case, in the amount of $500. See, e.g., *In re Pelican Pool,* 2009 Bankr. LEXIS 4623 (Bankr. D.N.J. July 27, 2009); *In Westview 74th Street Drug Corp.,* 59 B.R. 747, 757 (Bankr. S.D.N.Y. 1986) (payment of attorneys' fees required as condition to lease assumption), *Travelers Cas. & Su. Co. Co. of A. v. Pacific Gas and El. Co.,* 127 S. Ct. 1199, 1203 (2007) (holding that a party is entitled to be reimbursed for its attorneys' fees when there exists an "enforceable contract allocating attorneys' fees"); *In re East 44th Realty, LLC*, No. 07 Civ 8799, 2008 U.S. Dist. LEXIS 7337 (S.D.N.Y. 2008) affirming bankruptcy court's finding that a $1.7 million settlement of attorneys' fees to a landlord was reasonable.); *In re Beltway Medical, Inc.,* 358 B.R. 448, 453 (Bankr. S.D. Fla. 2006) "Where the

7

trustee or debtor-in-possession fails to perform the primary obligation under the lease (i.e. to pay rent), and the landlord incurs legal fees seeking to obtain payment, it follows that the attorneys' fees, if authorized under the lease and linked to enforcement of the payment obligation, are entitled to the same administrative priority as the rent obligation"); *In re Entertainment, Inc.*, 223 B.R. 141, 152-154 (Bankr. E.D. Ill. 1998) (attorneys' fees must be paid as provided for in the assumed lease). The Debtor is obligated to cure all defaults under the Lease, and compensate the Landlord for its actual pecuniary loss as a result of defaults under the Lease. See 11 U.S. C. §365(b)(1)(A) and (B).

### The Plan Cannot Provide for Post-Confirmation Assumption or Rejection of Leases

25. Generally, the Plan provides for the deemed assumption of all of the Debtors' leases. Assumption is to occur "[a]s of and subject to the occurrence of the Effective Date." *See* Plan at 8.1(a). However, confirmed plans do not usually become effective until sometime after entry of a confirmation order. The Landlords can only assume that such a provision means that although the <u>final</u> decision about assumption will be made by the Debtor on the date the Confirmation Order is entered, the assumption will not become "final" until the occurrence of the Plan's Effective Date along with all of the other Plan provisions becoming final and binding.

26. Landlords object to any ability for the Debtors to change their mind with regards to a lease assumption after the Confirmation Date, so long as the Plan confirmed on the Confirmation Date becomes effective. This is especially important should there be a post-confirmation dispute over cure.

27. Pursuant to 11 U.S.C. §1129(a)(1), to be confirmable a plan must comply with all applicable provisions of Title 11. Section 1123 provides that a plan may "subject to Section 365," provide for the assumption or rejection of contracts and leases. *See* 11 U.S.C. §1123(b)(2).

8

220732934.1 39960/343357

Section 365 provides that Debtors have until the earlier of "(i) . . . 120 days after the date of the order for relief [subject to the 90 day extension provided in §365(d)(4)]; or (ii) the date of the entry of an order confirming a plan" to assume or reject. *See* 11 U.S.C. §365(d)(4); *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 529 (1984); *Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 46 (2008).

28. Paragraph 8.1 of the Plan as it relates to an "Assumption Dispute" makes the Plan unclear with respect to the Debtors intent and obligation to assume the leases by the Confirmation Date, and to the extent that Debtors seek to retain a "change of mind" type provision in the Plan based upon an Assumption Dispute that is not resolved in their favor, the Plan is rendered contrary to the Debtors' obligations under Sections 1129(a)(1), 1123, and 365, and therefore not confirmable. Landlords do not find objectionable a post-confirmation resolution of cure so long as a lease cannot be rejected because cure cannot be resolved in the Debtors favor.

29. Therefore, as the result of any provision to allow the Debtors to later reject a lease after the Confirmation Date, the Landlords object to the assumption procedures set forth in the Plan and to the Assumption Notice, and submit that the Plan cannot be confirmed if the Debtor retains such procedures. Additionally, the Landlords object on disclosure grounds in that the Debtors should be required to clearly articulate their interpretation of such provisions and their general intent with respect to the timing of assumption.

**The Plan Appears to Improperly Discharge and Release Claims Arising Out Of Assumed Leases**

30. All undisputed, liquidated amounts due and owing under the Leases as of the Effective Date must be paid promptly and the Debtors thereafter are obligated to perform all of their obligations thereunder as they arise in the ordinary course of business.

31. The entire lease must be assumed. A Debtor cannot assume just a portion of an unexpired lease. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 529 (1984). Following assumption, the Debtor is entitled to the benefits and the burdens of the lease. *See Covington v. Covington Lan L.P.*, 71 F.3d 1221, 1226 (6th Cir. 1995). This concept applies to all obligations under an assumed lease regardless of whether it relates to a post-Effective Date or pre-Effective Date time period, including the reconciliation and indemnification obligations.

32. The Plan as drafted is not clear that the Debtor will be required to perform all obligations arising out of the Leases. The Plan should be redrafted/revised to make clear and to ensure that all terms and obligations under assumed leases survive confirmation without exception. Failure to do so makes the Plan unconfirmable under §1129(a)(1).

33. Section 10.3 of the Plan provides for a discharge of all Claims accruing as of the Effective Date, regardless of whether the Claim holders knew or reasonably could have known that it held a Claim and regardless of whether the legal basis for the claim existed prior to the Effective Date.

34. Section 10.6 of the Plan contains release and injunction provisions which seem to include "all Holders of Claims . . . (ii) who are Unimpaired under the Plan and do not timely object to the releases provided herein." *See* Plan §10.6.

35. Most detrimental to Landlords is in §8.3 wherein the Plan appears to explicitly provide for an improper release of Claims held by landlords in connection with their assumed leases. The Plan language provides:

> Assumption . . . shall, subject to satisfaction of the Cure Amount, result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary . . . arising under any assumed . . . lease at any time before the effective date of the assumption . . .

220732934.1 39960/343357

36. The Plan does not provide that confirmation will be without prejudice to a landlord's rights under assumed leases to be able to pursue all claims it has against the Debtors post-confirmation.

37. Landlords submit that these provisions must be clarified in the Plan or in the order confirming the Plan, to make clear that the Debtors are fully and unconditionally obligated to perform all of their obligations under the Leases post-confirmation, if assumed, including the indemnity obligations and payment of accrued but unbilled charges and reconciliations. There are plenty of other cases whose confirmed plans contained the requisite provisions with contrary provisions being deleted from the Plan.

**The Plan Attempts to Provide for the Assignment of Leases**

38. Section 8.2 of the Plan provides language related to the assumption and assignment of unexpired leases.

39. Landlords have not seen any notice with respect to the potential assignment of any leases.

40. Landlords object to any proposed assignment, absent the required disclosure and information related to the proposed assignee. Landlords reserve their right to object to any proposed assignee and its adequate assurance of future performance.

## RESERVATION OF RIGHTS

41. Each Landlord reserves its rights to (i) amend the cure amounts as necessary to include any additional or unknown charges that arise, including but not limited to subsequent rent defaults, attorneys' fees, costs, interest, and year-end adjustments and reconciliations, and (ii) make such other and further objections as may be appropriate at or before the assumption and/or confirmation hearing.

220732934.1 39960/343357

## JOINDER IN OBJECTIONS

42. Each Landlord joins in any objections filed by the Debtors' other landlords with respect to the Cure Notice and the Plan to the extent that such objections are not inconsistent with this Objection.

WHEREFORE, the Landlords respectfully requests that the Court enter an order consistent with the foregoing objections and grant such other and further relief as may be just and proper under all of the circumstances.

Dated: December 14, 2018

Respectfully submitted,

CLARK HILL, PLC

/s/ Karen M. Grivner
Karen M. Grivner (DE No.4372)
824 N. Market St., Ste. 710
Wilmington, DE 19801
Tel: (302) 250-4749
Fax: (302) 421-9439
kgrivner@clarkhill.com

and

David M. Blau (MI P52542) (Admitted Pro Hac Vice)
CLARK HILL, PLC
151 S. Old Woodward Ave., Ste. 200
Birmingham, MI 48009
Tel: (248) 988-1817
Fax: (248) 988-2336
dblau@clarkhill.com

*Attorney for Spring Creek Improvements, LLC, Fairview Heights Improvements, LLC, Agree Limited Partnership, Ramco West Oaks II, LLC, and Villa View, LLC*

220732934.1 39960/343357