## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DAVID'S BRIDAL INC.., *et al.*,[1] | ) | Case No. 18-12635 (LSS) |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Re: Docket No. 16, 17 and 102 |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION TO THE PREPETITION LENDERS, (V) MODIFYING AUTOMATIC STAY, AND (VI) GRANTING RELATED RELIEF**

Upon the motion, dated November 19, 2018 (the "DIP Motion") of David's Bridal, Inc. (as successor by merger to DBP Holding Corp.) (the "Borrower") and its debtor affiliates, each as a debtor and debtor in possession (collectively, the "Debtors") in the above-captioned Chapter 11 cases (collectively, the "Cases"), seeking entry of an order (this "Final Order") pursuant to sections 105, 361, 362, 363, 364(c)(l), 364(c)(2), 364(c)(3), 364(d), 364(e), and 507 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-2 of the Local Bankruptcy Rules for District of Delaware (the "Local Rules"), *inter alia*:

(i)    authorizing the Debtors to obtain senior secured postpetition financing on a superpriority basis consisting of a senior secured superpriority revolving credit facility in the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  David's Bridal, Inc. (4563); DB Investors, Inc. (8503); DB Holdco, Inc. (4567); and DB Midco, Inc. (3096).  The location of the Debtors' corporate headquarters is 1001 Washington Street, Conshohocken, Pennsylvania 19428.

aggregate principal amount of up to $125,000,000 (the "DIP ABL Credit Facility," and all amounts extended under the DIP ABL Credit Facility, the "DIP ABL Loans"), including (a) a $80,000,000 sublimit for the issuance of letters of credit and (b) a $20,000,000 sublimit for swingline loans, pursuant to the terms and conditions of that certain *Senior Secured, Super-Priority Debtor-In-Possession Credit Agreement* (as the same may be amended, restated, supplemented, or otherwise modified from time to time, the "DIP ABL Agreement"), by and among the Borrower, the Guarantors (as defined in the DIP Agreements), and Bank of America, N.A., as administrative agent and collateral agent (in such capacity, the "DIP ABL Agent"), for and on behalf of itself and the other lenders party thereto (collectively, including the DIP ABL Agent, the "DIP ABL Lenders"), substantially in the form of **Exhibit B**, attached to the DIP Motion[2];

(ii)  authorizing the Debtors to execute and deliver the DIP ABL Agreement and any other agreements and documents related thereto (collectively with the DIP ABL Agreement, the "DIP ABL Documents") and to perform such other acts as may be necessary or desirable in connection with the DIP ABL Documents;

(iii)  granting the DIP ABL Credit Facility and all obligations owing thereunder and under the DIP ABL Documents or otherwise to the DIP ABL Agent and DIP ABL Lenders (collectively, and including all "Obligations" as described in the DIP ABL Agreement, the "DIP ABL Obligations") allowed superpriority administrative expense claim status in each of the Cases and any Successor Cases (as defined herein);

---

[2] Upon entry of the Interim Order, all Prepetition ABL Obligations (as defined below), including all accrued and unpaid interest thereon and fees and expenses, were fully-rolled into the DIP ABL Credit Facility and now constitute DIP ABL Obligations hereunder.

(iv)      authorizing the Debtors to obtain senior secured postpetition financing on a superpriority basis in the aggregate principal amount of up to $60,000,000 (the "DIP Term Loan Facility," and all amounts extended under the DIP Term Loan Facility, the "DIP Term Loans," and the DIP Term Loan Facility together with the DIP ABL Credit Facility, the "DIP Facilities"), consisting of a new money term loan facility, pursuant to the terms and conditions of that certain *Senior Secured, Super-Priority Term Loan Debtor-in-Possession Credit Agreement* (as the same may be amended, restated, supplemented, or otherwise modified from time to time, the "DIP Term Loan Agreement," and together with the DIP ABL Agreement, the "DIP Agreements"), by and among the Borrower, the Guarantors, and Cantor Fitzgerald Securities, as administrative agent and collateral agent (in such capacities, the "DIP Term Loan Agent," and, together with the DIP ABL Agent, the "DIP Agents") for and on behalf of itself and the other lenders party thereto (collectively, including the DIP Term Loan Agent, the "DIP Term Loan Lenders," and, together with the DIP ABL Lenders, the "DIP Lenders"), substantially in the form of **Exhibit C** attached to the DIP Motion;

(v)      authorizing the Debtors to execute and deliver the DIP Term Loan Agreement and any other agreements and documents related thereto (collectively with the DIP Term Loan Agreement, the "DIP Term Loan Documents," and together with the DIP ABL Documents, the "DIP Documents"), by and among the Borrower, the Guarantors, the DIP Term Loan Agent, and to perform such other acts as may be necessary or desirable in connection with the DIP Term Loan Documents;

(vi)      granting the DIP Term Loan Facility and all obligations owing thereunder and under the DIP Term Loan Documents to the DIP Term Loan Agent and DIP Term Loan Lenders (collectively, and including all "Obligations" as described in the DIP Term Loan Agreement, the

"DIP Term Loan Obligations," and together with the DIP ABL Obligations, the "DIP Obligations") allowed superpriority administrative expense claim status in each of the Cases and any Successor Cases;

(vii)    granting to the DIP Agents, for the benefit of themselves and the DIP Lenders and the other Secured Parties (as defined in the DIP Agreements) under the applicable DIP Documents, automatically perfected security interests in and liens on all of the DIP Collateral (as defined herein), including, without limitation, all property constituting "Cash Collateral" as defined in section 363(a) of the Bankruptcy Code, which liens shall be subject to the priorities set forth herein;

(viii)    authorizing and directing the Debtors to pay the principal, interest, fees, expenses and other amounts payable under the DIP Documents as such become due, including, without limitation, letter of credit fees (including issuance and other related charges), continuing commitment fees, closing fees, audit fees, appraisal fees, valuation fees, liquidator fees, structuring fees, administrative agent's fees, the reasonable fees and disbursements of the DIP Agents' and DIP Lenders' attorneys, advisors, accountants and other consultants, all to the extent provided in, and in accordance with, the DIP Documents;

(ix)    authorizing the Debtors to use, on the terms described herein, the Prepetition Collateral (as defined herein), including the Cash Collateral of the Prepetition ABL Parties under the Prepetition ABL Documents and the Prepetition Term Loan Parties under the Prepetition Term Loan Documents (each as defined herein), and providing adequate protection to the Prepetition ABL Parties and Prepetition Term Loan Parties for any diminution in value of their respective interests in the Prepetition Collateral, including the Cash Collateral; and

(x)    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this Final Order.

The Court having considered the DIP Motion, the exhibits attached thereto, the *Declaration of Joan Hilson, Executive Vice President and Chief Financial and Operating Officer of the Debtors, in Support of Debtors' Chapter 11 Petitions and First Day Pleadings*, the *Declaration of Stephen Goldstein in Support of Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lenders, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief*, the DIP Documents, and the evidence submitted and argument made at the interim hearing held on November 20, 2018 (the "<u>Interim Hearing</u>") and the final hearing held on December 18, 2018 (the "<u>Final Hearing</u>"); and the Court having entered in the *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lenders, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Heaing, and (VII) Granting Related Relief* on November 20, 2018 [Docket No. 102] (the "<u>Interim Order</u>"); and notice of the Final Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Rules; and the Final Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the final relief requested in the DIP Motion is necessary to avoid

immediate and irreparable harm to the Debtors and their estates, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates and all parties-in-interest, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Agreements is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING AND THE FINAL HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

   A.    **Petition Date**.  On November 19, 2018 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court").

   B.    **Debtors in Possession**.  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

   C.    **Jurisdiction and Venue**.  This Court has jurisdiction over the Cases, the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.  Venue for the Cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

D.    **Committee Formation**.  As of the date hereof, the United States Trustee for the District of Delaware (the "U.S. Trustee") has not yet appointed an official committee of unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code (a "Committee").

E.    **Notice**.  Timely, adequate, and sufficient notice under the circumstances of the DIP Motion and the Final Hearing has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the DIP Motion with respect to the relief requested at the Final Hearing or the entry of this Final Order shall be required.

F.    **Debtors' Stipulations**.    After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties-in-interest as set forth in paragraph 43 herein, the Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree as follows (paragraphs F(i) through F(xii) below are referred to herein, collectively, as the "Debtors' Stipulations"):

(i)    *Prepetition ABL Facility*.  Pursuant to that certain ABL Credit Agreement dated as of October 11, 2012 (as amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition ABL Agreement," and collectively with any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition ABL Documents"), among (a) the Borrower, (b) the guarantors party thereto (the "Prepetition ABL Guarantors"), (c) Bank of America, N.A., as administrative agent and collateral agent (in such capacity, the "Prepetition ABL Agent"), and (d) the lenders party thereto (including the Prepetition ABL Agent, the "Prepetition ABL Lenders," and collectively with the Prepetition

ABL Agent, the "Prepetition ABL Parties"), the Prepetition ABL Lenders provided revolving credit and other financial accommodations to, and issued letters of credit for the account of, the Borrower pursuant to the Prepetition ABL Documents (the "Prepetition ABL Facility").

(ii)    *Prepetition ABL Obligations*.    The Prepetition ABL Facility provided the Borrower with, among other things, $125,000,000 in aggregate Revolving Credit Commitments (as defined in the Prepetition ABL Agreement), including letters of credit and swingline loan commitments.    As of the Petition Date, the aggregate principal amount outstanding under the Prepetition ABL Facility was not less than $25,700,000 in loans and not less than $42,500,000 in issued and outstanding letters of credit (collectively, together with accrued and unpaid interest, outstanding letters of credit and bankers' acceptances, any reimbursement obligations (contingent or otherwise) in respect of letters of credit and bankers' acceptances, any fees, expenses and disbursements (including, without limitation, attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), treasury, cash management, bank product and derivative obligations, indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Borrower's or the Prepetition ABL Guarantors' obligations pursuant to the Prepetition ABL Documents, including all "Obligations" as defined in the Prepetition ABL Agreement, and all interest, fees, costs and other charges allowable under Section 506(b) of the Bankruptcy Code, the "Prepetition ABL Obligations").

(iii)    *Prepetition ABL Liens and Prepetition ABL Priority Collateral*. As more fully set forth in the Prepetition ABL Documents, prior to the Petition Date, the Borrower and the Prepetition ABL Guarantors granted to the Prepetition ABL Agent, for the

benefit of itself and the Prepetition ABL Lenders, a security interest in and continuing lien on (the "Prepetition ABL Liens") substantially all of their assets and property, including, without limitation, (a) a first priority security interest in and continuing lien on the ABL Priority Collateral (as defined in that certain Intercreditor Agreement referred to below) (which, for the avoidance of doubt, includes Cash Collateral) and all proceeds and products of any of the foregoing, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition ABL Priority Collateral"), and (b) a second priority security interest in and continuing lien on the Term Priority Collateral (as defined in the Intercreditor Agreement) and proceeds and products of any of the foregoing, in each case whether then owned or existing or thereafter acquired (collectively, the "Prepetition Term Priority Collateral," and together with the Prepetition ABL Priority Collateral, the "Prepetition Collateral"), subject only to the Prepetition ABL Permitted Prior Liens and the liens of the Prepetition Term Loan Agent on the Prepetition Term Priority Collateral.

(iv)    *Prepetition Term Loan Facility*.  Pursuant to that certain Credit Agreement dated as of October 11, 2012 (as amended, restated or otherwise modified from time to time, the "Prepetition Term Loan Agreement," and collectively with any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition Term Loan Documents," and together with the Prepetition ABL Documents, the "Prepetition Documents"), among (a) the Borrower, (b) Bank of America, N.A., as administrative agent and collateral agent (in such capacity, the "Prepetition Term Loan Agent," and together with the Prepetition ABL Agent, the "Prepetition Agents"), (c) the guarantors thereunder (the "Prepetition Term Loan Guarantors" and, together with the Prepetition ABL Guarantors, the "Prepetition Guarantors"),

and (d) the lenders party thereto (the "Prepetition Term Loan Lenders," and collectively with the Prepetition Term Loan Agent, the "Prepetition Term Loan Parties," and together with the Prepetition ABL Parties, the "Prepetition Secured Parties"), the Prepetition Term Loan Lenders provided term loans to the Borrower (the "Prepetition Term Loan Facility," and together with the Prepetition ABL Facility, the "Prepetition Secured Facilities").

(v)     *Prepetition Term Loan Obligations*.  The Prepetition Term Loan Facility provided the Borrower with commitments to provide term loans in the aggregate principal amount of up to approximately $520,000,000.  As of the Petition Date, the aggregate principal amount outstanding under the Prepetition Term Loan Facility was $481,239,196.00 (collectively, together with accrued and unpaid interest, any fees, expenses and disbursements (including, without limitation, attorneys' fees, accountants' fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), indemnification obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Borrower's and the Prepetition Term Loan Guarantors' obligations pursuant to the Prepetition Term Loan Documents, including all "Obligations" as defined in the Prepetition Term Loan Agreement, and all interest, fees, costs and other charges allowable under Section 506(b) of the Bankruptcy Code, the "Prepetition Term Loan Obligations," and together with the Prepetition ABL Obligations, the "Prepetition Secured Obligations").

(vi)     *Prepetition Term Loan Liens and Prepetition Term Priority Collateral*.  As more fully set forth in the Prepetition Term Loan Documents, prior to the Petition Date, the Borrower and Prepetition Term Loan Guarantors granted to the Prepetition Term Loan Agent, for the benefit of itself and the Prepetition Term Loan Lenders, a security interest in and

continuing lien on (the "Prepetition Term Loan Liens," and together with the Prepetition ABL Liens, the "Prepetition Liens") substantially all of their assets and property, including, without limitation, (a) a first priority security interest in and continuing lien on the Prepetition Term Priority Collateral, and (b) a second priority security interest in and continuing lien on the Prepetition ABL Priority Collateral, subject only to the Prepetition Term Loan Permitted Prior Liens and the liens of the Prepetition ABL Agent on the Prepetition ABL Priority Collateral.

(vii)    *Priority of Prepetition Liens; Intercreditor Agreement.*    The Prepetition Agents and others entered into that certain Intercreditor Agreement dated as of October 11, 2012 (as may be further amended, restated, supplemented, or otherwise modified in accordance with its terms, the "Intercreditor Agreement") to govern the respective rights, interests, obligations, priority, and positions of the Prepetition Secured Parties with respect to the assets and properties of the Debtors and other obligors.  Each of the Borrower and Prepetition Guarantors acknowledged and agreed to the Intercreditor Agreement.

(viii)    *Validity, Perfection and Priority of Prepetition ABL Liens and Prepetition ABL Obligations.*  The Debtors acknowledge and agree that as of the Petition Date (a) the Prepetition ABL Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable and properly perfected and were granted to, or for the benefit of, the Prepetition ABL Parties for fair consideration and reasonably equivalent value; (b) the Prepetition ABL Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to (1) the Prepetition Term Loan Liens on the Prepetition Term Priority Collateral, and (2) liens senior by operation of law or permitted by the Prepetition ABL Documents (solely to the extent any such liens were valid, properly perfected, non-avoidable and senior in priority to the Prepetition ABL Liens as of the Petition Date, the "Prepetition ABL Permitted Prior Liens"); (c)

the Prepetition ABL Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the applicable Prepetition ABL Documents; (d) no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition ABL Liens or Prepetition ABL Obligations exist, and no portion of the Prepetition ABL Liens or Prepetition ABL Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition ABL Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to the Prepetition ABL Facility; (f) the Debtors have waived, discharged, and released any right to challenge any of the Prepetition ABL Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the Prepetition ABL Obligations; and (g) the Prepetition ABL Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(ix)     *Validity, Perfection and Priority of Prepetition Term Loan Liens and Prepetition Term Loan Obligations.*  The Debtors further acknowledge and agree that, as of the Petition Date, (a) the Prepetition Term Loan Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable and properly perfected and were granted to, or for the benefit of, the Prepetition Term Loan Parties for fair consideration and reasonably equivalent value; (b) the Prepetition Term Loan Liens were senior in priority over any and all other liens on

the Prepetition Collateral, subject only to (1) the Prepetition ABL Liens on the Prepetition ABL Priority Collateral, and (2) liens senior by operation of law or permitted by the Prepetition Term Loan Documents (solely to the extent any such liens were valid, properly perfected, non-avoidable and senior in priority to the Prepetition Term Loan Liens as of the Petition Date, the "Prepetition Term Loan Permitted Prior Liens" and, together with the Prepetition ABL Permitted Prior Liens, the "Permitted Prior Liens"); (c) the Prepetition Term Loan Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the applicable Prepetition Term Loan Documents; (d) no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Term Loan Liens or Prepetition Term Loan Obligations exist, and no portion of the Prepetition Term Loan Liens or Prepetition Term Loan Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition Term Loan Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to the Prepetition Term Loan Facility; (f) the Debtors have waived, discharged, and released any right to challenge any of the Prepetition Term Loan Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the Prepetition Term Loan Obligations; and (g) the Prepetition Term Loan Obligations

constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(x)   *Default by the Debtors.*   The Debtors acknowledge and stipulate that the Debtors have, since October 15, 2018, been and are in default of their obligations under the Prepetition ABL Documents and that from the Petition Date interest was accruing on the Prepetition ABL Obligations at the default rate since October 15, 2018.

(xi)   *Senior Notes.*   Pursuant to that certain Indenture dated as of October 11, 2012 (as amended, restated, supplemented or otherwise modified from time to time, the "Senior Notes Indenture") among the Borrower and Wilmington Trust, National Association, as trustee (in such capacity, the "Indenture Trustee"), the Borrower issued $270,000,000 in senior unsecured notes (the "Senior Notes").   As of the Petition Date, the aggregate principal amount of Senior Notes outstanding was $270,000,000.

(xii)   *Cash Collateral.*   All of the Debtors' cash, including any cash in deposit accounts of the Debtors, wherever located, constitutes Cash Collateral of the Prepetition Secured Parties.

G.   **Permitted Prior Liens**.   Nothing herein shall constitute a finding or ruling by this Court that any alleged Permitted Prior Lien is valid, senior, enforceable, prior, perfected or non-avoidable.   Moreover, nothing shall prejudice the rights of any party-in-interest, including the Debtors, the DIP Agents, the Prepetition Secured Parties, or a Committee (if appointed), to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any alleged Permitted Prior Lien and/or security interests.   The right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Permitted Prior Lien, rather, any such alleged claim arising or asserted as a right of reclamation (whether asserted under

section 546(c) of the Bankruptcy Code or otherwise) shall have the same rights and priority with respect to the DIP Liens as such claim had with the Prepetition Liens.

        H.    **Intercreditor Agreement**.  Pursuant to section 510 of the Bankruptcy Code, the Intercreditor Agreement (as the same may be amended, modified or acknowledged) and any other applicable intercreditor or subordination provisions contained in any of the Prepetition Documents (i) shall remain in full force and effect, (ii) shall continue to govern the relative priorities, rights and remedies of the Prepetition Secured Parties (including the relative priorities, rights and remedies of such parties with respect to the replacement liens and administrative expense claims and superpriority administrative expense claims granted, or amounts payable, by the Debtors under this Final Order or otherwise and the modification of the automatic stay), and (iii) shall not be deemed to be amended, altered or modified by the terms of this Final Order or the DIP Documents, unless expressly set forth herein or therein.  Repayment or the "roll-up" of the Prepetition ABL Obligations pursuant to the Interim Order and this Final Order shall not be deemed to constitute a "discharge" of Prepetition ABL Obligations as that term is used in the Intercreditor Agreement.

        I.    **Findings Regarding Postpetition Financing**

        (i)    *Request for Postpetition Financing*.  The Debtors seek authority on a final basis to (a) enter into the DIP Facilities on the terms described herein and in the DIP Documents, and (b) use Cash Collateral on the terms described herein to administer their Cases and fund their operations.

        (ii)    *Priming of the Prepetition Liens*.  The priming of the Prepetition Liens on the Prepetition Collateral under section 364(d) of the Bankruptcy Code, as contemplated by the DIP Facilities and as further described below, will enable the Debtors to

obtain the DIP Facilities and to continue to operate their businesses to the benefit of their estates and creditors. The Prepetition Secured Parties are each entitled to receive adequate protection as set forth in this Final Order pursuant to sections 361, 363, and 364 of the Bankruptcy Code for any diminution in value ("Diminution in Value") of each of their respective interests in the Prepetition Collateral (including Cash Collateral).

(iii)    *Need for Postpetition Financing and Use of Cash Collateral.* Since the Petition Date the Debtors have had an immediate and critical need to use Cash Collateral and to continue obtaining credit pursuant to the DIP Facilities in order to, among other things, enable the orderly continuation of their operations, to administer and preserve the value of their estates and to prosecute the transactions contemplated under the Restructuring Support Agreement (as defined in the DIP Motion). The ability of the Debtors to maintain business relationships with their vendors, suppliers and customers, to pay their employees and otherwise finance their operations requires the availability of working capital from the DIP Facilities and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtors, their estates, and parties-in-interest. The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without the DIP Facilities and authorized use of Cash Collateral.

(iv)    *No Credit Available on More Favorable Terms.* Given their current financial condition, financing arrangements, and capital structure, the Debtors have been and continue to be unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the DIP Facilities. The Debtors are unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense. The Debtors

have also been unable to obtain: (a) unsecured credit having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) credit secured solely by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) credit secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien.   Financing on a postpetition basis is not otherwise available without granting the DIP Agents, for the benefit of themselves and the DIP Lenders: (1) perfected security interests in and liens on (each as provided herein) the DIP Collateral (as specified herein) with the priorities set forth in paragraph 6 hereof, (2) superpriority claims and liens, and (3) the other protections set forth in this Final Order.

    (v) *Use of proceeds of the DIP Facilities*.  As a condition to entry into the DIP Agreements, the extension of credit under the DIP Facilities and the authorization to use Cash Collateral, the DIP Agents, the DIP Lenders, and the Prepetition Secured Parties require, and the Debtors have agreed, that proceeds of the DIP Facilities shall be used, in each case in a manner consistent with the terms and conditions of this Final Order and the DIP Documents and in accordance with the budget (as the same may be modified from time to time consistent with the terms of the DIP Documents, and subject to such variances as permitted in the DIP Agreements, and as set forth in paragraph 21 hereof, the "Budget"),[4] solely for: (a) working capital and letters of credit, (b) other general corporate purposes of the Debtors; (c) permitted payment of costs of administration of the Cases; (d) payment of such other prepetition obligations as consented to by the DIP Agents (with respect to the DIP Term Loan Agent, with the consent of the Required Lenders (as defined in the DIP Term Credit Agreement)), each in its sole discretion, and as approved by the Court; (e) payment of interest, fees and expenses

---

[4]  A copy of the initial Budget is attached hereto as **Exhibit 2** (the "Initial Budget"), which constitutes the "Approved Budget" under each of the DIP Agreements.

(including without limitation, legal and other professionals' fees and expenses of the DIP Agents and DIP Lenders) owed under the DIP Documents as set forth in paragraph 36 hereof; (f) payment of certain adequate protection amounts to the Prepetition Secured Parties, as set forth in paragraphs 16-17 hereof; (g) the roll-up of the Prepetition ABL Obligations into DIP ABL Obligations, subject to the rights preserved in paragraph 43 of this Final Order; (h) payment of outstanding DIP ABL Obligations; and (i) payment of the Carve Out.  The roll-up of the Prepetition ABL Obligations into DIP ABL Obligations in accordance with the Interim Order and approved on a final basis in this Final Order was necessary as the Prepetition ABL Parties would not have otherwise consented to the use of their Cash Collateral or the subordination of their liens to the DIP Liens, and the DIP ABL Agent and the DIP ABL Lenders will not otherwise consent to providing the DIP ABL Credit Facility and extending credit to the Debtors thereunder.  In addition, the roll-up of the Prepetition ABL Obligations is subject to the reservation of rights in paragraph 43 below, will not prejudice the rights of any party in interest.

(vi)    *Application of Proceeds of Collateral.*  As a condition to entry into the DIP Agreements, the extension of credit under the DIP Facilities and authorization to use Cash Collateral, the Debtors, the DIP Agents, the DIP Lenders, and the Prepetition Secured Parties have agreed that as of and commencing on the date of the Interim Hearing, the Debtors shall apply the proceeds of DIP Collateral in accordance with the Interim Order and this Final Order.

(vii)    *Roll-up Loans.*  Immediately upon entry of the Interim Order and the occurrence of the Closing Date (as defined in the DIP Agreements), all of the Prepetition ABL Obligations were converted into DIP ABL Obligations (the "<u>DIP Roll-Up Obligations</u>"). The conversion (or "roll-up") was authorized, and is hereby authorized on a final basis, as

compensation for, in consideration for, and solely on account of, the agreement of the Prepetition

ABL Lenders to fund amounts under the DIP ABL Credit Facility and not as payments under,

adequate protection for, or otherwise on account of, any Prepetition Obligations.

Notwithstanding any other provision of this Final Order, the DIP Agreements or the Intercreditor

Agreement, all rights of the Prepetition ABL Lenders shall be fully preserved.  The Prepetition

ABL Parties would not otherwise consent to the use of their Cash Collateral or the subordination

of their liens to the DIP ABL Liens, and the DIP Agents and the DIP Lenders would not be

willing to provide the respective DIP Facilities or extend credit to the Debtors thereunder without

the inclusion of the DIP Roll-Up Obligations in the DIP Obligations.  Moreover, the "roll-up" of

all outstanding Prepetition ABL Obligations into DIP ABL Obligations pursuant to the Interim

Order, and approved on a final basis in this Final Order, has resulted in interest savings to the

Debtors and their estates and, because they are subject to the reservation of rights in paragraph

43 below, will not prejudice the right of any party in interest.

        J.      **Adequate Protection**.  The Prepetition ABL Agent, for the benefit of

itself and the Prepetition ABL Parties, and the Prepetition Term Loan Agent, for the benefit of

itself and the Prepetition Term Loan Parties, are each entitled to receive adequate protection to

the extent of any Diminution in Value of their respective interests in the Prepetition Collateral as

set forth in this Final Order.

        K.      **Sections 506(c) and 552(b).**  In light of (i) the DIP Agents' and DIP

Lenders' agreement that their liens and superpriority claims shall be subject to the Carve Out; (ii)

the Prepetition ABL Parties' agreement that their liens shall be subject to the Carve Out and

subordinate to the DIP ABL Liens and, in the case of the Prepetition Term Priority Collateral,

subordinate to the DIP Term Loan Liens; and (iii) the Prepetition Term Loan Parties' agreement

that their liens shall be subject to the Carve Out and subordinate to the DIP Term Loan Liens and, in the case of the Prepetition ABL Priority Collateral, subordinate to the DIP ABL Liens, (a) the Prepetition Secured Parties are each entitled to a waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code, and (b) the DIP Agents, DIP Lenders, and Prepetition Secured Parties are each entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code.

L.      **Good Faith of the DIP Agents and DIP Lenders**.

(i)      *Willingness to Provide Financing*.    The DIP Lenders have indicated a willingness to provide financing to the Debtors subject to: (a) entry of the Interim Order and this Final Order; (b) approval of the terms and conditions of the DIP Facilities and the DIP Documents; (c) satisfaction of the closing conditions set forth in the DIP Documents; and (d) findings by this Court that the DIP Facilities are essential to the Debtors' estates, that the DIP Agents and DIP Lenders are extending credit to the Debtors pursuant to the DIP Documents in good faith, and that the DIP Agents' and DIP Lenders' claims, superpriority claims, security interests and liens and other protections granted pursuant to the Interim Order, this Final Order and the DIP Documents will have the protections provided by section 364(e) of the Bankruptcy Code.

(ii)      *Business Judgment and Good Faith Pursuant to Section 364(e)*. The terms and conditions of the DIP Facilities and the DIP Documents, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available to the Debtors under the circumstances, are ordinary and appropriate for secured financing to debtors in possession, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.  The terms and conditions

of the DIP Facilities and the use of Cash Collateral were negotiated in good faith and at arms'

length among the Debtors, DIP Agents, DIP Lenders, and Prepetition Secured Parties, with the

assistance and counsel of their respective advisors.   Use of Cash Collateral and credit to be

extended under the DIP Facilities shall be deemed to have been allowed, advanced, made, or

extended in good faith by the DIP Agents, DIP Lenders, and Prepetition Secured Parties within

the meaning of section 364(e) of the Bankruptcy Code.

      M.    **Final Hearing**.  Notice of the Final Hearing and the relief requested in the

DIP Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight

courier or hand delivery, to certain parties-in-interest, including: (i) the U.S. Trustee, (ii) those

entities or individuals included on the Debtors' list of 30 largest unsecured creditors on a

consolidated basis, (iii) counsel to the Prepetition ABL Agent, (iv) counsel to the Prepetition

Term Loan Agent; and (v) all other parties entitled to notice under the Local Rules.  The Debtors

have made reasonable efforts to afford the best notice possible under the circumstances and no

other notice is required in connection with the relief set forth in this Final Order.

    Based upon the foregoing findings and conclusions, the DIP Motion and the record

before the Court with respect to the DIP Motion, and after due consideration and good and

sufficient cause appearing therefor,

    **IT IS HEREBY ORDERED** that:

    1.    <u>Final Financing Approved</u>.   The DIP Motion is granted, the Final

Financing (as defined herein) is authorized and approved, and the use of Cash Collateral on a

final basis is authorized, subject to the terms and conditions set forth in the DIP Documents and

this Final Order.   All objections to the DIP Motion and this Final Order to the extent not

withdrawn, waived, settled or resolved are hereby denied and overruled.

**DIP Facilities Authorization**

       2.    <u>Authorization of the DIP Facilities</u>.  The DIP Facilities, including the DIP Roll-Up Obligations, are hereby approved on a final basis.  The Debtors are expressly and immediately authorized and  empowered to continue incurring and performing the DIP Obligations in accordance with, and subject to, the terms of the Interim Order, this Final Order and the DIP Documents, and to continue delivering all instruments, certificates, agreements, and documents which may be required or necessary for the performance by the Debtors under the DIP Facilities and the creation and perfection of the DIP Liens (as defined herein) described in and provided for by the Interim Order, this Final Order and the DIP Documents, including, without limitation, each Guarantor providing its joint and several guarantee of all of the DIP Obligations.  The Debtors are hereby authorized and directed to continue paying, in accordance with the Interim Order and this Final Order, the principal, interest, fees, payments, expenses and other amounts described in the DIP Documents as such amounts become due and without need to obtain further Court approval, including, without limitation, closing fees, arrangement fees, letter of credit fees (including issuance, fronting, and other related charges), unused facility fees, continuing commitment fees, backstop fees, servicing fees, audit fees, appraisal fees, liquidator fees, structuring fees, administrative agent's fees and collateral agent's fees, the reasonable fees and disbursements of the DIP Agents' and DIP Lenders' attorneys, advisors, accountants, and other consultants, whether or not such fees arose before or after the Petition Date, and whether or not the transactions contemplated hereby are consummated, to implement all applicable reserves and to continue taking any other actions that may be necessary or appropriate, all to the extent provided in this Final Order or the DIP Documents.  All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries,

condemnations or otherwise, will be deposited and applied as required by this Final Order and the DIP Documents. The DIP Documents represent valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms.

3.    <u>Authorization to Borrow</u>.  In order to prevent immediate and irreparable harm to the Debtors' estates, from the entry of this Final Order through and including the Termination Declaration (as defined below), and subject to the terms, conditions, limitations on availability and reserves set forth in the DIP Documents and this Final Order, the Debtors are hereby authorized to continue requesting and obtaining extensions of credit (in the form of loans and letters of credit) up to an aggregate outstanding principal amount of not greater than $125,000,000 at any one time outstanding under the DIP ABL Credit Facility, and $60,000,000 at any one time outstanding under the DIP Term Loan Credit Facility (together, the "<u>Final Financing</u>").

4.    <u>DIP Obligations</u>.    The DIP Documents and this Final Order shall constitute and evidence the validity and binding effect of the Debtors' DIP Obligations, which shall be enforceable against the Debtors, their estates and any successors thereto, including without limitation, any trustee appointed in the Cases, or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "<u>Successor Cases</u>").  The DIP Obligations include all loans, letter of credit reimbursement obligations, and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to the DIP Agents or any of the DIP Lenders, under the DIP Documents, the Interim Order or this Final Order, including, without limitation, all principal, accrued interest, costs, fees, expenses and other amounts owing under the DIP Documents.

Without limiting the foregoing, the DIP ABL Obligations shall also include cash management and bank product exposure and derivative and swap exposure and obligations to the extent provided under the DIP Documents. All letters of credit issued for the account of the Debtors under the Prepetition ABL Agreement shall continue in place and all obligations under or in connection with such letters of credit shall be subject to the DIP ABL Agreement and shall constitute DIP ABL Obligations. The Debtors shall be jointly and severally liable for the DIP Obligations. The DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease on the DIP Termination Date (as defined herein), except as provided in paragraph 31 herein. No obligation, payment, transfer, or grant of collateral security hereunder or under the DIP Documents (including any DIP Obligation or DIP Liens (as defined below), and including in connection with any adequate protection provided to the Prepetition Secured Parties hereunder) shall be voidable or recoverable, under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

5.      DIP Liens.  In order to secure the DIP Obligations pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Agents, for the benefit of themselves and the DIP Lenders, were granted upon entry of the Interim Order, and are hereby granted on a final basis, continuing, valid, binding, enforceable, non-avoidable, and

automatically and properly perfected postpetition security interests in and liens on (collectively, the "DIP Liens") all real and personal property, whether now existing or hereafter arising and wherever located, tangible and intangible, of each of the Debtors (the "DIP Collateral"), including without limitation: (a) all cash, cash equivalents, deposit accounts, securities accounts, accounts, other receivables (including credit card receivables), chattel paper, contract rights, inventory (wherever located), instruments, documents, securities (whether or not marketable) and investment property (including, without limitation, (i) all of the issued and outstanding capital stock or equivalents of each of its subsidiaries, including issued and outstanding capital stock or equivalents of each of David's Bridal Canada Inc. and David's Bridal UK Limited and all proceeds thereof (collectively, such capital stock or equivalents, the "Foreign Stock"), and (ii) to the extent the applicable parties have provided consent or have been deemed to consent to a lien on the applicable JV Interest (as defined below), the Debtors' applicable capital stock or equivalents in (1) Executive Management Limited, a limited company incorporated in Hong Kong, (2) Fillberg, Ltd., a limited company incorporated in Hong Kong, (3) Wingreat Limited, a limited company incorporated in Hong Kong and (4) Maxtel Limited, a limited company incorporated in Hong Kong, and all proceeds, products and offspring thereof (collectively, such capital stock or equivalents the "JV Interests")), hedge agreements, furniture, fixtures, equipment (including documents of title), goods, franchise rights, trade names, trademarks, servicemarks, copyrights, patents, license rights, intellectual property, general intangibles (including, for the avoidance of doubt, payment intangibles), rights to the payment of money (including, without limitation, tax refunds and any other extraordinary payments), supporting obligations, guarantees, letter of credit rights, commercial tort claims, causes of action and all substitutions, indemnification rights, all present and future intercompany debt, fee interests in real property

owned by the Debtors, books and records related to the foregoing, accessions and proceeds of the

foregoing, wherever located, including insurance or other proceeds, (b) all owned real property

and all proceeds of leased real property, (c) all proceeds of actions brought under section 549 of

the Bankruptcy Code to recover any post-petition transfer of DIP Collateral; (d) all proceeds of

any avoidance actions brought pursuant to Chapter 5 of the Bankruptcy Code or applicable state

law equivalents, (e) proceeds of the Debtors' rights under section 506(c) (solely to the extent

such rights result from the use of the DIP Facilities or the DIP Collateral, and are, therefore,

enforceable against parties other than the DIP Agents, DIP Lenders or Prepetition Secured

Parties) and 550 of the Bankruptcy Code, and (f) all DIP Collateral that was not otherwise

subject to valid, perfected, enforceable and unavoidable liens on the Petition Date.   DIP

Collateral that is of a type that would be ABL Priority Collateral (as defined in the Intercreditor

Agreement), the other collateral described as DIP ABL Priority Collateral below, and the

proceeds, products and offspring thereof shall, in each case, shall constitute "DIP ABL Priority

Collateral," and DIP Collateral that is of a type that would be Term Priority Collateral (as

defined in the Intercreditor Agreement), the other collateral described as DIP Term Priority

Collateral below, and the proceeds, products and offspring thereof shall, in each case, constitute

"DIP Term Priority Collateral."   For the avoidance of doubt, (i) DIP ABL Priority Collateral

shall include proceeds of the Debtors' rights under sections 506(c) and 550 of the Bankruptcy

Code, solely to the extent such rights are enforceable against DIP ABL Priority Collateral;

(ii) the Debtors' owned real property shall not secure the DIP ABL Obligations or the Prepetition

ABL Obligations; and (iii) DIP Term Priority Collateral shall include (1) the Foreign Stock,

(2) any JV Interest for which the applicable consent has been provided (or has been deemed to

have been provided), (3) all owned real property, (4) the proceeds, products and offspring of

(A) the Debtors' real property leases and (B) any JV Interest for which the applicable consent has not been provided (and has not been deemed to have been provided), and (5) proceeds of the Debtors' rights under sections 506(c) and 550 of the Bankruptcy Code, solely to the extent such rights are enforceable against DIP Term Priority Collateral. In addition, proceeds of any avoidance actions brought pursuant to chapter 5 of the Bankruptcy Code or applicable state law equivalents shall be shared DIP Collateral, and the DIP ABL Liens and the DIP Term Liens (each as defined below) on such proceeds shall rank equally in priority and share such proceeds *pro rata* (based on the outstanding principal amount of the respective DIP Facilities at the time of the distribution of such proceeds to the DIP Agents for the benefit of the DIP Lenders). The DIP Term Obligations, at the option of the Required Lenders (as defined in the DIP Term Loan Credit Agreement), to be exercised in their sole and absolute discretion, but subject in all respects to the DIP Documents and the priorities and provisions set forth in this Final Order, shall be repaid (a) *first*, from DIP Term Priority Collateral that was not subject to any valid, perfected, non-avoidable and enforceable lien in existence on or as of the Petition Date and (b) *second*, from all other DIP Collateral. Notwithstanding the foregoing, DIP Collateral shall not include (a) real property leases, (b) to the extent the applicable parties have not provided consent and have not been deemed to consent to a lien on the applicable JV Interest, such applicable JV Interest, (c) any leasehold interest (or any rights or interests thereunder) the grant of a lien on which, notwithstanding the Bankruptcy Code, shall constitute or result in the abandonment, invalidation or unenforceability of any right, title or interest of the obligor under any lease governing such leasehold interest or a breach or termination pursuant to the terms of, or a default under, any such lease, (d) avoidance actions brought pursuant to Chapter 5 of the Bankruptcy Code or applicable state law equivalents, or (e) the Debtors' rights under section

506(c) or 550 of the Bankruptcy Code; provided, however, that DIP Collateral shall include proceeds of all of the foregoing.

6.    <u>DIP Lien Priority</u>.  The DIP Liens securing the DIP ABL Obligations (the "<u>DIP ABL Liens</u>") are valid, automatically perfected, non-avoidable, senior in priority and superior to any security, mortgage, collateral interest, lien or claim to any of the DIP Collateral, except that the DIP ABL Liens shall be subject to the Carve Out and shall otherwise be junior only to: (i) as to the DIP ABL Priority Collateral, Prepetition ABL Permitted Prior Liens; and (ii) as to the DIP Term Priority Collateral, (A) Prepetition ABL Permitted Prior Liens; (B) the DIP Term Loan Liens (as defined herein); (C) the Prepetition Term Loan Liens; and (D) the Prepetition Term Adequate Protection Liens.  The DIP Liens securing the DIP Term Loan Obligations (the "<u>DIP Term Loan Liens</u>") are valid, automatically perfected, non-avoidable, senior in priority and superior to any security, mortgage, collateral interest, lien or claim to any of the DIP Collateral, except that the DIP Term Loan Liens shall be subject to the Carve Out and shall otherwise be junior only to: (i) as to the DIP Term Priority Collateral, Prepetition Term Loan Permitted Prior Liens; and (ii) as to the DIP ABL Priority Collateral, (A) Prepetition Term Loan Permitted Prior Liens; (B) the DIP ABL Liens; (C) the Prepetition ABL Liens; and (D) the Prepetition ABL Adequate Protection Liens.  Other than as set forth herein or in the DIP Documents, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in the Cases or any Successor Cases, upon the conversion of any of the Cases to a case under Chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Cases or Successor Cases.  The DIP Liens shall not be subject to section 510, 549 or 550 of the Bankruptcy Code.  No lien or interest

avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

7.    <u>Superpriority Claims</u>.   The DIP Agents and DIP Lenders are hereby granted on a final basis, pursuant to Section 364(c)(1) of the Bankruptcy Code, allowed superpriority administrative expense claims in each of the Cases and any Successor Cases (collectively, the "<u>DIP Superpriority Claims</u>") for all DIP Obligations.   Except as set forth herein, the DIP Superpriority Claims shall have priority over any and all other obligations, liabilities and indebtedness of each Debtor, including without limitation any and all administrative expense claims and unsecured claims against the Debtors or their estates in any of the Cases and any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code Sections 105, 326, 328, 330, 331, 364, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114, and any other provision of the Bankruptcy Code, as provided under Section 364(c)(1) of the Bankruptcy Code; *provided, however*, that the DIP Superpriority Claims shall be *pari passu* with each other, without otherwise impairing the lien priorities as set forth herein, and shall be subject to the Carve Out and senior to the Adequate Protection Superpriority Claim.   No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Superpriority Claims.

8.    <u>No Obligation to Extend Credit</u>.   The DIP Agents and DIP Lenders shall have no obligation to make any loan or advance, or to issue, amend, renew or extend any letters of credit or bankers' acceptance under the DIP Documents, unless all of the conditions precedent to the making of such extension of credit or the issuance, amendment, renewal or extension of

such letter of credit or bankers' acceptance under the DIP Documents have been satisfied in full

or waived by the DIP ABL Agent or the DIP Term Loan Agent (with the consent of the Required

Lenders), as applicable, each in its sole discretion, and in accordance with the terms of the DIP

ABL Agreement and the DIP Term Loan Agreement.

    9. <u>Use of Proceeds of DIP Facilities</u>.  From and after the Petition Date, the

Debtors shall use advances of credit under the DIP Facilities, in accordance with the Budget,

only for the purposes specifically set forth in this Final Order and the DIP Documents, and in

compliance with the terms and conditions in this Final Order and the DIP Documents.

    10. <u>Roll-Up of Loans</u>.  Upon entry of the Interim Order and the occurrence of

the Closing Date, all Prepetition ABL Obligations (including, without limitation, all outstanding

letters of credit) were converted and "rolled-up" into DIP Roll-Up Obligations, and such DIP

Roll-Up Obligations now constitute DIP ABL Obligations.  The conversion and roll-up of all

Prepetition ABL Obligations is hereby approved on a final basis.

**<u>Authorization to Use Cash Collateral</u>**

    11. <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions

of this Final Order, the DIP Facilities and the DIP Documents and in accordance with the

Budget, the Debtors are authorized to use Cash Collateral until the DIP Termination Date (as

defined herein); <u>provided</u>, <u>however</u>, that during the Remedies Notice Period (as defined herein)

the Debtors may use Cash Collateral solely to meet payroll obligations and pay expenses critical

to the administration of the Debtors' estates strictly in accordance with the Budget, and as

otherwise agreed by the DIP Agents (with respect to the DIP Term Loan Agent, with the consent

of the Required Lenders) in their sole discretion.  Nothing in this Final Order shall authorize the

disposition of any assets of the Debtors or their estates outside the ordinary course of business, or

any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Final Order and the DIP Documents.

12.    Adequate Protection Liens.

(a)    *Prepetition ABL Adequate Protection Liens*.  Pursuant to Sections 361, 363(e) and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition ABL Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Debtors hereby grant to the Prepetition ABL Agent, for the benefit of itself and the Prepetition ABL Parties, continuing valid, binding, enforceable and perfected postpetition security interests in and liens on the DIP Collateral (the "Prepetition ABL Adequate Protection Liens").

(b)    *Prepetition Term Adequate Protection Liens*.  Pursuant to Sections 361, 363(e) and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Term Loan Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Debtors hereby grant to the Prepetition Term Loan Agent, for the benefit of itself and the Prepetition Term Loan Parties, continuing valid, binding, enforceable and perfected postpetition security interests in and liens on the DIP Collateral (the "Prepetition Term Adequate Protection Liens," and together with the Prepetition ABL Adequate Protection Liens, the "Adequate Protection Liens").

13.    Priority of Adequate Protection Liens.

(a)    The Prepetition ABL Adequate Protection Liens shall be subject to the Carve Out and shall otherwise be junior only to: (i) with respect to the DIP ABL Priority Collateral, (1) Prepetition ABL Permitted Prior Liens; (2) the DIP ABL Liens; and (3) the Prepetition ABL Liens; and (ii) with respect to the DIP Term Priority Collateral, (1) Prepetition

ABL Permitted Prior Liens; (2) the DIP Term Loan Liens; (3) the Prepetition Term Loan Liens; (4) the Prepetition Term Adequate Protection Liens; (5) the DIP ABL Liens; and (6) the Prepetition ABL Liens.  The Prepetition ABL Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the Debtors' assets.

(b)    The Prepetition Term Adequate Protection Liens shall be subject to the Carve Out and shall otherwise be junior only to: (i) with respect to the DIP ABL Priority Collateral (1) Prepetition Term Loan Permitted Prior Liens; (2) the DIP ABL Liens; (3) the Prepetition ABL Liens; (4) the Prepetition ABL Adequate Protection Liens; and (5) the DIP Term Loan Liens; and (ii) with respect to the DIP Term Priority Collateral (1) Prepetition Term Loan Permitted Prior Liens and (2) the DIP Term Loan Liens.  The Prepetition Term Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the Debtors' assets.

(c)    Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter in the Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in any of the Cases or any Successor Cases, or upon the dismissal of any of the Cases or Successor Cases.  The Adequate Protection Liens shall not be subject to sections (a) 510 of the Bankruptcy Code with respect to the Prepetition Obligations, and (b) 549 or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

14.    <u>Adequate Protection Superpriority Claims</u>.

(a)    *Prepetition ABL Superpriority Claim*.    As further adequate protection of the interests of the Prepetition ABL Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Prepetition ABL Agent, on behalf of itself and the Prepetition ABL Parties, is hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (the "<u>Prepetition ABL Superpriority Claim</u>").

(b)    *Prepetition Term Loan Superpriority Claim*.    As further adequate protection of the interests of the Prepetition Term Loan Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Prepetition Term Loan Agent, on behalf of itself and the Prepetition Term Loan Parties, is hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (the "<u>Prepetition Term Loan Superpriority Claim</u>," and together with the Prepetition ABL Superpriority Claim, the "<u>Adequate Protection Superpriority Claims</u>").

15.    <u>Priority of the Adequate Protection Superpriority Claims</u>.    Except as set forth herein, the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 506(c), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy Code; <u>provided</u>, <u>however</u>, that the Adequate Protection Superpriority Claims shall be

*pari passu* with each other, without otherwise impairing the lien priorities as set forth herein, and subject to the Carve Out, and junior to the DIP Superpriority Claims.

16.      <u>Adequate Protection Payments and Protections for Prepetition ABL Parties</u>.  As further adequate protection (the "<u>Prepetition ABL Adequate Protection Payments</u>"), the Debtors are authorized and directed to provide adequate protection to the Prepetition ABL Parties in the form of payment in cash (and as to fees and expenses, without the need for the filing of a formal fee application) of, subject to paragraph 43 hereof (i) interest at the non-default rate (*provided* that, for the avoidance of doubt, interest shall cease to accrue under the Prepetition ABL Documents upon the roll-up of the Prepetition ABL Obligations as provided in the Interim Order), (ii) principal due under the Prepetition ABL Documents to the extent outstanding, subject to the rights preserved in paragraph 43 below, (iii) immediately upon entry of the Interim Order, payment of reasonable and documented fees and expenses (including the reasonable and documented fees, expenses, and disbursements of counsel, financial advisors, auditors, third-party consultants, and other vendors) incurred by the Prepetition ABL Agent arising prior to the Petition Date, including reasonable and documented fees and expenses of (1) Morgan, Lewis & Bockius LLP, (2) Richards, Layton & Finger, PA and (3) Berkeley Research Group, LLC (collectively, the "<u>ABL Advisors</u>"), and (iv) in accordance with the procedures set forth in paragraph 36 hereof, the reasonable and documented fees and expenses (including the reasonable and documented fees, expenses, and disbursements of counsel, financial advisors, auditors, third-party consultants, and other vendors) incurred by the Prepetition ABL Agent arising subsequent to the Petition Date, including reasonable and documented fees and expenses of the ABL Advisors; <u>provided</u>, <u>however</u>, during the continuance of an Event of Default, any such payments to the Prepetition ABL Parties shall be made solely from DIP ABL Priority Collateral.  Upon

commencement of a Challenge (as defined herein), the Debtors are further authorized and directed to pay to the Prepetition ABL Agent, for the benefit of the Prepetition ABL Parties, $250,000 into a non-interest bearing account maintained at Bank of America, N.A. (the "Prepetition ABL Indemnity Reserve") to secure contingent indemnification, reimbursement or similar continuing obligations arising under or related to the Prepetition ABL Documents (the "Prepetition ABL Indemnity Obligations").  (A) The Prepetition ABL Indemnity Reserve shall secure all costs, expenses, and other amounts (including reasonable and documented attorneys' fees) incurred by the Prepetition ABL Agent and the Prepetition ABL Lenders in connection with or responding to (1) formal or informal inquiries and/or discovery requests, any adversary proceeding, cause of action, objection, claim, defense, or other challenge as contemplated in paragraph 43 hereof, or (2) any Challenge against the Prepetition ABL Agent or Prepetition ABL Lenders related to the Prepetition ABL Documents, the Prepetition ABL Obligations, or the Prepetition ABL Liens granted to the Prepetition ABL Agent, as applicable, whether in these Cases or independently in another forum, court, or venue; (B) the Prepetition ABL Indemnity Obligations shall be secured by a first lien on the Prepetition ABL Indemnity Reserve and the funds therein and by a lien on the Prepetition Collateral (subject in all respects to the Intercreditor Agreement); (C) subject to paragraph 36 below, the Prepetition ABL Agent and Prepetition ABL Lenders may apply amounts in the Prepetition ABL Indemnity Reserve against the Prepetition ABL Indemnity Obligations as and when they arise, without further notice to or consent from the Debtors, the Committee, or any other parties in interest and without further order of this Court; and (D) until the Challenge Deadline (as defined below), the Prepetition ABL Agent (for itself and on behalf of the Prepetition ABL Lenders) shall retain and maintain the Prepetition ABL Liens granted to the Prepetition ABL Agent as security for the amount of

any Prepetition ABL Indemnity Obligations not capable of being satisfied from application of the funds on deposit in the Prepetition ABL Indemnity Reserve; provided, that (i) any such indemnification claims shall be subject to (a) the terms of the Prepetition ABL Documents and (b) the rights of parties in interest with requisite standing to object to any such indemnification claim(s) are hereby reserved in accordance with paragraph 43 hereof, and (ii) the Court shall reserve jurisdiction to hear and determine any such disputed indemnification claim(s).   The Prepetition ABL Indemnity Reserve shall be subject to the DIP Liens and the Adequate Protection Liens, subject to the priority set forth herein.   The Prepetition ABL Indemnity Reserve shall be released and the funds applied in accordance with paragraph 24 of this Final Order upon the indefeasible payment in full in cash of the Prepetition ABL Indemnity Obligations or the withdrawal or dismissal of the applicable Challenge.

17.    Adequate Protection Payments and Protections for Prepetition Term Loan Parties.   As further adequate protection (the "Prepetition Term Adequate Protection Payments," and together with the Prepetition ABL Adequate Protection Payments, the "Adequate Protection Payments"), the Debtors are authorized and directed to provide adequate protection to the Prepetition Term Loan Parties in the form of (A) payment in cash (and as to fees and expenses, without the need for the filing of a formal fee application) of (i) accrued interest at the non-default rate due under the Prepetition Term Loan Documents (paid monthly); (ii) immediately upon entry of the Interim Order, the reasonable and documented fees and expenses (including the reasonable and documented fees, expenses, and disbursements of counsel, financial advisors, auditors, third-party consultants, and other vendors) incurred by the Prepetition Term Loan Parties arising prior to the Petition Date (including any fees, disbursements and expenses relating to preparing a bid to acquire the Debtors' assets), including reasonable and documented fees and

expenses of (1) Jones Day, (2) Greenhill & Co. LLC, (3) Pachulski Stang Ziehl & Jones LLP, (4) Paul, Weiss, Rifkind, Wharton & Garrison LLP, (5) Moelis & Company, (6) Cozen O'Connor, P.C., and (7) Cahill Gordon & Reindel LLP (collectively, the "Term Loan Advisors"); and (iii) in accordance with the procedures set forth in paragraph 36 hereof, the reasonable and documented fees and expenses (including the reasonable and documented fees, expenses, and disbursements of counsel, financial advisors, auditors, third-party consultants, and other vendors) incurred by the Prepetition Term Loan Parties arising subsequent to the Petition Date (including any fees, disbursements and expenses relating to preparing a bid to acquire the Debtors' assets), including reasonable and documented fees and expenses of the Term Loan Advisors; provided, however, that during the continuance of an Event of Default, any such payments to the Prepetition Term Loan Parties shall be made solely from the DIP Term Priority Collateral and (B) payment in kind of accrued interest at the default premium under the Prepetition Term Loan Documents.  Upon the commencement of a Challenge, the Debtors are further authorized and directed to pay to the Prepetition Term Loan Agent, for the benefit of the Prepetition Term Loan Lenders, of $250,000 into a non-interest bearing account maintained at a financial institution reasonably acceptable to the Prepetition Term Loan Agent, the Required Lenders (as defined in the Prepetition Term Loan Agreement) and the Debtors (the "Prepetition Term Loan Indemnity Reserve," and, together with the Prepetition ABL Indemnity Reserve, the "Prepetition Indemnity Reserves") to secure contingent indemnification, reimbursement or similar continuing obligations arising under or related to the Prepetition Term Loan Documents (the "Prepetition Term Indemnity Obligations").  The Prepetition Term Loan Indemnity Reserve shall (A) secure all costs, expenses, and other amounts (including reasonable and documented attorneys' fees) incurred by the Prepetition Term Loan Agent and the Prepetition Term Loan

Lenders in connection with or responding to (1) formal or informal inquiries and/or discovery requests, any adversary proceeding, cause of action, objection, claim, defense, or other challenge as contemplated in paragraph 43 hereof, or (2) any Challenge against the Prepetition Term Loan Agent or Prepetition Term Loan Lenders related to the Prepetition Term Loan Documents, the Prepetition Term Loan Obligations, or the Prepetition Term Loan Liens granted to the Prepetition Term Loan Agent, as applicable, whether in these Cases or independently in another forum, court, or venue; (B) the Prepetition Term Indemnity Obligations shall be secured by a first lien on the Prepetition Term Loan Indemnity Reserve and the funds therein and by a lien on the Prepetition Collateral (subject in all respects to the Intercreditor Agreement); (C) subject to paragraph 36 below, the Prepetition Term Loan Agent and Prepetition Term Loan Lenders may apply amounts in the Prepetition Term Loan Indemnity Reserve against the Prepetition Term Indemnity Obligations as and when they arise, without further notice to or consent from the Debtors, the Committee, or any other parties in interest and without further order of this Court; and (D) until the Challenge Deadline (as defined below), the Prepetition Term Loan Agent (for itself and on behalf of the Prepetition Term Loan Lenders) shall retain and maintain the Prepetition Term Loan Liens granted to the Prepetition Term Loan Agent as security for the amount of any Prepetition Term Indemnity Obligations not capable of being satisfied from application of the funds on deposit in the Prepetition Term Loan Indemnity Reserve; provided, that (i) any such indemnification claims shall (a) be subject to the terms of the Prepetition Term Loan Documents and (b) the rights of parties in interest with requisite standing to object to any such indemnification claim(s) are hereby reserved in accordance with paragraph 43 hereof, and (ii) the Court shall reserve jurisdiction to hear and determine any such disputed indemnification claim(s). The Prepetition Term Loan Indemnity Reserve shall be subject to the DIP Liens and

the Adequate Protection Liens, subject to the priority set forth herein.  The Prepetition Term Loan Indemnity Reserve shall be released and the funds applied in accordance with paragraph 24 of this Final Order upon the indefeasible payment in full in cash of the Prepetition Term Loan Obligations or the withdrawal or dismissal of the applicable Challenge.  Notwithstanding anything in this Final Order or the DIP Documents to the contrary, the funding of the Prepetition Indemnity Reserves shall be excluded for the purposes of determining compliance with the Budget or associated variance requirements.

18.    <u>Adequate Protection Reservation</u>.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties hereunder is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition Collateral during the Cases or any Successor Cases.  The receipt by the Prepetition Secured Parties of the adequate protection provided herein shall not be deemed an admission that the interests of the Prepetition Secured Parties are adequately protected.  Further, this Final Order shall not prejudice or limit the rights of the Prepetition Secured Parties to seek additional relief with respect to the use of Cash Collateral or additional adequate protection.

**Provisions Common to DIP Financing**
**<u>and use of Cash Collateral</u>**

19.    <u>Amendment of the DIP Documents</u>.  The DIP Documents may from time to time be amended, modified, or supplemented by the parties thereto without further order of the Court if the amendment, modification, or supplement is (a) non-material and (b) in accordance with the DIP Documents.  In the case of a material amendment, modification, or supplement to the DIP Documents, the Debtors shall provide notice (which shall be provided through electronic mail) to counsel to a Committee (if appointed), the U.S. Trustee and the DIP Agent not party to

such amendment, modification, or supplement (collectively, the "Notice Parties") at least three (3) business days prior to the effective date thereof. Any material modification, amendment or supplement that becomes effective in accordance with this paragraph shall be filed with the Court.

20.    Budget Maintenance.  The use of borrowings and letters of credit under the DIP Facilities shall be limited in accordance with the Budget, as described in paragraph 21 below, depicting on a weekly basis cash revenue, receipts, expenses, disbursements and inventory receipts and levels on a line item basis for the first 13 weeks from the Closing Date, with a break-out for stores being closed (if any) or proposed to be closed (if any), which shall be in form and substance satisfactory to, and approved by, (a) the DIP ABL Agent and (b) the Required Lenders or the DIP Term Loan Agent (with the consent of the Required Lenders) and the Crossover Holder (as defined in the DIP Term Loan Agreement), if any, each in their sole discretion prior to the Closing Date.  The Budget shall be updated by the Debtors (with the consent and/or at the reasonable request of (a) the DIP ABL Agent or (b) the Required Lenders (as defined in the DIP Term Loan Agreement) or the DIP Term Loan Agent (with the consent of the Required Lenders) and the Crossover Holder, if any) from time to time (provided that such updated Budget shall be in form and substance satisfactory to, and approved by, (a) the DIP ABL Agent and (b) the Required Lenders (as defined in the DIP Term Loan Agreement) or the DIP Term Loan Agent (with the consent of the Required Lenders) and the Crossover Holder, if any, each in their sole discretion), but in any event not less than once every four (4) weeks and actuals and variances shall be updated on a weekly basis (with delivery to the DIP Agents before 5:00 p.m., Eastern time, on Wednesday of each week) and the Debtors shall be required to comply with the Budget as provided in paragraph 21 below.

21.    <u>Budget Compliance</u>.    Commencing with the third full calendar week following the Petition Date and for each calendar week thereafter, the Debtors shall not permit (a) Actual Inventory Levels (as defined in the DIP Documents) as at the end of any week to be less than 90% of the Budgeted Inventory Levels (as defined in the DIP Documents) set forth in the Budget as at the end of such week, (b) the Actual Cash Receipts (as defined in the DIP Documents) (without giving effect to borrowings and repayments under DIP Agreements), measured on a cumulative basis, for any Cumulative Four Week Period (as defined in the DIP Documents) or the Cumulative Period (as defined in the DIP Documents), in each case, to be less than 90% of the Budgeted Cash Receipts (as defined in the DIP Documents) (without giving effect to borrowings and repayments under the DIP Agreements), measured on a cumulative basis, for any Cumulative Four Week Period or the Cumulative Period, or (c) the Actual Disbursement Amount (as defined in the DIP Documents), measured on a cumulative basis, for any Cumulative Four Week Period or the Cumulative Period, in each case, to exceed 110% of the Budgeted Disbursement Amount (as defined in the DIP Documents), measured on a cumulative basis, for any such Cumulative Four Week Period or the Cumulative Period.    The Debtors shall, commencing with the conclusion of the first full calendar week after the Petition Date, deliver to the DIP Agents by 5:00 p.m., Eastern time, on Wednesday of each week, a reconciliation for the prior week, the prior four-week cumulative period, as applicable, and the cumulative period from the Closing Date of actual expenses and disbursements, sales receipts and inventory to the amounts for such periods set forth in (a) the Initial Budget and (b) any subsequent Budget consented to by (i) the DIP ABL Agent and (ii) the Required Lenders (as defined in the DIP Term Loan Agreement) or the DIP Term Loan Agent (with the consent of the Required Lenders) and the Crossover Holder, if any, in accordance with Paragraph 20 of this

Final Order ("Budget Variance Report").  The Budget Variance Report shall include a written

discussion of variances by line item including, but not limited to, identification of permanent vs.

temporary or timing related variances.   Budget compliance shall be tested weekly on a rolling

four-week basis (commencing with the fourth full calendar week after the Petition Date, or if a

four-week period has not then elapsed from the Petition Date, such shorter period since the

Petition Date through the Saturday of the most recent week then ended); provided, however, if (i)

the DIP ABL Agent and (ii) the Required Lenders (as defined in the DIP Term Loan Agreement)

or the DIP Term Loan Agent (with the consent of the Required Lenders) and the Crossover

Holder, if any, do not agree to a revised Budget in accordance with Paragraph 20 of this Final

Order, Budget compliance shall not be tested on a rolling four-week basis, but instead shall be

tested on a cumulative basis against the Initial Budget (or last Budget to which the DIP Agents

(with respect to the DIP Term Loan Agent, with the consent of the Required Lenders) consented

in accordance with Paragraph 20 of this Final Order).  Without limiting any of the Debtors' other

reporting obligations under this Final Order or the DIP Documents:    (a) the Debtors'

management shall participate in a weekly call with the financial advisors to the DIP ABL Agent

and  the  DIP  Term  Loan  Lenders  to  discuss  the  budget,  variances  and  other  business

developments; and (b) the Debtors shall provide the financial advisors to the DIP ABL Agent

and  the  DIP  Term  Loan  Lenders  with  weekly  borrowing  base  calculations  and  monthly

unaudited financial statements.

    22. Modification of Automatic Stay.   The  automatic  stay  imposed  under

section 362(a)(2) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the

terms and provisions of this Final Order, including, without limitation, to: (a) permit the Debtors

to grant the DIP Liens, Adequate Protection Liens, DIP Superpriority Claims, and Adequate

Protection Superpriority Claims; (b) permit the Debtors to perform such acts as the DIP Agents, DIP Lenders, or the Prepetition Agents each may reasonably request which is necessary to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the DIP Agents, DIP Lenders, and Prepetition Secured Parties under the DIP Documents, the DIP Facilities and this Final Order; and (d) authorize the Debtors to pay, and the DIP Agents, the DIP Lenders and the Prepetition Secured Parties to retain and apply, payments made in accordance with the terms of this Final Order.

23.     <u>Perfection of DIP Liens and Adequate Protection Liens</u>.    The Interim Order and this Final Order shall be sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens granted herein, including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens, the Adequate Protection Liens, or to entitle the DIP Agents, the DIP Lenders, and the Prepetition Secured Parties to the priorities granted herein.    Notwithstanding the foregoing, each of the DIP Agents (with respect to the DIP Term Loan Agent, as may be directed by the Required Lenders) and Prepetition Agents is authorized to file, as it in its sole discretion deems necessary or advisable, such financing statements, security agreements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens and the Adequate Protection Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; <u>provided</u>, <u>however</u>, that

no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens or the Adequate Protection Liens.  The Debtors are authorized and directed to execute and deliver promptly upon demand to the DIP Agents and the Prepetition Agents all such financing statements, mortgages, notices and other documents as the DIP Agents or the Prepetition Agents may reasonably request.  Each of the DIP Agents and the Prepetition Agents, in its discretion, may file a photocopy of this Final Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instrument.  To the extent that the Prepetition ABL Agent or the Prepetition Term Loan Agent is the secured party under any security agreement, mortgage, leasehold mortgage, landlord waiver, credit card processor notices or agreements, bailee letters, custom broker agreements, financing statement, account control agreements, or any other Prepetition Documents or is listed as loss payee, lender loss payee, mortgagee or additional insured under any of the Debtors' insurance policies, each DIP Agent (as applicable) shall also be deemed to be the secured party under such documents or to be the loss payee, lender loss payee, mortgagee or additional insured, as applicable, including with respect to and as security for the obligations and liabilities owing under the DIP Term Loan Documents and/or the DIP ABL Obligations, as applicable.  Within five (5) business days of the date of a request by a DIP Agent, the Prepetition Agents shall deliver to the applicable DIP Agent (in accordance with the Intercreditor Agreement) any DIP Collateral that, without giving effect to the Bankruptcy Code and this Final Order, is of a type such that perfection of a lien therein may be accomplished only by possession or control by a secured party ("Possessory Collateral"), and in connection therewith, the Prepetition Agents are hereby authorized to deliver such Possessory Collateral in accordance with this Final Order, and the DIP Agents are authorized and directed to receive such

Possessory Collateral.  Until such Possessory Collateral is delivered by the Prepetition Agents to the DIP Agents in accordance with the immediately preceding sentence, the Prepetition Agents shall serve as agents for the DIP Agents for purposes of perfecting the DIP Agents' liens on such Possessory Collateral, and following delivery of the Possessory Collateral pursuant to this Final Order, the DIP Agents shall serve as agents for the Prepetition Agents for purposes of perfecting the Prepetition Agents' liens, including, without limitation, the Prepetition Term Adequate Protection Liens, on such Possessory Collateral.

24.    <u>Application of Proceeds of Collateral</u>.  As a condition to the entry of the DIP Documents, the extension of credit under the DIP Facilities and the authorization to use Cash Collateral, the Debtors, the DIP ABL Agent, the DIP Term Loan Agent, the DIP ABL Lenders, and the DIP Term Loan Lenders have agreed that as of and commencing on the date of the Interim Hearing, net proceeds of DIP Collateral, including, without limitation, whether sold in the ordinary course, liquidated, or otherwise, shall be applied as follows: (a) with respect to DIP ABL Priority Collateral (i) *first*, to costs and expenses, including fees and expenses of counsel, of the DIP ABL Agent; (ii) *second*, to permanently reduce the Prepetition ABL Obligations; (iii) *third*, to reduce the DIP ABL Obligations, and (iv) after indefeasible repayment in full in cash of the Prepetition ABL Obligations and the DIP ABL Obligations (including, in each case, provision for contingent obligations) and the termination of the DIP ABL Credit Facility (w) *fourth*, to costs and expenses, including fees and expenses of counsel, of the DIP Term Loan Agent, the DIP Term Lenders and the Prepetition Term Loan Parties (including, without limitation, the fees and expenses of the Term Loan Advisors as advisors to the foregoing parties), (x) *fifth*, to permanently reduce the DIP Term Loan Obligations, (y) *sixth*, to permanently reduce the Prepetition Term Loan Superpriority Claim and (z) *seventh*, to reduce the

Prepetition Term Loan Obligations; and (b) with respect to DIP Term Priority Collateral, (i) *first*, to costs and expenses, including fees and expenses of counsel, of the DIP Term Loan Agent, the DIP Term Lenders and the Prepetition Term Loan Parties (including, without limitation, the fees and expenses of the Term Loan Advisors as advisors to the foregoing parties); (ii) *second,* to reduce the DIP Term Loan Obligations; and (iii) *third*, to reduce the Prepetition Term Loan Superpriority Claim; (iv) *fourth*, to reduce the Prepetition Term Loan Obligations, and (v) after indefeasible repayment in full in cash of the Prepetition Term Loan Obligations and the DIP Term Loan Obligations (including, in each case, provision for contingent obligations), (x) *fifth*, to costs and expenses, including fees and expenses of counsel, of the DIP ABL Agent, (y) *sixth*, to permanently reduce the Prepetition ABL Obligations, and (z) *seventh*, to reduce the DIP ABL Obligations.  The reduction of the Prepetition Secured Obligations is subject to the preservation of rights provided in paragraph 43 herein.

> 25.    <u>Protections of Rights of DIP Agents, DIP Lenders and Prepetition Secured Parties</u>.

> (a)    Unless the DIP Agents (with respect to the DIP Term Loan Agent, with the consent of the Required Lenders) and the Prepetition Agents (with respect to the Prepetition Term Loan Agent, with the consent of the Required Lenders (as defined in the Prepetition Term Loan Agreement)) shall have provided their prior written consent, or all DIP Obligations and all Prepetition Secured Obligations have been indefeasibly paid in full in cash, in any of these Cases or any Successor Cases the Debtors shall neither seek entry of, nor support any motion or application seeking entry of, and otherwise shall object to any motion or application seeking entry of, an order (including any order confirming any plan of reorganization or liquidation) that authorizes any of the following: (i) the obtaining of credit or the incurring of

indebtedness that is secured by a security, mortgage, or collateral interest or other Lien on all or any portion of the DIP Collateral or Prepetition Collateral and/or that is entitled to administrative priority status, in each case that is superior to or *pari passu* with the DIP Liens, the DIP Superpriority Claims, the Prepetition Liens, the Prepetition Adequate Protection Liens, and/or the Adequate Protection Superpriority Claims except as expressly set forth in this Final Order; (ii) the use of Cash Collateral for any purpose other than as permitted in the DIP Documents and this Final Order; (iii) the return of goods pursuant to section 546(h) of the Bankruptcy Code (or other return of goods on account of any prepetition indebtedness) to any creditor of any Debtor or any creditor's taking any setoff against any of its prepetition indebtedness based upon any such return of goods pursuant to section 553 of the Bankruptcy Code; or (iv) any modification of any of the DIP Agents', DIP Lenders', or the Prepetition Secured Parties' rights under this Final Order, the DIP Documents or the Prepetition Documents with respect any DIP Obligations or Prepetition Secured Obligations.  It shall be an Event of Default under the DIP Documents and this Final Order if, in any of these Cases or any Successor Cases, any order is entered granting any of the relief enumerated in provisions (i) through (iv) of the previous sentence.

(b)      No Debtor shall object to any DIP Lenders or any Prepetition Secured Parties credit bidding up to the full amount of the applicable outstanding DIP Obligations, Prepetition ABL Obligations (as applicable), and Prepetition Term Loan Obligations (as applicable), in each case including any accrued interest and expenses, in any sale of any DIP Collateral or Prepetition Collateral, as applicable, whether such sale is effectuated through Section 363 or Section 1129 of the Bankruptcy Code, by a Chapter 7 trustee under Section 725 of the Bankruptcy Code, or otherwise.

26.  <u>Credit Bidding</u>.  In connection with any sale process authorized by the Court, (i) the DIP Agents (with respect to the DIP Term Loan Agent, with the consent of the Required Lenders) and DIP Lenders and (ii) subject to the rights preserved in paragraph 43, Prepetition ABL Agent, Prepetition Term Loan Agent and Prepetition Secured Parties, or any assignee or designee of any of the foregoing, shall be authorized to credit bid, consistent with the applicable DIP Documents and/or Prepetition Documents, some or all of their claims for their respective priority collateral (each a "<u>Credit Bid</u>") pursuant to section 363(k) of the Bankruptcy Code, subject in each case to the rights and duties of the parties under the Intercreditor Agreement and to the provision of consideration sufficient to indefeasibly pay in full in cash any senior liens on the collateral that is subject to the credit bid except to the extent otherwise agreed by the holder of such senior lien in their sole and absolute discretion.  Each of the Prepetition Agents, the Prepetition Secured Parties and the DIP Agents shall be considered a "Qualified Bidder" with respect to their rights to acquire all or any of the assets by Credit Bid.

27.  <u>Proceeds of Subsequent Financing</u>.  If the Debtors, any trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in these Cases or any Successor Cases, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c) or 364(d) or in violation of the DIP Documents at any time prior to the indefeasible repayment in full of all DIP Obligations and Prepetition Secured Obligations, and the termination of the DIP Agents' and DIP Lenders' obligation to extend credit under the DIP Facilities, including subsequent to the confirmation of any plan with respect to any or all of the Debtors and the Debtors' estates, and such facilities are secured by any DIP Collateral, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agents to be applied in accordance with this Final Order and the DIP Documents.

28.     Cash Collection.

(a)     From and after the date of the entry of the Interim Order, all collections and proceeds of any DIP ABL Priority Collateral or Prepetition ABL Priority Collateral or services provided by any Debtor and all Cash Collateral that shall at any time come into the possession, custody, or control of any Debtor, or to which any Debtor is now or shall become entitled at any time, shall be promptly deposited in the same lock-box and/or deposit accounts into which the collections and proceeds of the Prepetition ABL Priority Collateral were deposited under the Prepetition Documents (or in such other accounts as are designated by the DIP ABL Agent from time to time) (collectively, the "Cash Collection Accounts"), which accounts shall be subject to the sole dominion and control of the DIP ABL Agent.  All proceeds and other amounts in the Cash Collection Accounts shall be remitted to the DIP ABL Agent for application in accordance with the DIP ABL Documents and this Final Order.  Unless otherwise agreed to in writing by the DIP Agents (with respect to the DIP Term Loan Agent, with the consent of the Required Lenders) and Prepetition Agents, the Debtors shall maintain no accounts except those identified in any cash management order entered by the Court (a "Cash Management Order").  The Debtors and the financial institutions where the Debtors' Cash Collection Accounts are maintained (including those accounts identified in any Cash Management Order) are authorized and directed to remit, without offset or deduction, funds in such Cash Collection Accounts upon receipt of any direction to that effect from the DIP ABL Agent consistent with the DIP ABL Agreement subject to paragraph 34 herein.

(b)     Notwithstanding anything in this Final Order or any of the DIP Documents to the contrary, (i) (A) upon any draw under the DIP Term Loan Facility, the Debtors shall first apply the proceeds of the DIP Term Loan Facility to any outstanding Prepetition ABL

Obligations and/or DIP ABL Obligations (other than letters of credit and/or any reimbursement obligations in respect thereof) as provided in the DIP Documents and thereafter deposit any remaining proceeds into a newly-formed, segregated, non-commingled deposit account furnished by a depositary bank acceptable to the DIP Term Loan Agent (initially, Account No. xxxxxx3810 maintained at the Bank of America, N.A.) which is required to be subject to the control of the DIP Term Loan Agent (such account, the "DIP Term Account"), subject to the priorities in the immediately succeeding clause (B); and (B) the DIP Term Loan Agent shall have a first priority security interest in and lien on the DIP Term Account and the DIP ABL Agent shall have a security interest in and lien on the DIP Term Account junior only to the first priority security interest in and lien on (and no other person shall have any security interest in or lien on) the DIP Term Account of the DIP Term Loan Agent; and (ii) the Debtor' use of the proceeds in the DIP Term Account shall be subject to (and limited to the extent set forth in) this Final Order and the DIP Term Loan Documents; provided that, for the avoidance of doubt, except for amounts necessary to pay outstanding Prepetition ABL Obligations and/or DIP ABL Obligations as of the Closing Date under the DIP Documents (other than letters of credit and/or reimbursement obligations in respect thereof)), the Debtors shall not apply, nor shall the DIP ABL Agent accept or take (including by way of any sweep of any account containing), any of the DIP Term Loans or the proceeds thereof to make any payment in reduction of the revolving credit loans under the obligations owing under the DIP ABL Agreement and/or the Prepetition ABL Agreement or nor shall the Debtors otherwise deposit any proceeds of the DIP Term Loans in any deposit account subject to a sweep by the DIP ABL Agent or any DIP ABL Lender.

29.    <u>Maintenance of DIP Collateral</u>.  Until the indefeasible payment in full of all DIP Obligations, all Prepetition Secured Obligations, and the termination of the DIP Agents'

and the DIP Lenders' obligation to extend credit under the DIP Facilities, the Debtors shall: (a) insure the DIP Collateral as required under the DIP Facilities or the Prepetition Documents, as applicable; and (b) maintain the cash management system which has been agreed to by the DIP Agents (with respect to the DIP Term Loan Agent, with the consent of the Required Lenders) or as otherwise required by the DIP Documents and the Prepetition Documents.

30.    <u>Disposition of DIP Collateral</u>.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP ABL Priority Collateral or Prepetition ABL Priority Collateral other than in the ordinary course of business without the prior written consent of the DIP ABL Agent and Prepetition ABL Agent (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP ABL Agent, DIP ABL Lenders, or Prepetition ABL Parties, or from any order of this Court), except as otherwise permitted by the DIP ABL Documents or otherwise ordered by the Court, and subject to the Intercreditor Agreement.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Term Priority Collateral or Prepetition Term Priority Collateral other than in the ordinary course of business without the prior written consent of the DIP Term Loan Agent (with the consent of the Required Lenders) and Prepetition Term Loan Agent (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP Term Loan Agent, DIP Term Loan Lenders, or Prepetition Term Loan Parties, or from any order of this Court), except as otherwise permitted by the DIP Term Loan Documents or otherwise ordered by the Court, and subject to the Intercreditor Agreement.

31.    <u>DIP Termination Date</u>.  On the applicable DIP Termination Date (as defined herein), (a) all applicable DIP Obligations shall be immediately due and payable, all commitments to extend credit under the applicable DIP Facilities will terminate, other than as

required in paragraph 40 with respect to the Carve Out, all treasury and cash management, hedging obligations and bank product obligations shall be cash collateralized, and all letters of credit and bankers' acceptances outstanding shall be cash collateralized in an amount equal to 105% of the face amount thereof, and such cash collateral shall not be subject to or subordinate to the Carve Out; (b) all authority to use Cash Collateral shall cease, provided, however, that during the Remedies Notice Period (as defined herein), the Debtors may use Cash Collateral to pay payroll and other expenses critical to the administration of the Debtors' estates strictly in accordance with the Budget as determined by each DIP Agent (with respect to the DIP Term Loan Agent, with the consent of the Required Lenders) in its sole discretion; and (c) otherwise exercise rights and remedies under the DIP Documents in accordance with this Final Order (including, without limitation, paragraph 34). For the purposes of this Final Order, the "DIP Termination Date" shall mean the "Revolving Credit Termination Date" as defined in the DIP ABL Agreement and the "Term Loan Termination Date" as defined in the DIP Term Loan Agreement, as applicable.

32.     Events of Default. The occurrence of any of the following events, unless waived by the DIP Agents (with respect to the DIP Term Loan Agent, with the consent of the Required Lenders) in writing and in accordance with the terms of the DIP Agreements, shall constitute an event of default (collectively, the "Events of Default"): (a) the failure of the Debtors to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under this Final Order, or (b) the occurrence of an "Event of Default" under either of the DIP Agreements.

33.    <u>Milestones</u>.  The failure of the Debtors to comply with any of the Case milestones set forth on **<u>Exhibit 1</u>** attached hereto (the "<u>Milestones</u>") shall constitute an Event of Default under (a) each of the DIP Agreements and (b) this Final Order.

34.    <u>Rights and Remedies Upon Event of Default</u>.  Immediately upon the occurrence and during the continuation of an Event of Default under any of the DIP Documents, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion or notice to, hearing before, or order from the Court, but subject to the terms of this Final Order (a) each DIP Agent (with respect to the DIP Term Loan Agent, with the consent of the Required Lenders) may declare (any such declaration shall be referred to herein as a "<u>Termination Declaration</u>") (i) all DIP Obligations owing under the respective DIP Documents to be immediately due and payable (including the cash collateralization of all outstanding letters of credit in accordance with the DIP Documents), (ii) the termination, reduction or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains under the respective DIP Facilities, (iii) termination of the respective DIP Facilities and the respective DIP Documents as to any future liability or obligation of the applicable DIP Agents and the DIP Lenders, but without affecting any of the DIP Liens or the DIP Obligations, and (iv) that the application of the Carve Out has occurred through the delivery of the Carve Out Trigger Notice to the Borrower; and (b) either the DIP ABL Agent (in the case of Cash Collateral of proceeds of the DIP ABL Priority Collateral) or the DIP Term Loan Agent (in the case of Cash Collateral of proceeds of the DIP Term Priority Collateral and proceeds in the DIP Term Account, and with the consent of the Required Lenders) may declare a termination, reduction or restriction on the ability of the Debtors to use Cash Collateral (the date which is the earliest to occur of any such date a Termination Declaration is delivered and the DIP

Termination Date shall be referred to herein as the "Termination Date").  The Termination Declaration shall be given by electronic mail (or other electronic means) to counsel to the Debtors, counsel to the DIP ABL Agent (if delivered by the DIP Term Loan Agent), counsel to the DIP Term Loan Agent (if delivered by the DIP ABL Agent), counsel to the Crossover Holder, counsel to a Committee (if appointed), counsel to the Indenture Trustee, any affected landlord and the U.S. Trustee.  The automatic stay in the Cases otherwise applicable to the DIP Agents, the DIP Lenders and the Prepetition Secured Parties is hereby modified so that five (5) business days after the date a Termination Declaration is delivered (the "Remedies Notice Period"): (a) the applicable DIP Agent and the DIP Lenders shall be entitled to exercise their rights and remedies in accordance with the respective DIP Documents and this Final Order to satisfy the relevant DIP Obligations, DIP Superpriority Claim and DIP Liens, subject to the Carve Out; (b) the applicable Prepetition Secured Parties shall be entitled to exercise their rights and remedies in accordance with the applicable Prepetition Documents and this Final Order to satisfy the relevant Prepetition Secured Obligations, Adequate Prepetition Superpriority Claims and Prepetition Adequate Protection Liens, subject to the Carve Out.  During the Remedies Notice Period, the Debtors, a Committee (if appointed) and/or any party in interest shall be entitled to seek an emergency hearing within the Remedies Notice Period with the Court.  Unless the Court orders otherwise, the automatic stay, as to all of the DIP Agents, DIP Lenders, and Prepetition Secured Parties, shall automatically be terminated at the end of the Remedies Notice Period without further notice or order.  Upon expiration of the Remedies Notice Period, the DIP Agents, DIP Lenders, and the Prepetition Secured Parties shall be permitted to exercise all remedies set forth herein, in the DIP Documents, the Prepetition Documents, and as otherwise

available at law without further order of or application or motion to the Court consistent with the Intercreditor Agreement.

35.     Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Final Order.  The DIP Agents, the DIP Lenders, and the Prepetition Secured Parties have acted at arms' length in good faith in connection with the Interim Order and this Final Order and are entitled to rely upon the protections granted herein and by section 364(e) of the Bankruptcy Code.  Based on the findings set forth in the Interim Order, this Final Order and the record made during the Interim and Final Hearings, and in accordance with section 364(e) of the Bankruptcy Code, any modification, amendment, reversal or vacatur by subsequent order of this Court or any other court shall not affect the validity and enforceability of any advances previously made or made hereunder, or lien, claim, or priority authorized or created hereby.

36.     DIP and Other Expenses; Procedures for Payment of DIP Agents', DIP Lenders' and Prepetition Secured Parties' Professional Fees and Expenses.  The Debtors are authorized and directed to pay all reasonable and documented prepetition and postpetition fees and expenses of the DIP Agents and DIP Lenders in connection with the DIP Facilities, as provided in the DIP Documents, or incurred in connection with any proposed exit or acquisition financing, chapter 11 plan or transactions contemplated thereunder or sale transaction (including the preparation and negotiation of the documentation relating to any such exit or acquisition financing, plan or sale transaction), whether or not the transactions contemplated hereby are consummated, including reasonable and documented attorneys' fees, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, and indemnification and reimbursement of reasonable and documented fees and expenses, including the fees and

expenses of the ABL Advisors and the Term Loan Advisors.  Payment of all professional fees

and expenses of the DIP Agents, the DIP Lenders and the Prepetition Secured Parties addressed

in this Final Order (including the ABL Advisors and the Term Loan Advisors) shall not be

subject to allowance by the Court.  Professionals for the DIP Agents, DIP Lenders and the

Prepetition Secured Parties (including the ABL Advisors and the Term Loan Advisors) shall not

be required to comply with the U.S. Trustee fee guidelines, however any time that such

professionals seek payment of fees and expenses from the Debtors, each professional shall

provide copies of its invoices (which shall not be required to contain time entries, but shall

include a general, brief description of the nature of the matters for which services were

performed, and which may be redacted or modified to the extent necessary to delete any

information subject to the attorney-client privilege, any information constituting attorney work

product, or any other confidential information, and the provision of such invoices shall not

constitute any waiver of the attorney client privilege or of any benefits of the attorney work

product doctrine) to the U.S. Trustee and counsel for a Committee (if appointed)

contemporaneously with the delivery of such fee and expense statements to the Debtors.  Any

objections raised by the Debtors, the U.S. Trustee or a Committee (if appointed) with respect to

the Debtors' payment of the amounts in such invoices must be filed with the Bankruptcy Court

and served within ten (10) days of such party's receipt of such invoice, and any such objection

shall be subject to resolution by the Court.  Pending such resolution, the undisputed portion of

any such invoice will be paid promptly by the Debtors.  Notwithstanding the foregoing, the

Debtors are authorized and directed to pay on the Closing Date (as defined in the DIP

Documents) all reasonable, undisputed and documented fees, costs and expenses, including fees

and expenses of counsel, of the DIP Agents, the DIP Lenders and the Prepetition Secured Parties

incurred on or prior to such date without the need for any professional engaged by the DIP Agents, the DIP Lenders or the Prepetition Secured Parties to first deliver a copy of its invoice as provided for herein.  No attorney or advisor to the DIP Agents, DIP Lenders or the Prepetition Secured Parties shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.  Any and all fees, costs, and expenses paid prior to the Petition Date by any of the Debtors to the DIP Agents or DIP Lenders in connection with or with respect to the DIP Facilities, are hereby approved in full.

37.    <u>Indemnification</u>.  The Debtors shall indemnify and hold harmless the DIP Agents and the DIP Lenders in accordance with the terms and conditions of the DIP Agreements.  Upon the earlier of (A) payment in full in cash of the DIP ABL Obligations or (B) conclusion of the Remedies Notice Period, the Debtors shall pay $250,000 from proceeds of the DIP Collateral into an indemnity account (the "<u>DIP ABL Indemnity Account</u>") subject to first priority liens of the DIP ABL Agent, for the benefit of the DIP ABL Lenders.  The DIP ABL Indemnity Account shall be released and the funds applied in accordance with paragraph 24 of this Final Order upon the indefeasible payment in full in cash of the DIP ABL Obligations and the receipt by the DIP ABL Agent and each of the DIP ABL Lenders of releases from the Debtors and their estates, with respect to any claims arising out of or related to the DIP ABL Documents, acceptable to the DIP ABL Agent and the DIP ABL Lenders, each in their sole discretion.  Upon the earlier of (A) payment in full in cash of the DIP Term Loan Obligations or (B) conclusion of the Remedies Notice Period, the Debtors shall pay $250,000 from proceeds of the DIP Collateral into an indemnity account (the "<u>DIP Term Loan Indemnity Account</u>") subject to first priority liens of the DIP Term Loan Agent, for the benefit of the DIP Term Loan Lenders.  The DIP Term Loan Indemnity Account shall be released and the funds applied in accordance with paragraph 24 of

this Final Order upon the indefeasible payment in full in cash of the DIP Term Loan Obligations and the receipt by the DIP Term Loan Agent and each of the DIP Term Loan Lenders of releases from the Debtors and their estates, with respect to any claims arising out of or related to the DIP Term Loan Documents, acceptable to the DIP Term Loan Agent (with the consent of the Required Lenders) and the DIP Term Loan Lenders, each in their sole discretion.

38.    <u>Proofs of Claim</u>.  Notwithstanding any order entered by this Court in relation to the establishment of a bar date in any of the Cases or any Successor Cases to the contrary, the DIP Agents, the DIP Lenders, and Prepetition Secured Parties will not be required to file proofs of claim in any of the Cases or Successor Cases for any claims arising under the DIP Documents or the Prepetition Documents.  The Debtors' stipulations, admissions, and acknowledgments and the provisions of the Interim Order and this Final Order shall be deemed to constitute a timely filed proof of claim for the DIP Agents, the DIP Lenders and the Prepetition Secured Parties with regard to all claims arising under the DIP Documents or the Prepetition Documents.  Notwithstanding the foregoing, each of (a) the Prepetition ABL Agent on behalf of itself and the Prepetition ABL Parties and (b) the Prepetition Term Loan Agent on behalf of itself and the Prepetition Term Loan Parties is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate or master proofs of claim in each of the Cases or Successor Cases for any claim described herein (with any such aggregate or master proof of claim filed in the Cases deemed to be filed in all Cases of the Debtors and asserted against all of the Debtors).  Any proof of claim filed by the Prepetition ABL Agent or Prepetition Term Loan Agent shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the Prepetition ABL Parties or Prepetition Term Loan Parties, respectively.  Any order entered by the Court in

relation to the establishment of a bar date in any of the Cases or Successor Cases shall not apply to any claim of the DIP Agents, the DIP Lenders, and the Prepetition Secured Parties. The provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest.

39.   <u>Rights of Access and Information</u>.  Without limiting the rights of access and information afforded the DIP Agents and DIP Lenders under the DIP Documents, the Debtors and their agents and advisors shall be, and hereby are, required to afford representatives, agents and/or employees of the DIP Agents, DIP Lenders, and the Prepetition Secured Parties reasonable access to the Debtors' premises and their books and records in accordance with the DIP Documents and Prepetition Documents, as applicable, including, without limitation, (a) upon reasonable advance notice, permit the DIP Agents and Prepetition Agents to conduct, at their discretion and at the Debtors' cost and expense, field audits, collateral examinations, liquidation valuations and inventory appraisals at reasonable times in respect of any or all of the DIP Collateral and Prepetition Collateral; and (b) reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested.  In addition, the Debtors authorize their independent certified public accountants, financial advisors, investment bankers and consultants, including Evercore Group L.L.C. and AlixPartners to cooperate, consult with, and provide to the DIP Agents and the Crossover Holder, if any, (and so long as an Event of Default has occurred and is continuing, each DIP Lender) and the Prepetition Agents all such information as may be reasonably requested with respect to the business, results of operations and financial condition of any of the Borrower or Guarantors.

40.    <u>Carve Out</u>.

(a)    Subject to the terms and conditions contained in this paragraph 40, the DIP Liens, DIP Superpriority Claims, the Prepetition Liens, the Adequate Protection Liens and the Adequate Protection Superpriority Claims are all subordinate to the following (collectively, the "<u>Carve Out</u>"):

(i)    Allowed administrative expenses pursuant to 28 U.S.C. § 1930(a)(6) and 28 U.S.C. § 156(c) for fees required to be paid to the Clerk of this Court;

(ii)    All accrued and unpaid fees, disbursements, costs and expenses incurred by professionals retained by the Debtors or the Committee (the "<u>Case Professionals</u>") prior to the delivery of the Carve Out Trigger Notice (as defined below) and allowed at any time by this Court and earned success or transaction fees of Case Professionals reflected in the Budget and allowed at any time by this Court, in each case, solely to the extent the same are reflected as estimated professional fees and disbursements in, and maintained as a reserve under, the most recent borrowing base report delivered to the DIP Agents by the Debtors prior to the delivery of a Carve Out Trigger Notice;

(iii)    All accrued and unpaid fees, disbursements and expenses incurred by the Case Professionals from and after the date of service of a Carve Out Trigger Notice, to the extent allowed at any time, in an aggregate amount not to exceed $2,000,000 (the "<u>Wind-Down Carve Out Amount</u>") less the amount of any prepetition retainers received by such Case Professionals and not applied to the fees, disbursements, costs and expenses set forth in clause (ii) above; and

(iv)    All reasonable fees and expenses incurred by a trustee under Section 726(b) of the Bankruptcy Code in an amount not to exceed $50,000.

(b)    The Debtors shall reflect in each borrowing base certificate (and the DIP ABL Agent shall at all times be entitled to implement and maintain) a reserve against the borrowing base in the amount equal to the then estimated Carve Out (which may include an estimate for future amounts), and the Budget shall be required to include the Debtors' projections of such estimated Carve Out.  So long as no Carve Out Trigger Notice has been issued by the DIP Agents (with respect to the DIP Term Loan Agent, with the consent of the Required Lenders), the Debtors shall be permitted to pay compensation and reimbursement of expenses allowed and payable under Sections 330 and 331 of the Bankruptcy Code or under this Final Order but solely to the extent the same are incurred in accordance with (and not in excess of those amounts set forth in) the Budget and are reflected as estimates in, and maintained as a reserve under, the most recent borrowing base report delivered to the DIP Agents by the Debtors prior to the delivery of the Carve Out Trigger Notice, as the same may be due and payable and otherwise allowed and payable by order of the Court, and the same shall not reduce the Wind-Down Carve Out Amount.  The Carve Out shall not be deemed increased if actual fees are higher in fact than the estimates provided on a borrowing base report.  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered (i) by the DIP ABL Agent to the Debtors and their counsel, the DIP Term Loan Agent, the U.S. Trustee and lead counsel to any Committee, which notice may be delivered at any time by the DIP ABL Agent (1) in connection with the repayment in full in cash of the DIP ABL Obligations and the Prepetition ABL Obligations and the termination of all commitments thereunder and all letters of credit under the Prepetition ABL Facility and the DIP ABL Facility having been cancelled, backed, or cash collateralized in accordance with the terms thereof, and all bank product obligations shall be cash collateralized in a manner and amount acceptable to the DIP ABL Agent or the Prepetition

ABL Agent (as applicable) or (2) following the occurrence and continuance of any Event of Default and, in any case, shall specify that it is a "Carve Out Trigger Notice," or (ii) by the DIP Term Loan Agent to the Debtors and their counsel, the DIP ABL Agent, the U.S. Trustee and lead counsel to any Committee, which notice may be delivered at any time by the DIP Term Loan Agent (1) in connection with the repayment in full in cash of the DIP Term Loan Obligations and the Prepetition Term Loan Obligations or (2) following the occurrence and continuance of any Event of Default and, in any event, shall specify that it is a "Carve Out Trigger Notice."

(c)    Upon delivery of a Carve Out Trigger Notice, an amount equal to the Carve Out (as of the date of the Carve Out Trigger Notice), shall, to the extent reflected in the most recent borrowing base certificate delivered to the DIP ABL Agent by the Debtors and maintained as part of a reserve against the borrowing base, be funded with the proceeds of the DIP ABL Facility (which shall then constitute DIP ABL Obligations and be included in the repayment amount) and/or Cash Collateral.  Following delivery of a Carve Out Trigger Notice, upon the funding of the Carve Out as of the date of the Carve Out Trigger Notice as described above, none of the DIP ABL Agent, the DIP Term Loan Agent, the DIP Lenders, and the Prepetition Secured Parties shall have any further liability whatsoever for the Carve Out (including any amounts described in subsections (a)(i)-(iv) above) or any subordination in respect thereof.  None of the DIP ABL Agent, the DIP Term Loan Agent, the DIP Lenders, and the Prepetition Secured Parties shall be responsible for funding any "success," "restructuring," "transaction" or similar fee payable to the Debtor's investment banker or financial advisor, and in no event shall any such amounts be paid out of the Carve Out.  For the avoidance of doubt, the Carve Out shall be senior to the DIP Liens, the DIP Superpriority Claim, the Prepetition Liens,

the Adequate Protection Liens and the Adequate Protection Superpriority Claims, and any and all other forms of adequate protection, liens or claims securing the DIP Obligations and/or the Prepetition Secured Obligations.

(d)     Nothing herein, including the inclusion of line items in the Budget for Case Professionals, shall be construed as consent to the allowance of any particular professional fees or expense of the Debtors, of any Committee, or of any other person or shall affect the right of the DIP Agents, the DIP Lenders, the Prepetition Agents, or the Prepetition Secured Lenders to object to the allowance and payment of such fees and expenses.  The DIP ABL Agent, the DIP Term Loan Agent, the DIP Lenders and the Prepetition Secured Parties shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Case Professionals incurred in connection with the Case or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in the Interim Order or this Final Order or otherwise shall be construed to obligate the DIP ABL Agent, the DIP Term Loan Agent, the DIP Lenders or the Prepetition Secured Parties in any way to pay compensation to or to reimburse expenses of any Case Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

41.     Limitations on Use of DIP Proceeds, Cash Collateral and Carve Out.  The DIP Facilities, the DIP Collateral, the Prepetition Collateral, the Cash Collateral and the Carve Out may not be used in connection with: (a) preventing, hindering, or delaying any of the DIP Agents', the DIP Lenders', or the Prepetition Secured Parties' permitted enforcement or realization upon any of the DIP Collateral or Prepetition Collateral in accordance with the DIP Documents, the Prepetition Documents, the Interim Order and this Final Order; (b) using or seeking to use Cash Collateral or selling or otherwise disposing of DIP Collateral without the

consent of the DIP Agents (with respect to the DIP Term Loan Agent, with the consent of the Required Lenders) or as permitted by the DIP Documents; (c) using or seeking to use any insurance proceeds constituting DIP Collateral without the consent of the DIP Agents (with respect to the DIP Term Loan Agent, with the consent of the Required Lenders); (d) incurring Indebtedness (as defined in the DIP ABL Agreement or the DIP Term Loan Agreement) without the prior consent of the DIP Agents (with respect to the DIP Term Loan Agent, with the consent of the Required Lenders), except to the extent permitted under the DIP Agreements; (e) seeking to amend or modify any of the rights granted to the DIP Agents, the DIP Lenders, or the Prepetition Secured Parties under the Interim Order, this Final Order, the DIP Documents, or the Prepetition Documents, including seeking to use Cash Collateral and/or DIP Collateral on a contested basis; (f) objecting to or challenging in any way the DIP Liens, DIP Obligations, Prepetition Liens, Prepetition Secured Obligations, DIP Collateral (including Cash Collateral) or, as the case may be, Prepetition Collateral, or any other claims or liens, held by or on behalf of any of the DIP Agents, the DIP Lenders, or the Prepetition Secured Parties, respectively; (g) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions to recover or disgorge payments, against any of the DIP Agents, the DIP Lenders, the Prepetition Secured Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees; (h) litigating, objecting to, challenging, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the DIP Liens, the Prepetition Liens, Prepetition Secured Obligations or any other rights or interests of any of the DIP Agents, the DIP Lenders, the Prepetition Secured Parties; or (i) seeking to subordinate,

recharacterize, disallow or avoid the DIP Obligations or the Prepetition Secured Obligations; provided, however, that the Carve Out and such collateral proceeds and loans under the DIP Documents may be used for allowed fees and expenses, in an amount not to exceed $50,000 in the aggregate (the "Investigation Budget Amount"), incurred solely by a Committee (if appointed), in investigating (but not prosecuting or challenging) the validity, enforceability, perfection, priority or extent of the Prepetition Liens within sixty (60) calendar days following the selection of counsel to a Committee unless otherwise extended by the Court.

42.    Payment of Compensation.  Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any Case Professional or shall affect the right of the DIP Agents, the DIP Lenders, or the Prepetition Secured Parties to object to the allowance and payment of such fees and expenses.  So long as an unwaived Event of Default has not occurred, the Debtors shall be permitted to pay fees and expenses allowed and payable by final order (that has not been vacated or stayed, unless the stay has been vacated) under sections 328, 330, 331, and 363 of the Bankruptcy Code, as the same may be due and payable, but solely to the extent the same are incurred in accordance with (and not in excess of those amounts set forth in) the Budget and are reflected as estimates in, and maintained as a reserve under, the most recent borrowing base report delivered to the DIP Agents by the Debtors.

43.    Effect of Stipulations on Third Parties.

(a)    Generally.  The admissions, stipulations, agreements, releases, and waivers set forth in the Interim Order and this Final Order (collectively, the "Prepetition Lien and Claim Matters") are and shall be binding on the Debtors, any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative, and all creditors and parties in interest and all of their successors in interest and assigns, including, without limitation,

a Committee (if appointed), unless, and solely to the extent that, a party in interest that has sought and obtained standing and the requisite authority to commence a Challenge (as defined below) (other than the Debtors, as to which any Challenge is irrevocably waived and relinquished) (i) has timely filed the pleadings, and timely commenced the proceeding required under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in this paragraph 43 of this Final Order) challenging the Prepetition Lien and Claim Matters (each such proceeding or pleading commencing a proceeding or other contested matter, a "Challenge") by the earlier of (A) the date of entry of a confirmation order and (B) no later than (1) for a Committee, (if appointed), sixty (60) days from the date of formation of a Committee (if appointed), or (2) seventy-five (75) days following the entry of the Interim Order for any other party in interest with requisite standing (the earlier to occur of (A) and (B), the "Challenge Deadline"), as such applicable date may be extended in writing from time to time in the sole discretion of the Prepetition ABL Agent (with respect to the Prepetition ABL Documents) and the Prepetition Term Loan Agent (with respect to the Prepetition Term Loan Documents), or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline, and (ii) this Court enters judgment in favor of the plaintiff or movant in any such timely commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal.

(b)     *Binding Effect*.  To the extent no Challenge is timely commenced by the Challenge Deadline, or to the extent such proceeding does not result in a final and non-appealable judgment or order of this Court that is inconsistent with the Prepetition Lien and Claim Matters, then, without further notice, motion, or application to, order of, or hearing before,

this Court and without the need or requirement to file any proof of claim, the Prepetition Lien and Claim Matters shall, pursuant to this Final Order, become binding, conclusive, and final on any person, entity, or party in interest in the Cases, and their successors and assigns, and in any Successor Case for all purposes and shall not be subject to challenge or objection by any party in interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers, or other representative of the Debtors' estates.  Notwithstanding anything to the contrary herein, if any such proceeding is timely commenced, the Prepetition Lien and Claim Matters shall nonetheless remain binding on all other parties in interest and preclusive as provided in subparagraph (a) above except to the extent that any of such Prepetition Lien and Claim Matters is expressly the subject of a timely filed Challenge, which Challenge is successful as set forth in a final judgment as provided in subparagraph (a) above.  To the extent any such Challenge proceeding is timely commenced, the Prepetition Secured Parties shall be entitled to payment of the reasonable related costs and expenses, including, but not limited to reasonable attorneys' fees, incurred under the Prepetition Documents in defending themselves in any such proceeding as adequate protection.  Upon a successful Challenge brought pursuant to this paragraph 43, the Court may fashion any appropriate remedy.

44.    No Third Party Rights.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

45.    Section 506(c) Claims.  No costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against the DIP Agents, DIP Lenders, or the Prepetition Secured Parties, or any of their respective claims, the DIP Collateral, or the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy

Code, or otherwise, without the prior written consent of the DIP Agents, DIP Lenders, or Prepetition Secured Parties, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

46.     No Marshaling/Applications of Proceeds.  The DIP Agents, DIP Lenders, and Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as the case may be, and proceeds shall be received and applied pursuant to this Final Order and the DIP Documents notwithstanding any other agreement or provision to the contrary.

47.     Section 552(b).  The Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(h) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties, with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

48.     Access to DIP Collateral.  Upon expiration of the Remedies Notice Period, the DIP Agents, DIP Lenders, and the Prepetition Secured Parties shall be permitted to (a) access and recover any and all DIP Collateral, and (b) enter onto any leased premises of any Debtor and exercise all of the Debtors' rights and privileges as lessee under such lease in connection with an orderly liquidation of the DIP Collateral, *provided*, *however*, in the case of clause (b), the DIP Agents, DIP Lenders and/or Prepetition Secured Parties can only enter upon a leased premises after an Event of Default in accordance with (i) a separate written agreement by and between the DIP Agents, DIP Lenders, and the Prepetition Secured Parties, as applicable, and any applicable landlord, (ii) pre-existing rights of the DIP Agents, DIP Lenders, and the Prepetition Secured Parties, as applicable, and any applicable landlord, (iii)

consent of the applicable landlord, or (iv) entry of an order of this Court obtained by motion of the applicable DIP Agent, DIP Lender, or Prepetition Secured Party on such notice to the landlord as shall be required by this Court; *provided*, *however*, solely with respect to rent due to a landlord of any such leased premises, the DIP Agents, DIP Lenders, and/or the Prepetition Secured Parties, as applicable, shall be obligated only to reimburse the Debtors for the payment of rent of the Debtors that first accrues after delivery of the Termination Declaration in accordance with paragraph 34 herein that that is payable during the period of such occupancy by the DIP Agents, DIP Lenders, and/or the Prepetition Secured Parties, as applicable, calculated on a daily per diem basis; *provided*, *further*, that nothing herein shall relieve the Debtors of their obligations pursuant to section 365(d)(3) of the Bankruptcy Code for the payment of rent that accrues prior to delivery of the Termination Declaration through and including any assumption and/or rejection of any lease. Nothing herein shall require the DIP Agents, DIP Lenders, or the Prepetition Secured Parties to assume any lease as a condition to the rights afforded in this paragraph.

49.    <u>Limits on Lender Liability</u>.  Nothing in this Final Order, any of the DIP Documents, or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agents, the DIP Lenders or the Prepetition Secured Parties of any liability for any claims arising from any activities by the Debtors in the operation of their businesses or in connection with the administration of these Cases.  The DIP Agents, the DIP Lenders and the Prepetition Secured Parties shall not, by reason of having made loans under the DIP Facilities or permitting the use of Cash Collateral, be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms,

are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute). Nothing in this Final Order or the DIP Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agents, the DIP Lenders, or any of the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

50.     <u>Insurance Proceeds and Policies</u>.  Upon entry of the Interim Order and to the fullest extent provided by applicable law, the DIP ABL Agent (on behalf of the DIP ABL Lenders), the DIP Term Loan Agent (on behalf of the DIP Term Loan Lenders), the Prepetition ABL Agent (on behalf of the Prepetition ABL Lenders), and the Prepetition Term Loan Agent (on behalf of the Prepetition Term Loan Lenders), were, and shall continue to be, without any further action or notice, named as additional insured, lender loss payee, mortgagee and loss payee on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral (which shall not include directors and officers policies).

51.     <u>Joint and Several Liability</u>.  Nothing in this Final Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Borrower and Guarantors shall be jointly and severally liable for the obligations hereunder and all DIP Obligations in accordance with the terms hereof and of the DIP Facilities and the DIP Documents.

52.     <u>No Superior Rights of Reclamation</u>.  In light of the integrated nature of the DIP Facilities and the Prepetition Documents, the right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Permitted Prior Lien; rather, any such alleged claim arising or asserted as a right of reclamation (whether asserted under section 546(c)

of the Bankruptcy Code or otherwise) shall have the same rights and priority with respect to the DIP Liens as such claim had with the Prepetition Liens.

53.    <u>Rights Preserved</u>.  Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the DIP Agents', DIP Lenders' and Prepetition Secured Parties' right to seek any other or supplemental relief in respect of the Debtors; (b) any of the rights of any of the DIP Agents, DIP Lenders and/or the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases or Successor Cases, conversion of any of the Cases to cases under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans; or (c) subject to the Intercreditor Agreement, any other rights, claims or privileges (whether legal, equitable or otherwise) of any of the DIP Agents, DIP Lenders or Prepetition Secured Parties.

54.    <u>No Waiver by Failure to Seek Relief</u>.  The failure of the DIP Agents, DIP Lenders, or Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under the Interim Order, this Final Order, the DIP Documents, the Prepetition Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Agent, DIP Lenders, Prepetition Secured Parties, a Committee (if appointed) or any party in interest.

55.    <u>Binding Effect of Final Order</u>.  Subject to paragraph 43, immediately upon execution by this Court, the terms and provisions of this Final Order shall become valid and binding upon and inure to the benefit of the Debtors, DIP Agents, DIP Lenders, Prepetition

Secured Parties, all other creditors of any of the Debtors, any Committee (or any other court appointed committee) appointed in the Cases, and all other parties-in-interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.

56.     <u>No Modification of Final Order</u>.  Until and unless the DIP Obligations and the Prepetition Secured Obligations have been indefeasibly paid in full in cash, and all letters of credit under the DIP Facilities shall have been cancelled, backed, or cash collateralized in accordance with the terms thereof (such payment being without prejudice to any terms or provisions contained in the DIP Facilities which survive such discharge by their terms), and all commitments to extend credit under the DIP Facilities have been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly: (a) without the prior written consent of the DIP Agents (with respect to the DIP Term Loan Agent, with the consent of the Required Lenders) or the Prepetition Agents, (i) any modification, stay, vacatur or amendment to the Interim Order or this Final Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 506(c), 507(a) or 507(b) of the Bankruptcy Code) in any of the Cases or Successor Cases, equal or superior to the DIP Superpriority Claims or Adequate Protection Superpriority Claims, other than the Carve Out; (b) without the prior written consent of the DIP Agents (with respect to the DIP Term Loan Agent, with the consent of the Required Lenders), or the Prepetition Agents, for any order allowing use of Cash Collateral (other than as permitted during the Remedies Notice Period) resulting from DIP Collateral or Prepetition Collateral in a manner inconsistent with the Interim Order or this Final Order, as applicable; (c)

without the prior written consent of the DIP Agents (with respect to the DIP Term Loan Agent, with the consent of the Required Lenders), any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens, except as specifically provided in the DIP Documents; or (d) without the prior written consent of the Prepetition Agents, any lien on any of the DIP Collateral with priority equal or superior to the Prepetition Liens or Adequate Protection Liens.    The Debtors irrevocably waive any right to seek any amendment, modification or extension of the Interim Order or this Final Order without the prior written consent, as provided in the foregoing, of the DIP Agents (with respect to the DIP Term Loan Agent, with the consent of the Required Lenders), or the Prepetition Agents, and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agents or the Prepetition Agents.

57.    <u>Continuing Effect of Intercreditor Agreement</u>.  The Debtors, DIP Agents, DIP Lenders and Prepetition Secured Parties each shall be bound by, and in all respects of the DIP Facilities shall be governed by, and be subject to all the terms, provisions and restrictions of the Intercreditor Agreement.

58.    <u>Comenity</u>.  Notwithstanding anything to the contrary in this Final Order, the DIP Facility or otherwise, Comenity Capital Bank's ("<u>Comenity</u>") rights of setoff and/or recoupment with respect to the Private Label Credit Card Plan Agreement dated May 27, 2010 between Comenity (formerly known as World Financial Capital Bank) and the Debtor, as amended (the "<u>Program Agreement</u>"), (a) shall not be subject to any DIP Liens, Adequate Protection Liens, Superpriority Claims, or Adequate Protection Superpriority Claims, (b) shall not be affected, modified, waived, primed or impaired in any way by this Final Order, and (c) are expressly preserved and reserved.  Comenity's rights, remedies, claims and any other relief arising from or related to the Program Agreement are expressly preserved and reserved and not

modified, waived, or impaired in any way by this Final Order.

59.    <u>Final Order Controls</u>.  In the event of any inconsistency between the terms and conditions of the DIP Documents, the Interim Order and of this Final Order, the provisions of this Final Order shall govern and control.

60.    <u>Discharge</u>.  The DIP ABL Obligations, the DIP Term Loan Obligations, and the obligations of the Debtors with respect to the adequate protection provided herein shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash, on or before the effective date of such confirmed plan of reorganization, or each of the DIP ABL Agent, DIP Term Loan Agent, DIP ABL Lenders, DIP Term Loan Lenders, and each of the Prepetition Agents, as applicable, has otherwise agreed in writing.  None of the Debtors shall propose or support any plan of reorganization or sale of all or substantially all of the Debtors' assets, or order confirming such plan or approving such sale, that is not conditioned upon the indefeasible payment of the DIP ABL Obligations (in the case of the sale of DIP ABL Priority Collateral) and DIP Term Loan Obligations (in the case of the sale of DIP Term Priority Collateral), and the payment of the Debtors' obligations with respect to the adequate protection provided for herein, in full in cash within a commercially reasonable period of time (and in no event later than the effective date of such plan of reorganization or sale) (a "<u>Prohibited Plan or Sale</u>") without the written consent of each of the DIP Agents (with respect to the DIP Term Loan Agent, with the consent of the Required Lenders), DIP Lenders, and the Prepetition Agents, as applicable.  For the avoidance of doubt, the Debtors' proposal or support of a Prohibited Plan or Sale, or the entry of an order with

respect thereto, shall constitute an Event of Default hereunder and under the DIP ABL Documents and DIP Term Loan Documents.

61.  <u>Survival</u>.  The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in any of the Cases; (b) converting any of the Cases to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases.  The terms and provisions of this Final Order, including the claims, liens, security interests and other protections granted to the DIP Agents, DIP Lenders and Prepetition Secured Parties granted pursuant to this Final Order and/or the DIP Documents, notwithstanding the entry of any such order, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by this Final Order until: (i) in respect of the DIP ABL Credit Facility, all the DIP ABL Obligations, pursuant to the DIP ABL Documents and this Final Order, have been indefeasibly paid in full in cash and all letters of credit under the DIP ABL Credit Facility shall have been cancelled or cash collateralized in accordance with the terms thereof (such payment being without prejudice to any terms or provisions contained in the DIP ABL Credit Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP ABL Credit Facility are terminated; (ii) in respect of the Prepetition ABL Facility, all of the Prepetition ABL Obligations pursuant to the Prepetition ABL Documents and this Final Order, have been indefeasibly paid in full in cash; (iii) in respect of the DIP Term Loan Credit Facility, all the DIP Term Loan Obligations, pursuant to the DIP Term Loan Documents and this Final Order, have been indefeasibly paid in full in cash; and (iv) in respect of the Prepetition Term Loan Agreement, all of the Prepetition

Term Loan Obligations pursuant to the Prepetition Term Loan Documents and this Final Order have been indefeasibly paid in full in cash.    The terms and provisions concerning the indemnification of the DIP Agents and DIP Lenders shall continue in the Cases, in any Successor Cases, following dismissal of the Cases or any Successor Cases, following termination of the DIP Documents and/or the indefeasible repayment of the DIP Obligations.  In addition, the terms and provisions of this Final Order shall continue in full force and effect for the benefit of the Prepetition Term Loan Parties notwithstanding the repayment in full of or termination of the DIP ABL Obligations or the Prepetition ABL Obligations.

62.    <u>ABL Fee Letter</u>. The ABL Fee Letter is authorized to be filed under seal and shall be provided solely to: (i) the U.S. Trustee; (ii) counsel to any Committee; (iii) this Court; and (iv) any other party as may be ordered by this Court after notice and a hearing, or agreed by the Debtors and the DIP ABL Agent.  Any party who receives the ABL Fee Letter in accordance with the Interim Order or this Final Order shall not disclose or otherwise disseminate the ABL Fee Letter, or the information contained therein, to any other person or entity and shall keep the ABL Fee Letter and the information contained therein strictly confidential.

63.    <u>*Nunc Pro Tunc* Effect of this Final Order</u>.  This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution thereof.

64.    <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to enforce the terms of, any and all matters arising from or related to the DIP Facilities, and/or this Final Order.

Dated: December 18th, 2018
Wilmington, Delaware

LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE