---------------------------------------------------------x
                                                         :
In re                                                    :   Chapter 11
                                                         :
DAVID'S BRIDAL, INC, *et al.*,[1]                        :   Case No. 18-12635 (LSS)
                                                         :
         Debtors.                                        :   (Jointly Administered)
                                                         :
                                                         :   **Objection Deadline: December 21, 2018 at 4:00 p.m. (ET)**[2]
                                                         :   **Hearing Date:  January 4, 2019 at 1:30 p.m. (ET)**
                                                         :   **Related to Docket No. 138**
---------------------------------------------------------x

**LIMITED OBJECTION OF ARC CTCHRNC001, LLC, ARC SSSDLLA001, LLC, BRIXMOR OPERATING PARTNERSHIP LP, CENTERPOINT DEVELOPMENT COMPANY L.L.C., FEDERAL REALTY INVESTMENT TRUST, GATEWAY PINOLE VISTA, LLC, MANANA-DCIT, LLC, PGIM REAL ESTATE, R46 REALTY ASSOCIATES, L.P., STARWOOD RETAIL PARTNERS, LLC, THE MACERICH COMPANY AND WEITZMAN TO NOTICE OF ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF DEBTORS AND RELATED PROCEDURES**

ARC CTCHRNC001, LLC ("ARC CTCHRNC001"), ARC SSSDLLA001, LLC ("ARC SSSDLLA001"), Brixmor Operating Partnership LP ("Brixmor"), Centerpoint Development Company, L.L.C. ("Centerpoint"), Federal Realty Investment Trust ("Federal"), Gateway Pinole Vista, LLC ("Gateway"), MANANA-DCIT, LLC ("MANANA-DCIT"), PGIM Real Estate ("PGIM"), R46 Realty Associates, L.P. ("R46"), Starwood Retail Partners, LLC ("Starwood"), The Macerich Company ("Macerich"), and Weitzman ("Weitzman," and together with ARC CTCHRNC001, ARC SSSDLLA001, Brixmor, Centerpoint, Federal, Gateway, MANANA-DCIT, LLC, PGIM, R46, Starwood, and Macerich, the "Landlords"), hereby file this limited objection (the "Objection") to the *Notice of Assumption of Executory Contracts and Unexpired*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: David's Bridal, Inc. (4563); DB Investors, Inc. (8503); DB Holdco, Inc. (4567); and DB Midco, Inc. (3096). The location of the Debtors' corporate headquarters is 1001 Washington Street, Conshohocken, Pennsylvania 19428.

[2] Extended by agreement.

*Leases of Debtors and Related Procedures* [D.I. 138] (the "Cure Notice"),[3] and respectfully represent as follows:

I. **BACKGROUND FACTS**

1. David's Bridal, Inc. and its debtor affiliates (the "Debtors") each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code on November 19, 2018 (the "Petition Date"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[4]

2. The Debtors lease retail space (the "Premises") from the Landlords pursuant to unexpired leases of nonresidential real property (individually, a "Lease," and collectively, the "Leases") at the locations (the "Centers") set forth in more detail in Paragraph 5 below. The Leases are leases "of real property in a shopping center" as that term is used in Section 365(b)(3). *See* In re Joshua Slocum, Ltd., 922 F.2d 1081, 1086-87 (3d Cir. 1990).

3. On the Petition Date, the Debtors filed the *Joint Prepackaged Chapter 11 Plan of Reorganization under Chapter 11 of the Bankruptcy Code* (the "Plan") and a disclosure statement for the Plan (the "Disclosure Statement"), each dated November 18, 2018. On November 30, 2018, the Debtors filed the Cure Notice.

4. The Cure Notice does not reflect the outstanding balances due and owing to Landlords under the Leases, and does not provide for accrued but unbilled charges which may come due in the future. Any cure amounts set forth by the Debtors must reflect the charges due and owing, as well as recognize the liability for accruing charges due under the Leases, as set forth herein.

---

[3] Capitalized terms used but not otherwise defined here shall have the meanings ascribed to them in the Cure Notice and accompanying documents.

[4] Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

## I. CURE OBJECTION

### A. The Debtors' Cure Notice fails to provide for the payment of all obligations due under the Leases.

5. The Landlords' cure is summarized below, and those charges comprising the Landlords' cure are more fully detailed in Exhibits 1 through 8, which are attached hereto and incorporated into this Objection by this reference:

| Landlord | Center | City/State | Landlords' Cure[5] | Cure Exhibit |
|---|---|---|---|---|
| ARC CTCHRN001 | The Centrum | Pineville, NC | **$330.75** | 1 |
| ARC SSSDLLA001 | Stirling Slidell Center | Slidell, LA | **$1,775.82** | 2 |
| Brixmor | Burning Tree Plaza | Duluth, MN | **Credit on Account** | n/a |
| Brixmor | Clearwater Mall | Clearwater, FL | **Credit on Account** | n/a |
| Brixmor | Florence Square | Florence, KY | **$4,308.30** | 3 |
| Brixmor | High Point Center | Lombard, IL | **Credit on Account** | n/a |
| Brixmor | Marketplace | Tulsa, OK | **$16,556.00** | 4 |
| Brixmor | Regency Park Shopping Center | Jacksonville, FL | **$0.00** | n/a |
| Brixmor | Springdale Mall | Mobile, AL | **$0.00** | n/a |
| Brixmor | The Market at Wolfcreek I | Memphis, TN | **Credit on Account** | n/a |
| Brixmor | The Shoppes at Southside | Jacksonville, FL | **Credit on Account** | n/a |
| Brixmor | Wallkill Plaza | Middletown, NY | **$0.00** | n/a |
| Brixmor | Westminster City Center | Westminster, CO | **Credit on Account** | n/a |
| Centerpoint | Centerpointe Mall | Grand Rapids, MI | **$1,514.25** | 5 |

---

[5] The Landlords' Cure does not include charges that are billed or come due after the filing of this Objection or charges that are billed directly to the Debtors, including in some cases, real estate taxes, and the amounts are exclusive of attorneys' fees. Landlords' estimate such attorneys' fees incurred to date to be in the range of **$2,500** per Lease (*see infra*, ¶¶ 10-13, and the Landlords will provide a reconciliation of the actual fees and costs incurred for a particular Landlord at the time of the assumption of the applicable Lease. To the extent Landlords are later billed for any amount due to the Debtors' failure to pay, Landlords reserve the right to amend the Objection to include such amounts. The Debtors must timely pay all rent and other lease charges as they come due under the Leases, and the Landlords reserve the right to payment (and amend this Objection to the extent necessary) for any amounts that come due under the Leases through the date of any cure payment.

| Landlord | Center | City/State | Landlords' Cure[5] | Cure Exhibit |
|---|---|---|---|---|
| Federal | Federal Plaza | Rockville, MD | **$434.24** | 6 |
| Gateway | Pinole Vista Crossing | Pinole, CA | **$0.00** | n/a |
| MANANA-DCIT | Pearl City Gateway Shopping Center | Pearl City, HI | **$240.83** | 7 |
| PGIM | Pembroke Crossing | Pembroke Pines, FL | **$0.00** | n/a |
| R46 | 562 US 46 | Totowa, NJ | **$4,995.44** | 8 |
| Starwood | Gateway Mall | Lincoln, NE | **$0.00** | n/a |
| Macerich | Eastland Convenience Center | Evansville, IN | **$0.00** | n/a |
| Weitzman | Ingram Heights | San Antonio, TX | **Credit on Account** | n/a |

6. In addition to the above monetary defaults, in connection with the Debtors' lease with R46, there are also non-monetary defaults that must be cured as part of any assumption of the Lease. Specifically, the Debtors have failed to perform certain driveway maintenance at the Premises, i.e., a repair of the area of the parking lot extending from the northeast corner of the Premises to the pylon sign that has eroded.

7. Moreover, in addition to the current outstanding rent and other monthly charges due under the Leases, in determining what must be paid as cure pursuant to Section 365(b), the charges referenced below must also be taken into consideration and paid by the Debtors, either as cure or when properly billed under the Leases.

    i. **Year-end Adjustments and Reconciliations**

8. In addition to rent and related monthly charges, attorneys' fees, costs and interest, some charges for which the Debtors bear responsibility under the Leases have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods. By way of example, the Debtors occupy retail space at the Centers pursuant to triple-net leases, where they typically pay rent and related lease charges in advance for each month. The Debtors pay fixed minimum rent, along with a pro-rata share of expenses such as real property taxes, insurance, common area maintenance ("CAM") fees, annual percentage rent, and the like. Certain charges,

4

such as CAM and property taxes are estimated prospectively, billed to and paid by the tenant during the year, and then reconciled after year-end. The reconciliation compares the amounts estimated and paid against actual charges incurred at the respective Center. To the extent the estimated payments exceed actual charges, the result is a credit to the tenant. To the extent the estimated payments do not cover actual charges incurred under the Leases, the result is an additional amount (or debit) for which the tenant is liable. In some instances, year-end reconciliations and adjustments for previous years for the Premises may not yet be complete (i.e., year-end reconciliations and adjustments that accrued through 2017 may not yet have been billed at certain locations, and such charges that are accruing for 2018 will not be billed until 2019). In other instances, certain charges may be paid in arrears, and cannot be calculated (in some cases) until a year or more after year-end. Since these accrued, but unbilled, charges are not yet due under the Leases, they do not create a current default that gives rise to a requirement of cure by the Debtors at this time. Instead, the Debtors must provide adequate assurance of future performance that such amounts will be paid when due and billed in accordance with the Leases irrespective of the period in which they accrued.

9. Nevertheless, the Debtors remain responsible for all accrued or accruing charges under the Leases, and must pay such charges when they come due under the Leases. The Debtors (or any successor) assume the Leases subject to their terms, and must assume all obligations owing under the Leases, including obligations that have accrued but may not yet have been billed under each Lease. Any final assumption or confirmation order should clearly state that the Debtors (or any successor) will assume these lease obligations and pay them when due, regardless of whether they relate to the period prior to, or after, the Plan effective date. In addition, any provision in the confirmation order or Plan that purports to release the Debtors (or any successor) of further liability based upon a payment of cure amounts, must specify that such release does not apply to obligations to pay accrued or accruing, but unbilled, charges that come due under the Leases.

10. In addition, the Leases require the Debtors (or any successor) to indemnify and hold the Landlords harmless with respect to any existing claims which may not become known until after the assumption of the Leases, examples of which may include such claims as personal injuries at the Premises and damage to the Premises or Centers by the Debtors, their successor or their agents. Any assumption or assumption of the Leases must be subject to the terms of the Leases, including the continuation of all indemnification obligations, regardless of when they arose.[6] In the alternative, the Debtors must provide (by insurance or otherwise) that they can satisfy the indemnification obligations under the Leases for any claims that relate to the period prior to assumption of the Leases. Nothing in any confirmation order or Plan should preclude the Landlords from pursuing the Debtors, their insurance, or any other party that may be liable under the Leases, and the Landlords request that any order specifically preserve their right to pursue such rights irrespective of any resolution of cure amounts herein.

### ii. Attorneys' Fees, Costs, and Interest

11. The Leases contain provisions for recovery of attorneys' fees, costs, and interest in the event the Landlords are required to take legal action to protect their interests. The Debtors are obligated to cure all defaults under the Leases, and compensate the Landlords for their actual pecuniary losses as a result of defaults under the Leases. *See* 11 U.S.C. § 365(b)(1)(A) and (B). The principle is well-recognized. In re LCO Enterprises, 12 F.3d 938, 941 (9th Cir. 1993); Elkton Associates v. Shelco Inc. (Matter of Shelco), 107 B.R. 483, 487 (Bankr. D. Del. 1989) (debtors allowed to assume lease provided it cured *all pre-petition defaults*).

12. The Debtors (or any successor) take the Leases *cum onere* – subject to existing burdens. The Debtors cannot assume the favorable portions, and reject the unfavorable provisions, of its Leases. In re Washington Capital Aviation & Leasing, 156 B.R. 167,172 (Bankr. E.D. Va. 1993). If forced to continue in the performance of the Leases, the Landlords

---

[6] Any ability to assume and assign the Leases is subject to the protections provided by Section 365(b) and (f). Therefore, any assumption must be in accordance with all provisions of the Leases.

are entitled to the full benefit of the bargain under their Leases with the Debtors. *See* Matter of Superior Toy and Mfg. Co., Inc., 78 F.3d 1169 (7th Cir. 1996). The "full benefit of the bargain" principle has been held to require payment of interest. "The cure of a default under an unexpired lease pursuant to 11 U.S.C. § 365 is more akin to a condition precedent to the assumption of a contract obligation than it is to a claim in bankruptcy. One of the purposes of Section 365 is to permit the debtors to continue in a beneficial contract; provided, however, that the other party to the contract is made whole at the time of the debtor's assumption of the contract." In re Entertainment, Inc., 223 B.R. 141, 151 (Bankr. N.D. Ill. 1998) (citation omitted; bankruptcy court allowed interest at 18%). Interest on pre-petition lease charges continues to run from the filing of the Debtors' petition and must be paid as a condition of the assumption of the Leases. *See* In re Skylark Travel, Inc., 120 B.R. 352055 (Bankr. S.D.N.Y. 1990). Interest calculations are therefore not cut short by the automatic stay, and payment of such interest is required to fully compensate Landlords for the Debtors' default under the Leases, and thus to properly assume the Leases. Finally, post-petition interest is allowable where such interest is provided for under the terms of the Leases. Cukierman v. Uecker (In re Cukierman), 265 F.3d 846, 853 (9th Cir. 2001).

13. Attorneys' fees and costs incurred in enforcement of the covenants, obligations, and conditions of a lease are also proper components of a cure claim, and the Debtors (or any successor) must satisfy these lease charges as part of the assumption of the Leases. Entertainment, Inc., 223 B.R. at 152 (citation omitted). There is no logical distinction for purposes of Section 365 between attorneys' fees incurred in connection with pre-petition defaults and fees incurred with post-petition defaults. Id. 154. The fact that a landlord uses bankruptcy procedures to enforce a lease should not preclude recovery of attorneys' fees and costs for such enforcement activity (particularly where the Bankruptcy Court is the exclusive forum where the landlord can obtain any relief, being foreclosed from state court relief by the automatic stay). Id., *see also*, In re Crown Books Corporation, 269 B.R. 12 (Bankr. D. Del. 2001) (Landlords' fees and costs are recoverable as a component of cure under 11 U.S.C. § 365(b)(1)); Urban Retail Properties v. Loews Cineplex Entertainment Corporation, et al., 2002

7

WL 5355479 (S.D.N.Y. Apr. 9, 2002) (where lease "provides for recovery of attorneys' fees and interest, their receipt deserves the same priority under Section 365(d)(3) as any of the debtors' other obligations that arise postpetition ... ."); Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Incorporated), 167 F.3d 843, 850 (4th Cir. 1999). The Supreme Court has upheld the enforceability of such attorneys' fees clauses, ruling that pre-petition attorneys' fee clauses were enforceable with respect to issues peculiar to bankruptcy law. Travelers Casualty & Surety Co. Of America v. Pacific Gas & Electric, 127 S. Ct. 1199, 1206 (2007).

14. Accordingly, Landlords further request that they be reimbursed for all of their actual pecuniary losses including, but not limited to, attorney's fees and costs expended with regard to Debtors' bankruptcy proceedings. Except where indicated, the cure exhibits set forth herein do not include an estimate for attorneys' fees incurred by the Landlord per Lease, but the Landlords' do estimate such attorneys' fees incurred to date to be in the range of **$2,500** per Lease, and the Landlords will provide a reconciliation of the actual fees and costs incurred for a particular Landlord at the time of the assumption of the applicable Lease.

### iii. The Cure Amounts Serve Only As Estimates.

15. Landlords can only provide the information presently available regarding amounts owing by the Debtors, while reserving the right to amend the Objection as necessary to include any additional or unknown charges that arise, including but not limited to subsequent rent defaults, attorney fees, costs, interest, and year-end adjustments and reconciliations. There is no basis to impose upon the Landlords the equivalent of an administrative bar date, limiting their recourse to recover charges to which they are entitled under the Leases.

### iv. The Debtors Must Pay Undisputed Cure Amounts Immediately.

16. Section 365(b)(1)(A) requires that the Debtors promptly cure outstanding balances due under the Leases upon assumption. To the extent there is a dispute over the total cure obligation for any Lease, all undisputed cure amounts should be paid immediately. The Debtors should escrow disputed amounts, and the Court should set a status conference within

thirty (30) days of the assumption of the Leases to deal with any disputes that remain unresolved after such period.

## II. RESERVATION OF RIGHTS

17. The Landlords reserve their rights to raise other and further objections to the Plan, including but not limited to the assumption and/or treatment of the Leases thereunder.

## III. JOINDER IN OBJECTIONS RAISED BY OTHER LANDLORDS

18. To the extent consistent with the objections expressed herein, Landlords also join in the objections of other shopping center lessors to the Debtors' proposed relief.

## IV. CONCLUSION

The Landlords respectfully request that any order (i) allow the cure amounts (subject to adjustment by the Landlords) in the amounts set forth herein, (ii) order payment of all undisputed cure amounts, with an escrow established that is sufficient to pay any remaining disputed cure amounts, when resolved by the parties or this Court, and (iii) grant such further relief as the Court deems proper.

Dated: December 20, 2018
Wilmington, Delaware

Respectfully submitted,

*/s/ Leslie C. Heilman*
Leslie C. Heilman, Esquire (No. 4716)
Laurel D. Roglen, Esquire (No. 5759)
BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Telephone: (302) 252-4465
Facsimile: (302) 252-4466
E-mail: heilmanl@ballardspahr.com
       roglenl@ballardspahr.com

and

Dustin P. Branch, Esquire
BALLARD SPAHR LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067-3012
Telephone: (424) 204-4354
Facsimile: (424) 204-4350
E-mail: branchd@ballardspahr.com

and

David L. Pollack, Esquire
BALLARD SPAHR LLP
51st Fl - Mellon Bank Center
1735 Market Street
Philadelphia, PA 19103
Telephone: (215) 864-8325
Facsimile: (215) 864-9473
E-mail: pollack@ballardspahr.com

*Counsel to ARC CTCHRNC001, LLC, ARC SSSDLLA001, LLC, Brixmor Operating Partnership LP, Centerpoint Development Company, L.L.C., Federal Realty Investment Trust, Gateway Pinole Vista, LLC, MANANA-DCIT, LLC, PGIM Real Estate, R46 Realty Associates, L.P., Starwood Retail Partners, LLC, The Macerich Company, and Weitzman*

Of Counsel:
Ivan M. Gold, Esquire
Allen Matkins Leck Gamble Mallory & Natsis LLP
Three Embarcadero Center, 12th Floor,
San Francisco, CA 94111-4074
Telephone: (415) 273-7431
Facsimile: (415) 837-1516
E-mail: igold@allenmatkins.com
*Co-counsel to MANANA-DCIT, LLC Only*