# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------x
                                                         :
In re                                                    :   Chapter 11
                                                         :
DAVID'S BRIDAL, INC, *et al.*,[1]                        :   Case No. 18-12635 (LSS)
                                                         :
      Debtors.             :   (Jointly Administered)
                                                         :
                                                         :   **Objection Deadline: December 21, 2018 at 4:00 p.m. (ET)**
                                                         :   **Hearing Date: January 4, 2019 at 1:30 p.m. (ET)**
                                                         :   **Related to Docket No. 12**
---------------------------------------------------------x

**LIMITED OBJECTION OF ARC CTCHRNC001, LLC, ARC SSSDLLA001, LLC, BRIXMOR OPERATING PARTNERSHIP LP, CENTERPOINT DEVELOPMENT COMPANY L.L.C., FEDERAL REALTY INVESTMENT TRUST, GATEWAY PINOLE VISTA, LLC, MANANA-DCIT, LLC, MT SAN ANTONIO I, LLC, PGIM REAL ESTATE, R46 REALTY ASSOCIATES, L.P., STARWOOD RETAIL PARTNERS, LLC, AND THE MACERICH COMPANY TO THE PROPOSED JOINT PREPACKAGED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

ARC CTCHRNC001, LLC ("ARC CTCHRNC001"), ARC SSSDLLA001, LLC ("ARC SSSDLLA001"), Brixmor Operating Partnership LP ("Brixmor"), Centerpoint Development Company, L.L.C. ("Centerpoint"), Federal Realty Investment Trust ("Federal"), Gateway Pinole Vista, LLC ("Gateway"), MANANA-DCIT, LLC ("MANANA-DCIT"), MT San Antonio I, LLC ("MT San Antonio I"), PGIM Real Estate ("PGIM"), R46 Realty Associates, L.P. ("R46"), Starwood Retail Partners, LLC ("Starwood"), The Macerich Company ("Macerich" and together with ARC CTCHRNC001, ARC SSSDLLA001, Brixmor, Centerpoint, Federal, Gateway, MANANA-DCIT, LLC, MT San Antonio I, PGIM, R46, and Starwood, the "Landlords"), hereby file this limited objection (the "Objection"), by and through their undersigned counsel, to the *Proposed Joint Prepackaged Plan of Reorganization Under*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: David's Bridal, Inc. (4563); DB Investors, Inc. (8503); DB Holdco, Inc. (4567); and DB Midco, Inc. (3096). The location of the Debtors' corporate headquarters is 1001 Washington Street, Conshohocken, Pennsylvania 19428.

*Chapter 11 of the Bankruptcy Code* (as may be amended from time to time, the "Plan") [D.I. 12],[2] and respectfully represent as follows:

I. **BACKGROUND FACTS**

1. David's Bridal, Inc. and its debtor affiliates (the "Debtors") each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code on November 19, 2018 (the "Petition Date"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[3]

2. The Debtors lease retail space (the "Premises") from the Landlords pursuant to unexpired leases of nonresidential real property (individually, a "Lease," and collectively, the "Leases") at the shopping center locations (the "Centers") set forth in detail on the attached Schedule A.

3. The Leases are leases "of real property in a shopping center" as that term is used in Section 365(b)(3). *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

4. The Debtors initially filed the Plan [D.I. 12] and the related disclosure statement (the "Disclosure Statement") [D.I. 13] on the Petition Date. On November 30, 2018, the Debtors filed the *Notice of Assumption of Executory Contracts and Unexpired Leases of Debtors and Related Procedures* [D.I. 138] (the "Cure Notice"). On December 11, 2018, the Debtors filed their plan supplement [D.I. 167]. The Landlords do not object to the Debtors' efforts to confirm a plan of reorganization, but as drafted, the Plan improperly modifies the Landlords' rights under their Leases and the Bankruptcy Code.

---

[2] Terms not otherwise defined here shall have the meanings ascribed to them in the Plan, and accompanying documents.
[3] Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

## II. ARGUMENT

### A. The Plan Improperly Seeks to Assume or Reject Leases Beyond the Confirmation Date Absent Landlord Consent

5. The Plan provides that the Debtors may assume or reject Leases after the confirmation date by reserving the right to reject Leases following the Confirmation Date. More specifically, the Plan provides that following an unfavorable determination of an Assumption Dispute, the "Debtor or Reorganized Debtor, as applicable, may reject (with the consent of the Required Supporting Term Lenders and the Crossover Holder) the applicable executory contract or unexpired lease after such determination." *See* Plan, Article 8.2(b). Article 8.8(d), also provides that "[i]f there is an Assumption Dispute or a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection under the Plan, the Debtors or the Reorganized Debtors, as applicable, shall have sixty (60) days following entry of the Final Order resolving such dispute to alter their treatment of such contract or lease by filing a notice indicating such altered treatment." *See* Plan, Article 8.8(d). Any language seeking to assume or reject any Lease beyond the entry of the Confirmation Order should be stricken as this violates Section 365(d)(4) of the Bankruptcy Code.

6. Section 1129(a)(1) provides that "a plan may not be confirmed unless the plan complies with the applicable provisions of Title 11 . . . ." *Mabey v. S.W. Elec. Power Co. (In the Matter of Cajun Elec. Power Cooperative, Inc.)*, 150 F. 3d 503, 513, n.3 (5th Cir. 1998), *citing Mickey's Enters., Inc. v. Saturday Sales, Inc. (In re Mickey's Enters., Inc.)*, 165 B.R. 188, 193 (Bankr. W.D. Tex. 1994) ("In order to confirm a plan the court must find that the plan and its proponent have complied with the applicable provisions of Title 11."). Moreover, a plan cannot be confirmed if it violates the provisions of Title 11. *See Resorts Int'l., Inc. v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394 (9th Cir. 1995).

7. The Debtors cannot pick and choose which Bankruptcy Code provisions to follow and which to ignore. Section 365(d)(4) requires the assumption or rejection of the Leases no later than the entry of the order confirming a plan of reorganization, absent consent of the landlord counterparty, and the Debtors must abide by this provision to confirm their Plan. Section 365(d)(4) provides that "an unexpired lease of nonresidential real property under which the debtor is the lessee <u>shall be deemed rejected</u> . . . if the trustee does not assume or reject the unexpired lease by the earlier of (i) the date that is 120 days after the date of the order for relief [or within such additional time as set by the Court and authorized by Section 365(d)(4)]; or (ii) the date of the entry of an order confirming a plan." 11 U.S.C. § 365(d)(4)

8. The Plan proposes that all unexpired leases, not otherwise terminated, assumed, or rejected previously, or subject to a motion to reject pending on the Confirmation Date, will be deemed <u>assumed</u> as of the Effective Date, but then gives the Debtors the ability to reject leases after the Court enters a Final Order either resolving an Assumption Dispute, or as to the expiration or executory nature of a contract or lease, each of which can occur after the Confirmation Date. There is no legal basis to allow the Debtors to reject unexpired leases post-confirmation. Not only is this unsupported by any statutory authority or case law, the Bankruptcy Code requires that all leases of nonresidential real property be assumed or rejected no later than the date of entry of the confirmation order, absent consent of the Landlords. Unless an extension of the period to assume, assume or assign or reject is agreed upon by written agreement of the applicable parties, the Debtors must finalize their list of assumed and rejected leases on or before the Confirmation Date.

**B. The Plan Improperly Seeks to Modify Rights Under the Leases.**

9. The Plan provides that the assumption of unexpired leases shall serve as a full release of any Claims or defaults arising under such unexpired lease at any time before the

4

effective date of such assumption. *See* Plan, Articles 8.3, 10.6(b). A debtor assumes its leases *cum onere*, or subject to existing burdens. *In re Wash. Capital Aviation & Leasing*, 156 B.R. 167,172 (Bankr. E.D. Va. 1993). While the Debtors must pay all outstanding balances due under an assumed unexpired lease as cure at the time of assumption, the Debtors assume, and must honor, other obligations under the Leases, regardless of when they arise. The Debtors cannot avoid these obligations through releases or waivers in their Plan. Further, any assumption or assumption and assignment must remain subject to all provisions of the Leases, including those provisions concerning use, radius, exclusivity, tenant mix and balance. This is consistent with Section 365(b) of the Bankruptcy Code, as well as Article 8.1(b) of the Plan, which provides in pertinent part that each "Each executory contract and unexpired lease assumed or assumed and assigned pursuant to the Plan shall vest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, *except as modified by [the provisions of the Plan,]*[4] *any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law . . . .*" (emphasis added).

10. Specifically, in addition to rent and related monthly charges, the Debtors bear responsibility for other charges under the Leases that may not yet be known or which may not yet have been reconciled and/or adjusted from the pre-assumption periods. For instance, the Debtors occupy retail space at the Centers pursuant to triple-net leases, where they typically pay rent and related lease charges in advance for each month. In addition to a base minimum rent, the Debtors pay a pro-rata share of other charges and expenses, such as real property taxes, insurance, common area maintenance ("CAM") fees, and percentage rent. Certain charges, such as CAM and property taxes are estimated prospectively, billed to and paid by the tenant during

---

[4] Similarly, there is also no authority to permit the Debtors to modify an unexpired lease "pursuant to a Plan." Modifications can only be made by consent of the parties, or pursuant to an Order of the Court and/or applicable law. Accordingly, the bracketed language above should also be stricken from the Plan.

5

the year based upon such estimate, and then reconciled after year-end. Year-end reconciliations and adjustments for previous years may not yet be complete (i.e. – year-end reconciliations and adjustments that accrued through 2018 have not been billed for many locations, and such charges for 2018 will not be billed until sometime in 2019 or after). Moreover, certain charges may be paid in arrears, and cannot be calculated (in some cases) until a year or more after year-end. These accrued but unbilled charges are not yet due under the Leases, and they do not create a current default or payment obligation that is part of the cure payment required to assume the Leases. Nevertheless, Debtors remain responsible for all accrued or accruing charges under the Leases, and must pay such charges when they come due under the Leases. The Debtors cannot assume the Leases pursuant to the Plan, and then try to use the Plan or Confirmation Order to release their obligation to pay these accrued or accruing, but unbilled, charges that come due under the Leases in the ordinary course.

11. The Leases also contain provisions that require the Debtors to indemnify Landlords with respect to various claims, which claims may not become known until after the assumption of the Leases (i.e. personal injury claims at the Premises and damage to property by the Debtors or their agents). Any assumption of the Leases must be subject to the terms of the Leases, including the continuation of all indemnification obligations, regardless of when they arise.[5] Nothing in the Plan or Confirmation Order should act as a waiver or release of any indemnity or other rights and obligations that exist under the Leases.

C. **The Plan Improperly Seeks to Deprive Creditors of their Setoff and Recoupment Rights.**

12. Through the injunction and setoff provisions, the Debtors improperly seek to deprive Landlords of their rights to setoff and recoupment. *See* Plan, Article 10.5 & 10.11.

---

[5] Any ability to assume the Leases is subject to the protections provided by section 365(b) and (f). Therefore, any assumption must be in accordance with all provisions of the Leases.

6

There is no authority to deprive Landlords of their setoff and recoupment rights through a plan or to impose unreasonable conditions on the preservation of those rights. To the extent any claim objections or preference actions are prosecuted against the Landlords following Plan confirmation, the Landlords should not be deprived of their rights to assert setoffs or exercise recoupment, or be limited in their ability to enforce these rights. In addition, the Debtors must assume all obligations under their Leases, and the Plan may not cut off the Landlords rights to setoff existing security deposits in the event of future defaults under Leases assumed under the Plan. The Debtors fail to provide any authority for seeking to void Landlords' ability to exercise their setoff and recoupment rights pursuant to applicable law, and Debtors should not be permitted to deprive Landlords of these rights. *See Carolco Television Inc. v. Nat'l Broadcasting Co. (In re De Laurentiis Entm't Grp. Inc.)*, 963 F.2d 1269 (9th Cir. 1992), *cert denied* 506 U.S. 918 (1992) (setoff rights survive plan confirmation); *see also In re Luongo*, 259 F.3d 323, 333 (5th Cir. 2001); *Folger Adam Sec., Inc. v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 257-61 (3d Cir. 2000) (recoupment defense survives free and clear sale of debtor's assets). This is especially true where, as here, the Plan seems to preserve all of the Debtors' rights to such setoff and recoupment.

**D.      The Injunction and Release Provisions of the Plan Are Overbroad and Ambiguous.**

13.    The release, discharge, and injunction provisions of the Plan are overbroad and require revision. *See* Plan, Article 10.3, 10.5 & 10.6(b). The language is inconsistent with the Landlords' rights and protections under their Leases and the Bankruptcy Code. As drafted, the provisions not only improperly seek to deprive Landlords their rights to setoff and recoupment, but also do not adequately address the fact that various claims and rights under the Leases that arise prior to confirmation must survive confirmation of the Plan and the Effective Date for the continuing obligations that exist under the Leases. As set forth above, these include

7

continuing post-assumption obligations, obligations for year-end adjustments and reconciliations that have accrued (or are accruing) prior to confirmation, which have not yet been billed under the Leases, as well as indemnify obligations under the Leases. The Debtors (or successor) assume the Leases subject to their terms, and must assume all obligations owing under the Leases, including obligations that have accrued but may not yet have been billed under each Lease and indemnity obligations under the Leases. Nothing in any Plan or Confirmation Order should preclude the Landlords from pursuing the Debtors or Reorganized Debtors for any obligations accruing or arising under the Leases, including any indemnification obligation that Landlords have under the Leases, and the Plan and any order should specifically preserve all rights of the parties with respect to assumed Leases.

E.  **The Debtors Should Pay All Undisputed Amounts Not Later than the Effective Date.**

14. The Debtors should be required to pay all undisputed cure amounts for assumed leases on the Effective Date of the Plan along with other administrative claims. Section 365(b)(1)(A) requires that the Debtors promptly cure outstanding balances due under the Leases upon assumption. Here, the Plan states that "Cure Amounts shall, in the discretion of the Debtors or the Reorganized Debtors, as applicable, be paid on the later of (i) the Effective Date and (ii) without acceleration in the ordinary course of business and according to the terms of the executory contract or unexpired lease." Plan, Article 8.3.[6] In its current form, the Plan does not comply with the timing required by Section 365 of the Bankruptcy Code to "promptly" make cure payments for assumed leases  To the extent there is a dispute over the total cure obligation

---

[6] There are additional references throughout the Plan of the Debtors indicating that Cure Amounts will be asserted and/or paid in the ordinary course of business. *See, e.g.*, Plan, Article 8.3(a) ("the Cure Amount shall be asserted against the Debtors or the Reorganized Debtors as applicable, in the ordinary course of business" despite the establishment of a cure objection deadline"; Plan, Article 8.3(b) ("Upon assumption, Cure Amounts shall be paid by the Debtors or the Reorganized Debtors, as applicable, in the ordinary course . . . .").

for any Lease, all undisputed cure amounts should be paid immediately upon the Effective Date. Debtors should also be required to escrow any disputed amounts, and the Court should set a status conference within thirty (30) days of the assumption of the leases to deal with any disputes that remain unresolved after such period.

**F.  Cure and Assumption Objections Will Be Filed Separately.**

15. The Cure Notice provided that the deadline for a counterparty to an Executory Contract or Unexpired Lease to file objections to the proposed assumption, assumption and assignment, or related Cure amount in connection with such executory contract or unexpired lease was December 14, 2018. [D.I. 138].[7]

16. On December 20, 2018, Landlords filed a separate objection to the Debtors' Cure Amounts (the "<u>Cure Objection</u>"), which shall be incorporated herein as though fully set forth herein. Landlords further reserve the right to assert rejection claims, and other claims for rejected leases, when and if any leases are rejected by the Debtors.

17. Moreover, the Landlords do not waive and hereby reserve all of their rights to later or further object to any asserted Cure Amount and/or to the Debtors' proposed assumption or assumption and assignment of the leases under the Plan or otherwise.

**G.  The Exit Financing Must Preserve and Protect the Rights of Landlords**

18. The Plan provides for the approval of exit financing to assist in the Debtors' emergence from bankruptcy. The form of exit financing facility documents have not yet been filed or otherwise made available. Landlords have no objection to exit financing in general, so long as it does not seek liens on Leases, or provide access to the Premises, in violation of the Leases or applicable state law. These rights were specifically limited during these cases in the orders approving the Debtors' financing, and there is no authority to expand

---

[7] This deadline was extended by agreement of the parties through and including December 21, 2018 at 4 p.m. (ET).

9

those rights as part of the Debtors' exit financing. Moreover, because the exit financing likely provides the lenders with collateral as defined in a security agreement, which has not been filed, it is impossible for Landlords to determine the scope of the rights granted vis-à-vis the Leases and the Premises in the financing package.

19. The Leases prohibit or limit the right to assign the Leases and any right to pledge an interest the Leases. Provisions that prohibit, limit, or otherwise restrict the ability to encumber leases are critical to Landlords' ability to (a) control their properties, (b) preserve clear title to their Leases, (c) comply with their own financing and investment requirements, and (d) effectively market their properties. Even where a lease may permit liens, such rights may be subordinate to Landlords' own financing. Provisions that prohibit or restrict the assignability of the Leases are enforceable under state law, and there is no authority for the Debtors or Reorganized Debtors to use the Bankruptcy Code, or the Plan confirmation process, to gain rights that are not otherwise available to them under state law or the Leases. Landlords therefore object and expressly reserve their rights to object to any proposed exit financing that seeks any lien on the Leases, or access to collateral in the Premises that is contrary to the terms of the Leases or applicable law.

**H.     The Landlords Objects to Any Assignment of the Leases Under the Plan.**

20. The Plan provides for deemed assumption of all unexpired leases of nonresidential real property as of and subject to the occurrence of the effective date:

> "except for any executory contract or unexpired lease that (i) previously has been assumed, assumed and assigned, or rejected . . ., (ii) is the subject of a separate motion or notice filed by the Debtors on or before the Confirmation Date seeking to assume, assume and assign, or reject pursuant to this Plan, the Confirmation Order or section 365 of the Bankruptcy Code, or (iii) is the subject of a pending Assumption Dispute."

10

§ 8.1[a]. The Plan further provides that "entry of the Confirmation Order shall constitute approval of the assumptions or assumptions and assignments," and that the assumption of an unexpired leases of nonresidential real property "may include the assignment of certain of such contracts to Affiliates." § 8.1[b]. Finally, the Plan provides that all cure amounts shall be paid "following assumption or assumption and assignment of the underlying executory contract or unexpired lease." § 8.3.

21. The Landlords object to any assumption and assignment of the Leases under the Plan as there is nothing in the Plan requiring sufficient (or any) notice of any proposed assumption and assignment of the Lease, or requiring the Debtors to provide adequate assurance of future performance with respect to any proposed assignee. Therefore, Plan should provide or clarify that the Debtors shall not assume and assign any unexpired leases of nonresidential real property, except on motion to the Court with sufficient notice to the applicable landlord.

### III. RESERVATION OF RIGHTS

22. Landlords reserve their rights to raise further objections to the Plan, the Plan Supplement, or any amendments thereto, and in response to any amended Plan filed by the Debtors, as well as the Confirmation Order when it becomes available.

### IV. JOINDER IN OBJECTIONS

23. Landlords also join in any objection of other landlords, to the extent not inconsistent with this Objection.

### V. CONCLUSION

Based on the foregoing, Landlords request that the Court not approve the Plan unless and until the Debtors amend the Plan consistent with this Objection, including the modifications requested herein, and grant such further relief as the Court deems proper.

| | |
|---|---|
| Dated: December 21, 2018<br>Wilmington, Delaware | Respectfully submitted,<br><br>*/s/ Leslie C. Heilman*<br>Leslie C. Heilman, Esquire (No. 4716)<br>Laurel D. Roglen, Esquire (No. 5759)<br>BALLARD SPAHR LLP<br>919 N. Market Street, 11th Floor<br>Wilmington, DE 19801<br>Telephone: (302) 252-4465<br>Facsimile: (302) 252-4466<br>E-mail: heilmanl@ballardspahr.com<br>　　　　　roglenl@ballardspahr.com<br><br>　　　and<br><br>Dustin P. Branch<br>BALLARD SPAHR LLP<br>2029 Century Park East, Suite 800<br>Los Angeles, CA 90067-3012<br>Telephone: (424) 204-4354<br>Facsimile: (424) 204-4350<br>E-mail: branchd@ballardspahr.com<br><br>　　　and<br><br>David L. Pollack, Esquire<br>BALLARD SPAHR LLP<br>51st Fl - Mellon Bank Center<br>1735 Market Street<br>Philadelphia, Pennsylvania 19103<br>Telephone: (215) 864-8325<br>Facsimile: (215) 864-9473<br>E-mail: pollack@ballardspahr.com<br><br>*Counsel to ARC CTCHRNC001, LLC, ARC SSSDLLA001, LLC, Brixmor Operating Partnership LP, Centerpoint Development Company, L.L.C., Federal Realty Investment Trust, Gateway Pinole Vista, LLC, MANANA-DCIT, LLC, MT San Antonio I, LLC, PGIM Real Estate, R46 Realty Associates, L.P., Starwood Retail Partners, LLC, and The Macerich Company* |

Of Counsel:
Ivan M. Gold, Esquire
Allen Matkins Leck Gamble Mallory &
Natsis LLP
Three Embarcadero Center, 12th Floor,
San Francisco, CA 94111-4074
Telephone: (415) 273-7431
Facsimile:  (415) 837-1516
E-mail:  igold@allenmatkins.com
*Co-counsel to MANANA-DCIT, LLC Only*