IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>DAVID'S BRIDAL, INC., et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 18-12635 (LSS)<br><br>Jointly Administered<br><br>**Hearing Dates:**<br>**TBD (Contract Assumption)**<br>**1/4/19 (Plan and Disclosure)**<br><br>**Objection Deadlines:**<br>**12/28/18 (Contract Assumption – Extended by Agreement)**<br>**12/28/18 (Plan and Disclosure – Extended by Agreement)**<br><br>**Re: D.I. 138, 12 and 13** |

**COMENITY CAPITAL BANK'S LIMITED OBJECTION AND RESERVATION OF RIGHTS WITH RESPECT TO (1) THE NOTICE OF ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF DEBTORS AND RELATED PROCEDURES AND (2) THE PROPOSED JOINT PREPACKAGED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

---

Comenity Capital Bank ("Comenity"), by and through its undersigned counsel, submits its Limited Objection and Reservation of Rights with respect to (1) the *Notice of Assumption of Executory Contracts and Unexpired Leases of Debtors and Related Procedures* (the "Notice") (D.I. 138) and (2) the *Proposed Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (D.I. 12) (the "Plan").[2]

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: David's Bridal, Inc. (4563); DB Investors, Inc. (8503); DB Holdco, Inc. (4567); and DB Midco, Inc. (3096). The location of the Debtors' corporate headquarters is 1001 Washington Street, Conshohocken, Pennsylvania 19428.

[2] The parties have been engaged in ongoing discussions and the Debtors agreed to extend Comenity's objection deadlines with respect to the Notice and the Plan until 11:00 a.m. on December 28, 2018, in accordance with Local Rule 9006-1(c)(ii) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

Comenity does not oppose assumption of the Program Agreement (as defined below) or confirmation of the Plan, subject to the resolution of matters addressed below. Comenity's limited objection is based upon Bankruptcy Code sections 365(b), 1123(b)(2), and 1129(a)(1) and applicable law.

## A. BACKGROUND INFORMATION.

**Comenity's Private Label Credit Card Program and the Program Agreement.** Comenity (formerly World Financial Capital Bank) and David's Bridal, Inc.[3] ("David's" or the "Debtor") are parties to a Private Label Credit Card Plan Agreement dated May 27, 2010, as amended (the "Program Agreement").[4]

Under the Program Agreement, Comenity operates a private label credit card program with David's (the "Card Program"). Comenity issues private label credit cards ("Private Label Cards") to qualified customers of David's, and Comenity extends credit to those cardholders for purchases from David's. Comenity has sole discretion to make cardholder credit decisions, including whether to approve various types of special credit programs.

Comenity advances payment to David's after a purchase is made by a cardholder, net of various other amounts owed to Comenity, including chargebacks, refunds, returns, cardholder disputes, fees, and other amounts. Some of those amounts due Comenity are not currently known

---

[3] Priscilla of Boston, Inc., which subsequently merged with David's, was also a party to the Program Agreement.

[4] The Program Agreement (with all related information) is confidential by its terms. Further, the Program Agreement (with all related information) contains Comenity's confidential commercial information subject to protection under Bankruptcy Code § 107(b). Comenity operates in a competitive market and the disclosure of Comenity's confidential commercial information would harm Comenity and would also provide Comenity's competitors and others with an unfair commercial advantage. Accordingly, this limited objection only generally describes certain non-economic terms of the Program Agreement. Comenity is not waiving confidentiality and reserves all rights with respect thereto. If necessary, Comenity will file a redacted version of the Program Agreement under seal.

to Comenity and/or may not arise until sometime in the future. For example, cardholder disputes may occur well after the purchase of the merchandise.

Under the Program Agreement, David's must maintain ongoing business operations, including compliance with the Card Program's Operating Procedures and resolution of customer disputes. David's is also required to market, promote, participate in, and support the Card Program. Further, David's is required to indemnify Comenity for certain matters (including claims which are not currently known). David's obligations are material to the Card Program and mitigate Comenity's risks. Comenity owns the cardholder accounts and cardholder payments.

David's identified the Card Program as one of the Customer Programs to be continued after the filing of its Chapter 11 case. *Debtors' Motion for Entry of an Order (A) Authorizing the Debtors to Honor and Pay Prepetition Customer Obligations, (B) Authorizing Financial Institutions to Honor and Process Checks and Transfers Related to Such Obligations and (C) Approving Form and Manner of Notice to Customers*, ¶ 10 [D.I. 8] (the "Customer Program Motion"), ¶ 10. David's states that in-store financing options, including Comenity's Card Program, are critical to David's. In fact, Comenity finances a significant percentage of sales. The Customer Program Motion also generally describes the operations of the Card Program, including the settlement procedures with David's for cardholder purchases, net of various amounts due Comenity. David's continued use of the Private Label Cards requires that Comenity continue to process those transactions, which creates obligations between Comenity and David's.

The Court approved the Customer Program Motion at the first day hearing. *Order (A) Authorizing the Debtors to Honor and Pay Prepetition Customer Obligations, (B) Authorizing Financial Institutions to Honor and Process Checks and Transfers Related to Such Obligations and (C) Approving Form and Manner of Notice to Customers* [D.I 92] (the "Customer Program

Order”). The Customer Program Order authorizes David’s to continue to administer the Customer Programs currently in effect, including the Card Program. Comenity has proceeded in accordance with the Customer Program Order and the Program Agreement. Comenity continues to finance cardholder purchases and to make payments to David’s, net of other amounts due Comenity under the Program Agreement.

**Pre-Funded Transactions are Prohibited by the Program Agreement.** A pre-funded transaction is a transaction pursuant to which the cardholder purchases the merchandise, the transaction is processed with a Private Label Card, but the cardholder does not receive the merchandise or services at the time of the transaction (“Pre-Funding” or a “Pre-Funded Transaction”). Pre-Funding is expressly prohibited under the Program Agreement and creates significant, additional financial risk for Comenity.

Pre-Funding is in violation of several different provisions of the Program Agreement. First, section 1.1 of the Program Agreement prohibits the extension of credit to cardholders under a “Layaway Program.” Layaway Program is defined as the “Customers…ability to pre-pay for Goods and/or Services prior to taking possession of such Goods and/or Services. The Layaway Program shall not include the extension of credit to such Customers.”

Second, under section 4.4(b) of the Program Agreement, David’s represents and warrants to Comenity that “[a]s of the date any Transaction Records are presented to the Bank… Retailer has no knowledge … of any fact or matter which would immediately or ultimately impair the validity of any Charge Slip relating to such Transaction Records, the transaction evidenced thereby, or its collectability.” With a Special Order (defined below), David’s has received full payment for the transaction and the cardholder has incurred an obligation to Comenity in the amount of the transaction; but, the cardholder has not received the goods or services for which

David's has been paid and for which the cardholder is obligated to Comenity. Accordingly, if the cardholder does not receive those goods or services for whatever reason (including manufacturing or shipping problems or delays), the cardholder is likely to dispute his or her obligation to Comenity and Comenity's ability to collect that account from the cardholder is materially impaired.

Third, section 6.1.2 of the Card Program's Operating Procedures provides that goods and services cannot be submitted to Comenity for settlement prior to shipment. In a Pre-Funded Transaction such as a Special Order, Comenity is extending credit to the cardholder before the cardholder takes possession of the merchandise. The transaction is submitted for settlement before shipment. Consequently, David's Pre-Funding creates significant, additional monetary risk for Comenity, which is not contemplated by the Program Agreement.

David's has disclosed that it is engaged in at least one type of Pre-Funding; a special order where a cardholder purchases merchandise which is not in the David's store. The transaction is processed with a Private Label Credit Card, but the cardholder does not receive the purchased merchandise at the time of the transaction because the merchandise must be shipped from another location such as an overseas manufacturer, a distribution center, or another store (a "Special Order"). David's has advised Comenity that the current outstanding balance of Special Orders is approximately $3 million.[5] Further, if the Debtor does not terminate the processing of Special Orders with the Private Label Cards, the outstanding balance of Special Orders is expected to

[5] The Customer Program Motion (¶¶ 18-20) describes what David's refers to as a "Customer Deposit Program" involving 82,000 outstanding special orders (with an aggregate $32 million value) related to customers who made advance payment deposits for merchandise and/or services. The Customer Deposit Program may include Special Orders.

increase significantly as sales increase during David's "Bridal Christmas" season in the first quarter of 2019 and thereafter.[6]

**B. SUMMARY OF RELEVANT PROVISIONS OF THE NOTICE AND THE PLAN.**

David's Notice does not identify the Program Agreement as an executory contract to be assumed. However, the Notice was served on Comenity. *Affidavit of Service*, Exhibit 4, p. 45 of 72 [D.I. 146].

The Notice states, in part:

> [I]n accordance with Section 8.1 of the Prepackaged Plan and sections 365 and 1123 of the Bankruptcy Code, all executory contracts … (the "Assumed Contracts") … shall be deemed assumed by the Debtors, except for any executory contract … that (i) previously has been assumed, assumed and assigned, or rejected pursuant to a Final Order of the Bankruptcy Court, (ii) is the subject of a separate motion or notice filed by the Debtors on or before the Confirmation Date seeking to assume, assume and assign, or reject pursuant to the Prepackaged Plan, the Confirmation Order or section 365 of the Bankruptcy Code or (iii) is the subject of a pending Assumption Dispute.
>
> …[A]ny monetary amounts by which any executory contract… to be assumed hereunder is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Reorganized Debtors upon assumption thereof in the ordinary course. If you believe that any Cure Amounts are due by the Debtors in connection with the assumption of your contract…, you should assert Cure Amounts against the Debtors in the ordinary course of business.
>
> …[T]o the extent that you object to the assumption of an Assumed Contract on any basis, including the Debtors' satisfaction of the requirements under section 365(b)(1)(C) of the Bankruptcy Code to provide adequate assurance of future performance under an Assumed Contract, you must …file…a written objection …

The Debtors' Plan referenced in the Notice includes the following provisions, which are relevant to this limited objection.

> Section 6.17 states that "[i]n no event shall any holder of Claims be entitled to set off any such Claim against any Claim, right, or Cause of Action of the Debtor or

[6] Another type of impermissible Pre-Funding is an installment purchase, where the customer makes several installment payments towards the purchase of the merchandise (an "Installment Purchase"). David's has assured Comenity that the Private Label Cards are not being accepted for Installment Purchases.

Reorganized Debtor (as applicable), unless such holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise" (the "Setoff Provision").

Section 8.1 (a)(iii) states that "[a]s of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Amount, all executory contracts … shall be deemed assumed by the Debtors, except for any executory contract … that (iii) is the subject of a pending Assumption Dispute" (the "General Treatment Provision").

Section 1.5 defines Assumption Dispute as "[a]n objection or dispute relating to assumption of an executory contract …, including to any Cure Amount or adequate assurance of future performance under an executory contract … to be assumed, which objection or dispute has been timely filed … and has not been withdrawn or determined by Final Order" (the "Assumption Dispute Provision").

Section 8.3 states that "[a]ssumption … of any executory contract … shall, subject to the satisfaction of the Cure Amount, result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, … arising under any assumed … executory contract … at any time before the effective date of the assumption or assumption and assignment" (the "Cure Release Provision").

Section 10.1 states that except as provided in the Plan, "all assets and property of the Estates shall vest in the Reorganized Debtors, free and clear of all Claims…" (the "Free and Clear Provision").

Section 10.2 states that "[a]s of the Effective Date, the Plan shall bind all holders of Claims …" (the "Binding Effect Provision").

Section 10.3 states that "[u]pon the Effective Date … each holder … of a Claim… shall be deemed to have forever waived, released, and discharged the Debtors … of and from any and all Claims … rights, and liabilities that arose prior to the Effective Date…" (the "Discharge Provision").

Section 10.5(b) states "…[a]ll Entities who have … Claims … are permanently enjoined, on and after the Effective Date, solely with respect to any Claims …that will be … released pursuant to the Plan from …(iv) asserting any right of setoff, directly or indirectly, against any obligation due the Released Parties … (the "Injunction Provision").

Section 10.6(b) states "… the Releasing Parties are deemed to have fully … released … the Released Parties from any and all Claims … whether known or unknown, asserted or unasserted, foreseen or unforeseen, liquidated or unliquidated

> … existing or hereinafter arising … based on or relating to …the transactions or events giving rise to, any Claim …[or] the business or contractual arrangements between the Debtors and any Released Party …" (the "Release Provision").
>
> Section 10.11 states that "[i]n no event shall any holder of a Claim be entitled to recoup such Claim against any Claim, right, or Cause of Action of the Debtors or Reorganized Debtors … unless such holder actually has performed such recoupment and provided notice thereof … to the Debtors on or before the Confirmation Date, notwithstanding any indication … that such holder asserts, has, or intends to preserve any right of recoupment" (the "Recoupment Provision").

C. **COMENITY'S OBJECTIONS TO THE NOTICE AND THE PLAN**.

Comenity supports David's reorganization and the assumption of the Program Agreement, subject to the resolution of matters addressed below. Comenity's limited objection is based upon Bankruptcy Code sections 365(b), 1123(b)(2), and 1129(a)(1) and applicable law. Comenity objects to the Notice and the Plan on the following bases:

1. The Program Agreement should be specifically identified as an assumed executory contract;
2. David's must cure all Pre-Funding so that David's is in compliance with the Program Agreement;
3. David's must provide Comenity with adequate assurance of future performance;
4. If the Program Agreement is assumed, David's cannot reject the Program Agreement after Plan confirmation;
5. If the Program Agreement is assumed, David's must assume all of the contract's burdens; David's cannot selectively eliminate certain obligations under the Program Agreement; and
6. David's cannot assign the Program Agreement without proper disclosure and protection of Comenity's rights.

Generally, Bankruptcy Code section 365(b) prohibits assumption of an executory contract unless the debtor (1) cures the monetary and non-monetary defaults[7] and (2) provides adequate

[7] The Program Agreement is not a lease of real property and the exceptions for cures of non-monetary defaults under Bankruptcy Code section 363(b)(1)(A) are inapplicable.

assurance of future performance. Bankruptcy Code section 1123(b)(2) allows for a plan to provide for the assumption or assignment of an executory contract in accordance with section 365. Bankruptcy Code section 1129(a) requires that the Plan comply with applicable provisions of the Bankruptcy Code.

**1. The Program Agreement Must be Specifically Identified as an Assumed Executory Contract.**

David's has been granted an extension through February 4, 2019 to file their Schedules and Statements (including Schedule G: Executory Contracts and Unexpired Leases) and David's has not identified its executory contracts. *Order (A) Scheduling Combined Hearing to Consider (I) Approval of Disclosure Statement, (II) Approval of Solicitation Procedures and Forms of Ballots, and (III) Confirmation of Prepackaged Plan; (B) Establishing an Objection Deadline to Object to Disclosure Statement and Plan; (C) Approving the Form and Manner of Notice of Combined Hearing, Objection Deadline, and Notice of Commencement; (D) Approving Notice and Objection Procedures for the Assumption of Executory Contracts and Unexpired Leases; (E) Extending Time, and Upon Plan Confirmation, Waiving of Requirements to (I) Convene Section 341 Meeting, and (II) File Statements of Financial Affairs and Schedules of Assets and Liabilities; and (F) Granting Related Relief*, ¶13 [D.I. 95]. Further, the Notice does not identify the Program Agreement. Nevertheless, Comenity understands that David's intends to assume the Program Agreement.

Executory contracts are assumed "subject to the court's approval." 11 U.S.C. §365(a). Therefore, to avoid any doubt regarding the assumption of the Program Agreement, Comenity requests that the Program Agreement be specifically identified as an assumed executory contract.

2. **David's Must Cure the Pre-Funding.**

Pursuant to 11 U.S.C. § 365(b)(1), if there has been a default under an executory contract and the debtor wants to assume and assign the contract, the debtor must: (A) cure the default, or provide adequate assurance that it will promptly cure the default; (B) compensate, or provide adequate assurance the it will promptly compensate, the non-debtor party for any actual pecuniary loss resulting from the debtor's default; and (C) provide adequate assurance of future performance under the contract. The purpose of § 365(b)(1) is to restore the debtor-creditor relationship to pre-default conditions, bringing the contract back into compliance with its terms. See In re DBSI, Inc., 405 B.R. 698, 704 (Bankr. D. Del. 2009)(citations omitted). Further, the "cure" or "compensation" contemplated by § 365(b)(1)(A) and (B) allows for something other than immediate cash payment. In re Carlisle Homes, Inc., 103 B.R. 524, 538 (Bankr. D.N.J. 1988).

Pre-Funding is in violation of the Program Agreement and David's Special Orders create significant, additional and unbargained-for financial risk for Comenity. Further, David's has advised Comenity that it is unable to stop the Special Orders because of limitations in its point of sale system.

Comenity's Credit Card Program is important to David's. Yet, David's states that it is unable to comply with the Program Agreement and stop Special Orders. Therefore, in order to protect Comenity from current or future risks resulting from Special Orders, David's must provide Comenity with a letter of credit and/or a reserve in the amount of current and future Special Orders. A letter of credit and/or a reserve for Special Orders will cure the violations of the Program Agreement arising from Pre-Funding and also act as adequate assurance of future performance.[8]

[8] A letter of credit for Comenity's Pre-Funding risk is consistent with the Debtors dealings with Elavon, Inc, the Debtor's credit card processor for other forms of non-cash payment such as Visa or MasterCard (Elavon does not process Comenity's Private Label Cards). The Customer Program Motion states that Elavon currently holds a $28 million letter of credit to secure the Debtor's obligations for chargebacks and

If David's is permitted to assume the Program Agreement without providing Comenity with a cure and adequate assurance in the amount of the current and future Special Orders, David's will be effectively re-writing the terms of the Program Agreement, without Comenity's consent, at significant prejudice to Comenity, and in violation of the Bankruptcy Code.

3. **David's Must Provide Comenity Adequate Assurance of Future Performance**.

The phrase "adequate assurance of future performance" was adopted from Uniform Commercial Code section 2-609. Report of the Commission on Bankruptcy Laws of the United States, H.R. Doc. No. 93-137, 93d Cong., 1st Sess. Pt. II 156-57 (1973). U.C.C. section 2-609 provides that a party with reasonable grounds for insecurity regarding another party's performance may demand "adequate assurance." Official Comment 4 to section 2-609 discusses, inter alia, Corn Products Refining Co. v. Fasola, 94 N.J.L. 181, 109 A. 505 (1920), and James B. Berry's Sons Co. of Illinois v. Monark Gasoline & Oil Co., Inc., 32 F.2d 74 (8th Cir. 1929), and indicates that "adequate assurance" focuses on the financial condition of a contracting party and his ability to meet its financial obligations. The phrase "adequate assurance of future performance" is to be given a practical, pragmatic construction based upon the facts and circumstances of each case. In re Bon Ton Restaurant & Pastry Shop, Inc., 53 B.R. 789 (Bankr. N.D. Ill. 1985); Androse Assocs. of Allaire, LLC v. A&P (In re A&P), 472 B.R. 666, 675 (S.D.N.Y. 2012).

---

other amounts due Evalon under its Payment Processing Agreement. Further, the Debtor appears to have ample availability to issue a letter of credit to Comenity under its postpetition financing and exist financing. According to paragraphs 8(a) and 11 of the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lenders, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [D.I. 17], there is an $80 million sublimit for the issuance of letters of credit, while the amount of outstanding, undrawn letters of credit is only approximately $42.5 million.

David's Special Orders are in violation of the Program Agreement. Special Orders create significant, additional financial risks for Comenity, including cardholder disputes resulting from the cardholders' failure to receive the purchased merchandise or services. These additional risks of cardholder disputes are not present when the cardholder receives the goods and/or services at the time the credit card transaction is processed – a transaction permitted under the Program Agreement. Accordingly, if the Program Agreement is assumed and Special Orders continue, Comenity is exposed to significant, increased, and unbargained-for risks. Unfortunately, David's states that it is unable to stop Special Orders because of limitations in David's point of sale system. Therefore, if the Program Agreement is to be assumed, a practical, pragmatic solution is to provide Comenity with adequate assurance in the form of a letter of credit and/or a reserve in the amount of the Special Orders.[9]

**4. If the Program Agreement is Assumed, David's Cannot Reject the Program Agreement After Plan Confirmation.**

Bankruptcy Code section 1123(b)(2) provides for a plan's assumption or rejection of executory contracts in accordance with Bankruptcy Code section 365. Bankruptcy Code section 365(d)(2) provides that in a chapter 11 case, the debtor "may assume or reject an executory contract… at any time before the confirmation of a plan…" NLRB v. Bildisco & Bildisco, 465 U.S. 513, 529 (1984).

However, various provisions of the Plan appear to conflict with Bankruptcy Code section 365(d)(2) and allow for assumption after confirmation. For example, section 8.1(a) of the Plan provides that assumption shall occur as of the Effective Date rather than on or before confirmation. Section 8.1(iii) of the Plan and the definition of "Assumption Dispute" appear to provide David's

---

[9] As noted above, David's states that it does not process Installment Purchases with the Private Label Cards. For the avoidance of doubt, Installment Purchases are prohibited, regardless whether Comenity receives a letter of credit or a reserve.

with the ability to revisit rejection after the confirmation order. Finally, section 8.8(d) of the Plan permits David's to alter the treatment of an executory contract after the entry of the confirmation order if there is an Assumption Dispute.

Therefore, in order for the Plan to comply with Bankruptcy Code section 1129(b), David's cannot change its mind and reject the Program Agreement after the contract is assumed at confirmation.

**5. If the Program Agreement is Assumed, David's Must Assume all of the Contract's Burdens; David's Cannot Selectively Eliminate Certain Obligations Under the Program Agreement.**

An executory contract must be assumed in its entirety. NLRB v. Bildisco & Bildisco, 465 U.S. 513, 531 (1984); Lee v. Schweiker, 739 F. 2d 870, 876 (3rd Cir. 1984), Covington v. Covington Land L.P., 71 F.d 3d 1221, 1226 (6th Cir. 1995) ("When a debtor assumes the … contract under § 365, it must assume both the benefits and the burdens of the contract. Neither the debtor nor the bankruptcy court may excise material obligations owing to the non-debtor contracting party.")

The Plan appears to selectively excise certain obligations under the Program Agreement and applicable law, notwithstanding its assumption and the requirement that David's assume all of the burdens of the Program Agreement.

For example, Comenity's rights of setoff and recoupment are fundamental and integral to the Credit Card Program. Comenity advances payment to David's after a purchase is made by a cardholder, net of various other amounts owed to Comenity, including chargebacks, refunds, returns, cardholder disputes, fees, and other amounts. Both the Customer Program Order and the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative*

*Expense Status, (IV) Granting Adequate Protection to the Prepetition Lenders, (V) Modifying Automatic Stay, and (VI) Granting Related Relief* [D.I. 221] recognize Comenity's setoff and recoupment rights. However, the Setoff Provision (section 6.17) and the Recoupment Provision (section 10.11) in the Plan alter Comenity's setoff and recoupment rights, even if the Program Agreement is assumed. The Credit Card Program cannot function without the netting out of amounts due between the parties, including Comenity's rights of setoff and recoupment.

Additionally, numerous obligations under the Program Agreement could relate to periods prior to the Plan's effective date, which obligations are currently unknown or undetermined, and which would be eliminated under the Plan even if the Program Agreement is assumed. For example, David's is responsible to Comenity for cardholder disputes and chargebacks and Comenity could be subject to cardholder disputes asserted after the Plan's effective date for credit card transactions made before the effective date. As another example, David's must indemnify Comenity for certain losses. David's indemnification obligations could arise from matters pre-dating the effective date but which are not known or discoverable until after the effective date. These obligations appear to fit the broad definition of a Claim, which are released under various Plan provisions, including the Cure Release Provision (section 8.3), the Free and Clear Provision (section 10.1), the Discharge Provision (section 10.3), the Injunction Provision (section 10.5(b)), and the Release Provision (section 10.6(b)), all notwithstanding the assumption of the Program Agreement and David's payment of contract obligations in the ordinary course.[10] These broad definitions and releases in the Plan would improperly release the Debtors and the Reorganized Debtors from various obligations under the assumed Program Agreement. David's (and its successors) must take the Program Agreement *cum onere* – subject to existing burdens.

---

[10] The Plan eliminates any question regarding Debtor's indemnification obligations to its management team by providing that those obligations shall not be discharged or impaired by confirmation. Plan, § 8.4(a).

Therefore, in order for the Plan to comply with Bankruptcy Code section 1129(b), the confirmation order must provide that the Debtors and the Reorganized Debtors shall remain liable for all amounts or obligations coming due at any time under the Program Agreement, regardless when such amounts or obligations accrued, including, without limitation (1) all amounts and obligations arising from or related to the Private Label Credit Cards and the Card Program, including chargebacks, refunds, returns, cardholder disputes, fees, attorney's fees, and other amounts, (2) any and all indemnification obligations under the Program Agreement regardless when the indemnified act or event occurred, and (3) any unpaid Cure Amounts or post-assumption obligations under the Program Agreement. Further, all of Comenity's rights, claims and defenses under the Program Agreement or applicable law must survive, including setoff and recoupment.[11]

**6. David's Cannot Assume and Assign the Program Agreement Without Proper Disclosure and Protection of Comenity's Rights.**

The Notice and the Plan provide for the possible assumption or assumption and assignment of the Program Agreement, including an assignment to an Affiliate. Plan, § 8.2(b). However, Comenity has not been provided with any information regarding any proposed assignment or any assignee. Accordingly, Comenity objects to any assignment of the Program Agreement without adequate information and the ability to object.

**D. RESERVATION OF RIGHTS.**

Comenity also reserves all rights to supplement or amend this limited objection and/or to assert additional objections and/or amounts under the Program Agreement and/or applicable law, including all rights and claims of chargeback, recoupment, setoff, and indemnification, plus

[11] Comenity will provide the Debtors with proposed language for the confirmation order.

Comenity's recovery of its attorney's fees and expenses. See In re Crown Books Corp., 269 B.R. 12, 15 (Bankr. D. Del. 2001).

Dated: December 28, 2018
Wilmington, Delaware

Respectfully submitted,

*/s/ Jason A. Gibson*

Frederick B. Rosner (DE # 3995)
Scott J. Leonhardt (DE # 4885)
Jason A. Gibson (DE # 6091)
THE ROSNER LAW GROUP LLC
824 Market Street, Suite 810
Wilmington, DE 19801
rosner@teamrosner.com
leonhardt@teamrosner.com

-and-

Robert B. Berner (0020055)
(admitted pro hac vice)
BAILEY CAVALIERI LLC
1250 Kettering Tower
Dayton, OH 45423
(937) 223-4701 / Fax: (937) 223-0170
rberner@baileycav.com

-and-

Matthew T. Schaeffer (0066750)
(admitted pro hac vice)
BAILEY CAVALIERI LLC
10 West Broad Street, Suite 2100
Columbus, OH 43215
(614) 229-3252 / Fax: (614) 221-0479
mschaeffer@baileycav.com

*Attorneys for Comenity Capital Bank*