## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| DAVID'S BRIDAL, INC., *et al.*,[1] | Case No. 18- 12635 (LSS) |
| Debtors. | Jointly Administered |
| | **RE: Docket Nos. 12, 13, and 248** |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING DEBTORS' (A) DISCLOSURE STATEMENT (B) SOLICITATION OF VOTES AND VOTING PROCEDURES AND (C) FORM OF BALLOTS, AND (II) CONFIRMING JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF DAVID'S BRIDAL, INC. AND ITS AFFILIATED DEBTORS**

## RECITALS

I.      On November 19, 2018, the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), as "proponents of the plan" within the meaning of section 1129 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), filed (i) the Debtors' *Proposed Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, dated November 18, 2018 (as amended, supplemented and modified, including as modified by the Plan Modifications (as defined below), the "**Plan**")[2] and (ii) the *Disclosure Statement for Joint Prepackaged Chapter 11 Plan of Reorganization of David's Bridal, Inc. and Its Affiliated Debtors*, dated November 18, 2018 [Docket No. 13] (the "**Disclosure Statement**").

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  David's Bridal, Inc. (4563); DB Investors, Inc. (8503); DB Holding, Inc. (4567); and DB Midco, Inc. (3096).  The location of the Debtors' corporate headquarters is 1001 Washington Street, Conshohocken, Pennsylvania 19428.

[2]     Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Plan (as defined herein).  The rules of construction in section 102 of the Bankruptcy Code shall apply to this Order.

II.    On November 20, 2018, the Bankruptcy Court entered an order [Docket No. 95] (the "**Scheduling Order**"), which (i) scheduled a combined hearing (the "**Combined Hearing**") to consider (a) the adequacy of the Disclosure Statement and the Debtors' solicitation procedures used in connection with the solicitation of votes to accept or reject the Plan (the "**Solicitation Procedures**") and (b) confirmation of the Plan, (ii) established procedures for objecting to the Disclosure Statement, the Solicitation Procedures and confirmation of the Plan, (iii) approved the Assumption Notice (as defined in the Scheduling Order), and related objection procedures for the assumption of executory contracts and unexpired leases and associated Cure Amounts, (iv) deemed the Combined Notice (as defined below), which included, among other things, information with respect to the commencement of these Chapter 11 Cases (as defined below) and the deferral of the meeting of creditors and equity holders pursuant to section 341(a) of the Bankruptcy Code (the "**Section 341(a) Meeting**") to be good and sufficient notice of the Combined Hearing and that no further notice need be given; (v) extended the time for (x) the Debtors to convene the Section 341(a) Meeting and waived the requirement that the Debtors convene the Section 341(a) Meeting unless the Plan is not confirmed on or before February 4, 2019, and (y) the Debtors to file their schedules of assets and liabilities and statements of financial affairs (collectively, the "**Schedules and Statements**") and waived the requirement that the Debtors file the Schedules and Statements unless the Plan is not confirmed on or before February 4, 2019; and (vi) granted related relief.

III.    Prior to the Petition Date, appropriate ballots for voting on the Plan (the "**Ballots**"), in the forms attached as Exhibits B-1, B-2, and B-3 to the Scheduling Order, were transmitted to holders of Claims in Class 4 (Prepetition Term Loan Claims) and Class 5 (Unsecured Notes Claims), respectively, in compliance with the Solicitation Procedures as set

01:24025305.3

forth in the *Affidavit of Service* of Jung W. Song, filed on December 11, 2018 [Docket No. 165] (the "**Solicitation Affidavit of Service**").

IV.    On December 11, 2018, the Debtors filed the initial version of the Plan Supplement [Docket No. 167], and on December 28, 2018, the Debtors filed a *Notice of Filing of Supplements to Plan Supplement in Connection with the Proposed Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 255], which contained documents supplementing or amending the Plan Supplement.

V.    On December 28, 2018, the Debtors filed a *Notice of Filing of Blacklines for Revised Proposed Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 249], which contains technical amendments to the Plan and includes the Plan Modifications.  The Plan, as revised, is annexed hereto as <u>Exhibit 1</u>.

VI.    On December 28, 2018, the Debtors filed (i) the *Debtors' (1) Memorandum of Law in Support of (I) Approval of (A) Disclosure Statement, (B) Solicitation of Votes and Voting Procedures, and (C) Form of Ballots, and (II) Confirmation of Joint Prepackaged Chapter 11 Plan of Reorganization of David's Bridal, Inc. and its Affiliated Debtors and (2) Omnibus Reply to Objections Thereto* [Docket No. 251] (the "**Confirmation Memorandum of Law**")*, (ii) the Declaration of Stephen Goldstein in Support of Confirmation of the of the Debtors' Joint Prepackaged Plan of Reorganization under Chapter 11 of the Bankruptcy Code* (the "**Goldstein Confirmation Declaration**"), dated December 28, 2018 [Docket No. 252], (iii) *the Declaration of Carrianne J.M. Basler in Support of Confirmation of the Debtors' Joint Prepackaged Plan of Reorganization under Chapter 11 of the Bankruptcy Code* (the "**Basler Confirmation Declaration**"), dated December 28, 2018 [Docket No. 250], and (iv) the *Declaration of Jung W. Song on Behalf of Donlin, Recano & Company, Inc. Regarding Solicitation of Votes and*

*Tabulation of Ballots Accepting and Rejecting Proposed Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, filed on December 28, 2018 [Docket No. 247] (the "**Voting Certification**").

VII.   On January 3, 2019, the Debtors filed the *Notice of Filing of Additional Supplements to Plan Supplement in Connection with the Proposed Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 267], which contained additional documents supplementing the Plan Supplement.

VIII.   On January 4, 2019, the Bankruptcy Court held the Combined Hearing after due and sufficient notice was given in accordance with the Scheduling Order, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), in each case established by the affidavits of service, mailing or publication filed with the Bankruptcy Court, including (1) the *Affidavit of Service* of Jennifer S. Goode regarding service of the Combined Notice (as defined below) [Docket No. 153],] (2) the Solicitation Affidavit of Service, (3) the *Affidavit of Publication of Notice of Commencement of Cases Under Chapter 11 of the Bankruptcy Code and  Summary of Joint Prepackaged Chapter 11 Plan and Notice of Hearing to Consider (a) Adequacy of Disclosure Statement and Solicitation Procedures (b) Confirmation of Plan of Reorganization and (c) Related Materials* [Docket No. 222], (4) *Notice of Service Regarding Customer Notice* [Docket No. 151], (5) *Affidavit of Service* of Edward A. Calderon regarding service of the notice of the Plan Supplement [Docket No. 169], (6) the *Affidavit of Service* of Sung Kim regarding service of, among other things, the Notice of Supplements to Plan Supplement, the Voting Certification, the notice of filing of blacklines relating to the Plan, the Confirmation Memorandum of Law and the

Basler Confirmation Declaration, the Goldstein Confirmation Declaration [Docket No. 258] (collectively, the "**Notice Affidavits**").

IX.    NOW THEREFORE, based upon the Bankruptcy Court's review of the Plan (including the Plan Supplement), the Disclosure Statement, the Solicitation Affidavit of Service, the Voting Certification, the Notice Affidavits, the Confirmation Memorandum of Law, the Goldstein Confirmation Declaration, the Basler Confirmation Declaration and the *Declaration of Joan Hilson in Support of the Debtors' Chapter 11 Petitions and First-Day Relief* [Docket No. 19], filed on November 19, 2018, and upon the entire record of the Combined Hearing; and upon the arguments of counsel and the evidence proffered and adduced at the Combined Hearing; and the Bankruptcy Court having found and determined that the Disclosure Statement and the Solicitation Procedures should be approved and the Plan should be confirmed as reflected by the Bankruptcy Court's rulings made herein and at the Combined Hearing; and after due deliberation and sufficient cause appearing therefor; the Bankruptcy Court hereby issues the following findings of fact and conclusions of law:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.    Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a)).    The Bankruptcy Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  Approval of the Disclosure Statement and the Solicitation Procedures and confirmation of the Plan are core proceedings pursuant to 28 U.S.C. § 157(b) and the Bankruptcy Court has jurisdiction to enter a final order with respect thereto. The Debtors are eligible debtors under section 109 of the Bankruptcy Code.  Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Debtors are proper plan proponents under section 1121(a) of the Bankruptcy Code.

B.      Chapter 11 Petitions.  On November 19, 2018 (the "**Petition Date**"), each Debtor commenced with the Bankruptcy Court a voluntary case under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases pursuant to section 1104 of the Bankruptcy Code.  No statutory committee of unsecured creditors has been appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.  Further, in accordance with an order of the Bankruptcy Court, the Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

C.      Burden of Proof.  The Debtors have the burden of proving the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence.  In addition, and to the extent applicable, the Plan is confirmable under the clear and convincing evidentiary standard.   As set forth herein, the Debtors have met such burden.

D.      Adequacy of Disclosure Statement.  The Disclosure Statement (a) contains adequate information of a kind generally consistent with the disclosure requirements of all applicable non-bankruptcy law, including the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa (as amended from time to time, the "**Securities Act**"), (b) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan and the transactions contemplated therein, and (c) is approved in all respects.

E.      Solicitation.  Before the Petition Date, the Debtors, through their administrative agent, Donlin, Recano & Company, Inc. ("**DRC**"), caused the Plan, the Disclosure Statement (which included as exhibits thereto, the Plan and the Restructuring Support Agreement) and the

01:24025305.3

Ballots (collectively the "**Solicitation Package**") to be transmitted and served in compliance with sections 1125(g) and 1126(b) of the Bankruptcy Code, the Bankruptcy Rules (including Bankruptcy Rules 3017 and 3018), the Local Rules, the Scheduling Order, all other applicable provisions of the Bankruptcy Code, and all other applicable rules, laws and regulations applicable to such solicitation.   As set forth in the Solicitation Affidavit of Service, the Solicitation Packages were transmitted to and served on holders of Claims in Class 4 (Prepetition Term Loan Claims) and Claims in Class 5 (Unsecured Notes Claims)—the only Classes of Claims and Interests entitled to vote to accept or reject the Plan—on November 18, 2018 and November 19, 2018 before the commencement of these Chapter 11 Cases.   The forms of the Ballots adequately addressed the particular needs of these Chapter 11 Cases and were appropriate for holders of Class 4 Claims (Prepetition Term Loan Claims) and Class 5 Claims (Unsecured Notes Claims), as applicable.   The instructions on the Ballots advised parties that for a Ballot to be counted, the Ballot must be properly executed, completed and delivered to DRC so that it, or the Master Ballot (as defined and described in the Scheduling Motion (as defined below)) transmitting such vote, was received by DRC no later than 5:00 p.m. (Prevailing Eastern Time) on December 18, 2018 (the "**Voting Deadline**"), unless such time was extended by the Debtors.   The period during which the Debtors solicited acceptances of the Plan was a reasonable period of time for holders to make an informed decision to accept or reject the Plan.   The Debtors were not required to solicit votes from the holders of Claims or Interests in Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 3 (Prepetition ABL Claims), Class 6 (General Unsecured Claims), Class 7 (Intercompany Claims) and Class 8 (Intercompany Interests) (collectively, the "**Unimpaired Classes**"), as each such Class is Unimpaired under the Plan and is deemed to accept the Plan.   The Debtors also were not required to solicit votes from

the holders of Interests in Class 9 (Parent Interests), as such Class will not receive any recovery under the Plan and is deemed to reject the Plan. As described in and as evidenced by the Voting Certification, the Solicitation Affidavit of Service and the Notice Affidavits, the transmittal and service of the Solicitation Package (all of the foregoing, the "**Solicitation**") was timely, adequate and sufficient under the circumstances and no other or further Solicitation was or shall be required. The Solicitation complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, was conducted in good faith, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Scheduling Order, and any other applicable rules, laws, and regulations. In soliciting votes before the Petition Date, the Debtors properly relied on the applicable exemptions from the Securities Act.

F.    Mailing and Publication of Combined Notice.    On November 21, 2018, the Debtors caused to be mailed the *Notice of Commencement of Cases Under Chapter 11 of the Bankruptcy Code and Summary of Joint Prepackaged Chapter 11 Plan and Notice of Hearing to Consider (A) Adequacy of Disclosure Statement and Solicitation Procedures; (B) Confirmation of Plan of Reorganization; and (C) Related Materials* [Docket No. 105] (the "**Combined Notice**") to Creditors, holders of Interests and other parties in interest in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Scheduling Order and the Solicitation Procedures, on November 27, 2018, the Debtors caused to be emailed a notice to customers pursuant to the Bankruptcy Court's *Order (A) Authorizing the Debtors to Honor and Pay Prepetition Customer Obligations, (B) Authorizing Financial Institutions to Honor and Process Checks and Transfers Related to Such Obligations and (C) Approving Form and Manner of Notice to Customers* [Docket No. 92], and, on December 13, 2018, the Debtors

published a notice substantially similar to the Combined Notice in *USA Today*.  *See* Notice

Affidavits [Docket Nos. 151, 153 and 222].  The Debtors have given proper, adequate and

sufficient notice of the Combined Hearing and the deadlines for filing objections to the

Disclosure Statement and the Plan, as required by Bankruptcy Rule 3017(a) and (d), Local Rule

3017-1 and the Scheduling Order.  No other or further notice was or shall be required.

G.      <u>Tabulation Results</u>.    On December 28, 2018, the Debtors filed the Voting

Certification certifying the method and results of the Ballots tabulated for Class 4 (Prepetition

Term Loan Claims) and Class 5 (Unsecured Notes Claims).  As of the Voting Deadline, 100% in

amount and 100% in number of holders of Claims in Class 4 (Prepetition Term Loan Claims)

that voted on the Plan by the Voting Deadline and approximately 99.16% in amount and 96.72%

in number of holders Class 5 (Unsecured Notes Claims) that voted on the Plan by the Voting

Deadline voted to accept the Plan.  Accordingly, pursuant to section 1126 of the Bankruptcy

Code, the Bankruptcy Court finds that Class 4 (Prepetition Term Loan Claims) and Class 5

(Unsecured Notes Claims) each accepted the Plan.  All procedures used to tabulate the Ballots

were fair, reasonable and conducted in accordance with the applicable provisions of the

Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Scheduling Order and all other

applicable rules, laws and regulations.

H.      <u>Separate Chapter 11 Plan</u>.  The Plan is a separate chapter 11 plan for each of the

Debtors.  Except as otherwise expressly provided in this Order, any reference in the Plan or this

Order to the Effective Date, the Confirmation Date or the Confirmation Hearing, shall be

applicable to and have the meanings ascribed to them as it relates to each particular Debtor and

the Plan for such Debtor.  This Order shall be a separate Order with respect to each of the

Debtors in each Debtor's separate Chapter 11 Case.

I.      Plan Supplement.  The Debtors have filed the Plan Supplement, consisting of the following: (i) term sheet for Exit ABL Facility Credit Agreement, (ii) term sheet for Priority Exit Facility Credit Agreement, (iii) term sheet for Takeback Term Loan Credit Agreement, (iv) form of Amended Organizational Documents for DB Investors, Inc., (v) form of New Stockholders' Agreement, (vi) form of Warrant Agreement, (vii) list of Retained Causes of Action and (viii) information required to be disclosed under 1129(a)(5) of the Bankruptcy Code.  The filing and notice of such documents was good and proper under the circumstances and in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Scheduling Order and all other applicable rules, laws and regulations, and no other or further notice is or shall be required.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  The Debtors reserve the right to alter, amend, update or modify the Plan Supplement and any schedules, exhibits or amendments thereto, prior to the Effective Date in accordance with the terms of the Plan and the Restructuring Support Agreement and subject to the terms of this Order.

J.      Modifications of the Plan.  Pursuant to and in compliance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3018, the Debtors proposed certain modifications to the Plan as reflected herein or in modified or revised versions of the Plan and the Plan Supplement filed with the Bankruptcy Court before entry of this Order (collectively, the "**Plan Modifications**").  In accordance with Bankruptcy Rule 3019, the Plan Modifications do not (i) constitute material modifications of the Plan under section 1127 of the Bankruptcy Code, (ii) cause the Plan to fail to meet the requirements of sections 1122 or 1123 of the Bankruptcy Code, (iii) materially and adversely change the treatment of any Claims or Interests, (iv) require additional disclosure under section 1125 of the Bankruptcy Code, (v) require re-solicitation of

01:24025305.3

votes on the Plan from any holders of Claims or Interests, or (vi) require that any such holders be afforded an opportunity to change previously cast acceptances or rejections of the Plan. Under the circumstances, the form and manner of notice of the proposed Plan Modifications are adequate, and no other or further notice of the proposed Plan Modifications is necessary or required. In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims or Interests that voted to accept the Plan or that are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified by the Plan Modifications. No holder of a Claim or Interest that has voted to accept the Plan shall be permitted to change its acceptance to a rejection as a consequence of the Plan Modifications.

K.    <u>Bankruptcy Rule 3016</u>. In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtors as proponents of the Plan. The filing of the Disclosure Statement with the clerk of the Court satisfied Bankruptcy Rule 3016(b). The discharge, release, injunction and exculpation provisions of the Plan are set forth in bold, thereby complying with Bankruptcy Rule 3016(c).

## **Compliance with Requirements of Section 1129 of Bankruptcy Code**

L.    <u>Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. The Plan complies with the applicable provisions of the Bankruptcy Code and thereby satisfies section 1129(a)(1) of the Bankruptcy Code. More particularly:

1.    <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>. In addition to Administrative Expense Claims (Section 2.1 of the Plan), Professional Fee Claims (Section 2.2 of the Plan), fees and expenses of the Unsecured Notes Indenture Trustee (Section 2.3 of the Plan), Priority Tax Claims (Section 2.4 of the Plan), DIP ABL Facility Claims (Section 2.5 of the Plan), and DIP Term Loan Facility Claims (Section 2.6 of the Plan), Articles III and IV of the Plan classify nine Classes of Claims and Interests for each of the Debtors. The Claims or

Interests placed in each Class are substantially similar to the other Claims or Interests, as the case may be, in each such Class.   Valid business, factual and legal reasons exist for separately classifying the Classes of Claims or Interests under the Plan, and such Classes do not unfairly discriminate between holders of Claims or Interests.   Additionally, Administrative Expense Claims will be paid in full in accordance with the terms of the Plan.  The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

        2.      Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)).   Articles III and IV of the Plan specify that holders of Claims or Interests in Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 3 (Prepetition ABL Claims), Class 6 (General Unsecured Claims), Class 7 (Intercompany Claims) and Class 8 (Intercompany Interests) are Unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

        3.      Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). Articles III and IV of the Plan designate holders of Claims and Interests in Class 4 (Prepetition Term Loan Claims), Class 5 (Unsecured Notes Claims) and Class 9 (Parent Interests) (collectively, the "**Impaired Classes**") as impaired within the meaning of section 1124 of the Bankruptcy Code and specify the treatment of the Claims and Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

        4.      No Discrimination (11 U.S.C. § 1123(a)(4)).   The Plan provides for the same treatment for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

5.      <u>Implementation of Plan (11 U.S.C. § 1123(a)(5))</u>.  The Plan, including the documents and agreements set forth in the Plan Supplement, provides adequate and proper means for the implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code, including: (a) all corporate action set forth in Article V of the Plan; (b) the entry into the New Stockholders' Agreement and the Warrant Agreement; (c) the issuance of the New Common Stock and the Warrants; (d) the entry into the Exit Facility; and (e) provisions governing distributions under the Plan.

6.      <u>Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))</u>.  In a supplement to the Plan Supplement [Docket No. 267], the Debtors identified the known directors and officers who will serve in such capacity with respect to one or more of the Reorganized Debtors.  The Plan provisions governing the manner of selection of any officer, director or manager under the Plan are consistent with the interests of creditors and equity security holders and with public policy in accordance with section 1123(a)(7) of the Bankruptcy Code.

7.      <u>Impairment/Unimpairment of Classes of Claims or Interests (11 U.S.C. § 1123(b)(1))</u>.  As contemplated by section 1123(b)(1) of the Bankruptcy Code, and pursuant to section 1124 of the Bankruptcy Code, Articles III and IV of the Plan classify and describe the treatment for the Unimpaired Classes and the Impaired Classes.

8.      <u>Assumption and Rejection (11 U.S.C. § 1123(b)(2))</u>.  Article VIII of the Plan governing the assumption or rejection of executory contracts and unexpired leases satisfies the requirements of sections 365(b) and 1123(b)(2) of the Bankruptcy Code.

9.      <u>Retention of Causes of Action/Reservation of Rights (11 U.S.C. § 1123(b)(3))</u>.  Pursuant to Section 10.8 of the Plan and in compliance with section 1123(b)(3)(B) of the Bankruptcy Code, except as otherwise set forth in or released by the Plan,

the Plan preserves the Debtors' rights, claims, Causes of Action, rights of setoff or recoupment or other legal or equitable defenses that the Debtors had immediately prior to the Effective Date on behalf of the Estates or of themselves in accordance with any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including any affirmative Causes of Action against parties with a relationship with the Debtors, other than the Released Parties.

10.    <u>Modification of Rights (11 U.S.C. § 1123(b)(5))</u>.  The Plan modifies the rights of holders of Claims in Class 4 (Prepetition Term Loan Claims) and Class 5 (Unsecured Notes Claims) and Interests in Class 9 (Parent Interests), and leaves Unimpaired the rights of holders of Claims in Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 3 (Prepetition ABL Claims), Class 6 (General Unsecured Claims) and Class 7 (Intercompany Claims), and Interests in Class 8 (Intercompany Interests).

11.    <u>Additional Plan Provisions (11 U.S.C. § 1123(b)(6))</u>.  The provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code and applicable law, including (a) the release, discharge, injunction and exculpation provisions set forth in Article X of the Plan, and (b) the exemption, pursuant to section 1145 of the Bankruptcy Code, of the offer, issuance and distribution of the New Common Stock and the Warrants, which will be freely tradable by the recipients thereof, subject to (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, (ii) compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments, (iii) the restrictions, if any, on the transferability or ownership of the New Common Stock and the Warrants contained in the New Stockholders' Agreement and the

01:24025305.3

14

Warrant Agreement, respectively, and (iv) applicable regulatory approval, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

12.     <u>Debtors Are Not Individuals (11 U.S.C. § 1123(c))</u>.  The Debtors are not individuals and, accordingly, section 1123(c) of the Bankruptcy Code is inapplicable to the Chapter 11 Cases.

13.     <u>Cure of Defaults (11 U.S.C. § 1123(d))</u>.  Section 8.3 of the Plan provides for the payment of Cure Amounts and compliance with section 365(b)(1) of the Bankruptcy Code in connection with the assumption of each executory contract and unexpired lease assumed pursuant to the Plan.  The Debtors or the Reorganized Debtors, as applicable, have paid or will pay valid Cure Amounts in the ordinary course.

M.     <u>Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>.  The Debtors have complied with the applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court.  Specifically:

1.     Each of the Debtors is an eligible debtor under section 109 of the Bankruptcy Code; and

2.     The Debtors have complied with sections 1125 and 1126(b) of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Scheduling Order, applicable non-bankruptcy law, and all other applicable laws, rules and regulations in transmitting the Plan the Disclosure Statement, the Ballots and related documents and notices and in soliciting and tabulating the votes on the Plan.

N.     <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>.  The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  The Debtors' good faith is evident from the facts

and circumstances surrounding the commencement of the Chapter 11 Cases, the Disclosure Statement, and the record of the Combined Hearing.  The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Estates and to effectuate a successful reorganization of the Debtors.  The Plan and the documents necessary to effectuate the Plan were negotiated in good faith and at arm's length among the Debtors, the Restructuring Support Parties, the DIP Term Lenders, the DIP ABL Facility Agent, the Unsecured Notes Indenture Trustee, the Exit ABL Facility Agent and the Exit Facility Lenders.  Further, the Plan's classification, indemnification, exculpation, release and injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(6), 1123(b)(3)(A), 1129 and 1142 of the Bankruptcy Code, and are each integral to the Plan, supported by valuable consideration and necessary for the Debtors' successful reorganization.

O.    <u>Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>.  Any payment made or to be made by the Debtors for services or for costs and expenses in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, is subject to the approval of the Bankruptcy Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

P.    <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>.  The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code.  Except as set forth in the Plan, provisions regarding members of the New Board shall be as set forth in the Amended Organizational Documents.  The appointment to, or continuance in, such offices of such persons is consistent with the interests of holders of Claims against or Interests in the Debtors and with public policy.  To the extent known, the identity of any insider that will be employed or retained

by the Reorganized Debtors and the nature of such insider's compensation have also been fully disclosed.

Q.      No Rate Changes (11 U.S.C. § 1129(a)(6)).   The Plan does not provide for any changes in any regulated rates by any of the Reorganized Debtors.   Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in the Chapter 11 Cases.

R.      Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).   The Plan satisfies section 1129(a)(7) of the Bankruptcy Code.   The liquidation analysis included in the Disclosure Statement (i) is reasonable, persuasive and credible, (ii) utilizes reasonable and appropriate methodologies and assumptions; (iii) has not been controverted by other evidence and (iv) establishes that each holder of an Impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

S.      Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).   Holders of Claims or Interests in Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 3 (Prepetition ABL Claims), Class 6 (General Unsecured Claims), Class 7 (Intercompany Claims), and Class 8 (Intercompany Interests) are not Impaired under the Plan and are, therefore, conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.   Class 4 (Prepetition Term Loan Claims) and Class 5 (Unsecured Notes Claims) have voted to accept the Plan in accordance with sections 1126(b) and (c) of the Bankruptcy Code. Holders of Interests in Class 9 (Parent Interests) will not receive or retain any property on account of their Interests under the Plan and, as such, Class 9 (Parent Interests) is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.   Pursuant to section

1129(b)(1) of the Bankruptcy Code, the Plan may be confirmed notwithstanding that holders of Interests in Class 9 (Parent Interests) are Impaired and are deemed to have rejected the Plan.

T. <u>Treatment of Administrative Expense Claims, Professional Fee Claims, Fees and Expenses of the Unsecured Notes Indenture Trustee, and Priority Tax Claims (11 U.S.C. § 1129(a)(9))</u>. The treatment of Allowed Administrative Expense Claims, Professional Fee Claims, fees and expenses of the Unsecured Notes Indenture Trustee, DIP ABL Facility Claims and DIP Term Loan Facility Claims pursuant to Sections 2.1, 2.2, 2.3, 2.4, 2.5 and 2.6 of the Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code. The treatment of Allowed Priority Non-Tax Claims pursuant to Section 4.1 of the Plan satisfies the requirements of section 1129(a)(9)(B) of the Bankruptcy Code. The treatment of Allowed Priority Tax Claims pursuant to Section 2.4 of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

U. <u>Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10))</u>. Class 4 (Prepetition Term Loan Claims) and Class 5 (Unsecured Notes Claims) are Impaired and voted to accept the Plan by the requisite majorities, determined without including any acceptance of the Plan by any insider, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

V. <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>. The information in the Disclosure Statement and the Goldstein Confirmation Declaration (i) is persuasive and credible, (ii) has not been controverted by other evidence and (iii) together with the evidence presented at the Combined Hearing, establishes that the Plan is feasible and that there is a reasonable prospect of the Reorganized Debtors being able to meet their financial obligations under the Plan and their business in the ordinary course, that the incurrence of the obligations contemplated by the Plan will not result in the insolvency of the Debtors, and that confirmation of the Plan is not likely to

01:24025305.3

be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtors, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

      W.    <u>Payment of Statutory Fees (11 U.S.C. § 1129(a)(12))</u>.  All fees payable under section 1930 of chapter 123 of title 28 of the United States Code, together with interest, if any, pursuant to § 3717 of title 31 of the United States Code for each Debtor's case, or until such time as a final decree is entered closing a particular Debtor's case, a Final Order converting such Debtor's case to a case under chapter 7 of the Bankruptcy Code is entered, or a Final Order dismissing such Debtor's case is entered, have been or will be paid on or before the Effective Date pursuant to Section 12.1 of the Plan, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

      X.    <u>Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>.  Section 5.12 of the Plan provides that on the Effective Date, and subject to the limitations set forth in Section 5.12(c) of the Plan, the Reorganized Debtors shall be deemed to have assumed all employee compensation plans, Benefit Plans, employment agreements, offer letters, or award letters to which any Debtor is a party (collectively, the "**Employee Arrangements**").  Accordingly, the Plan satisfies section 1129(a)(13) of the Bankruptcy Code.

      Y.    <u>No Domestic Support Obligations (11 U.S.C. § 1129(a)(14))</u>.  The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation.  Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

      Z.    <u>Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15))</u>.  The Debtors are not individuals, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

AA.    No Applicable Non-Bankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16)).    The Debtors are each a moneyed, business or commercial corporation, and accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

BB.    No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).    Class 9 (Parent Interests) is deemed to have rejected the Plan.    Based upon the evidence proffered, adduced and presented by the Debtors at the Combined Hearing, the Plan does not discriminate unfairly and is fair and equitable with respect to Class 9 (Parent Interests), as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code.    Thus, the Plan may be confirmed notwithstanding the deemed rejection of the Plan by Class 9 (Parent Interests).

CC.    Only One Plan (11 U.S.C. § 1129(c)).    The Plan is the only plan filed in each of the Chapter 11 Cases, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

DD.    Principal Purpose of Plan (11 U.S.C. § 1129(d)).    The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act, and no governmental entity has objected to the confirmation of the Plan on any such grounds.    The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

EE.    Good Faith Solicitation and Participation (11 U.S.C. § 1125(e)).    Based on the record before the Bankruptcy Court, including evidence presented at the Combined Hearing, the Debtors and their respective affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors and attorneys (i) have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Scheduling Order and any

01:24025305.3

applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code and (ii) shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan (including the New Common Stock (including the Supplemental Securities) and Warrants), and therefore are not, and on account of such offer, issuance and solicitation will not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of securities under the Plan (including the New Common Stock (including the Supplemental Securities) and Warrants), and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code, Section 10.9 of the Plan, and the exculpation provisions set forth in Section 10.7 of the Plan.

FF.    _Satisfaction of Confirmation Requirements_.  Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

GG.    _Likelihood of Satisfaction of Conditions Precedent to the Effective Date_.  Each of the conditions precedent to the Effective Date, as set forth in the Plan, has been or is reasonably likely to be satisfied or waived in accordance with the Plan.

HH.    _Implementation_.  All documents and agreements necessary to implement the Plan (the "**Plan Documents and Agreements**"), including the documents contained in and contemplated by the Plan Supplement, the Definitive Documents and the Exit Facility Documents (the material terms of which were filed as part of the Plan Supplement), are essential elements of the Plan, and entry into each such Plan Document and Agreement is in the best interests of the Debtors, the Estates and holders of Claims and Interests, and the Debtors are

01:24025305.3

hereby authorized to execute such Plan Documents and Agreements, and take all such further actions as are necessary to implement such Plan Documents and Agreements, including the payment of all fees, expenses and other payments (including the Backstop Payment) in accordance with the terms thereof.  The Debtors have exercised reasonable business judgment in determining to enter into the Plan Documents and Agreements, and all such Plan Documents and Agreements, including the fees, expenses and other payments set forth therein (including the Backstop Payment), have been negotiated in good faith and at arm's-length, are supported by reasonably equivalent value and fair consideration, and shall, upon completion of documentation and execution, be valid, binding and enforceable agreements.

II.    Disclosure of Facts.  The Debtors have disclosed all material facts regarding the Plan, including with respect to consummation of the Exit Facility Documents, the Amended Organizational Documents, the New Stockholders' Agreement, and the Warrant Agreement, and the fact that each applicable Debtor will emerge from its chapter 11 case as a validly existing limited liability company, partnership, or other form, as applicable, with separate assets, liabilities, and obligations.

JJ.    Executory Contracts and Unexpired Leases.    The Debtors have exercised reasonable business judgment in determining whether to assume, assume and assign, or reject executory contracts and unexpired leases pursuant to Article VIII of the Plan.  Each assumption or assumption and assignment of an executory contract or unexpired lease pursuant to Article VIII of the Plan shall be legal, valid and binding upon the Debtors or the Reorganized Debtors and their successors and assigns and all non-Debtor parties and their successors and assigns to such executory contract or unexpired lease, all to the same extent as if such assumption or assumption and assignment were effectuated pursuant to an order of the Bankruptcy Court under

01:24025305.3

section 365 of the Bankruptcy Code entered before entry of this Order.  Moreover, the Debtors or the Reorganized Debtors, as applicable, have cured, or provided adequate assurance that the Debtors or the Reorganized Debtors or their successors and assigns, as applicable, will cure, defaults (if any) under or relating to each of the executory contracts and unexpired leases that are being assumed by the Debtors pursuant to the Plan.

      KK.   <u>Injunction, Exculpation, and Releases</u>.

      (a)   The Bankruptcy Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code and authority under section 105 of the Bankruptcy Code to approve the injunctions or stays, injunction against interference with the Plan, releases and exculpation set forth in in the Plan, including in Sections 10.5, 10.6 and 10.7 of the Plan, respectively.  As has been established based upon the evidence presented at the Combined Hearing, such provisions (i) were given in exchange for good and valuable consideration, (ii) were integral to the agreements among the various parties in interest and are essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (iii) confer substantial benefits on the Estates, (iv) are fair, equitable and reasonable, and (v) are in the best interests of the Debtors, the Estates and parties in interest.  Further, the failure to implement the injunctions, exculpation and releases would impair the Debtors' ability to confirm and implement the Plan.  Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the injunctions, releases and exculpation set forth in the Plan and implemented by this Order are fair, equitable, reasonable and in the best interests of the Debtors, the Reorganized Debtors and the Estates and their creditors, and are supported by adequate consideration.

(b)       The releases granted by the Debtors and the Estates under Section 10.6(a) of the Plan represent a valid exercise of the Debtors' business judgment.  The Released Parties provided good and valuable consideration in exchange for the releases – including services, substantial funding (including the financings provided pursuant to the DIP Orders and the Exit Facility Documents) and the consensual reduction or waiver of significant claims, as the case may be – and otherwise facilitated the reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan.

(c)       The releases contained in Section 10.6(b) of the Plan are consensual because they are provided by (i) holders of Impaired Claims or Interests (A) who voted to accept the Plan, (B) whose vote to accept or reject the Plan was solicited but did not vote either to accept or reject the Plan and did not opt out of granting the releases in the Plan or (C) who voted to reject the Plan but did not opt out of granting the releases in the Plan, (ii) holders of Unimpaired Claims or Interests, presumed to accept the Plan, that did not timely object to the releases contained in the Plan, and (iii) the DIP ABL Facility Agent, the DIP ABL Secured Parties, the DIP Term Loan Facility Agent, the DIP Term Loan Secured Parties, the Supporting Term Lenders, the Crossover Holder, the Supporting Noteholders, the Supporting Sponsors, the Unsecured Notes Indenture Trustee, the Exit ABL Facility Agent, the Priority Facility Agent, the Exit Facility Lenders, the Takeback Term Loan Agent, the Prepetition ABL Secured Parties, and the Prepetition Term Loan Secured Parties.  Based on the foregoing, the releases given by non-Debtors satisfy the applicable standards contained in *In re Indianapolis Downs*, 486 B.R. 286, 303 (Bankr. D. Del. 2013).  For the avoidance of doubt, Jenny Yoo Collections, Inc. will not be deemed to have granted the releases set forth in Section 10.6(b) of the Plan and shall not be one of the Releasing Parties.

(d)       The exculpations granted under the Plan are reasonable in scope as the exculpation provision does not relieve any party of liability for an act or omission to the extent such act or omission is determined by Final Order to constitute willful misconduct, gross negligence or intentional fraud.

(e)       The record of the Combined Hearing is sufficient to support the injunctions, releases and exculpation provided for in the Plan, including Sections 10.5, 10.6 and 10.7 of the Plan.  Accordingly, based upon the representations of the parties and the evidence proffered, adduced or presented at the Combined Hearing, the injunctions, exculpation and releases set forth in Article X of the Plan are consistent with the Bankruptcy Code and applicable law.

LL.    Good Faith.  The Debtors and the Released Parties have been and will be acting in good faith if they proceed to (i) consummate the Plan and the agreements, settlements, transactions and transfers contemplated thereby and (ii) take the actions authorized by this Order to reorganize the Debtors' business and effect the Exit Facility Documents, the Amended Organizational Documents, the New Stockholders' Agreement, the Warrant Agreement, and the other restructuring transactions.

MM.    Unsecured Notes Indenture Trustee.  Based upon a review of the record, the Unsecured Notes Indenture Trustee diligently and in good faith, discharged its duties and obligations pursuant to the Unsecured Notes Indenture and otherwise conducted itself with respect to all matters in any way related to the claims of the Unsecured Noteholders with the same degree of care and skill that a prudent person would exercise or use under the circumstances in the conduct of his or her own affairs.

01:24025305.3

NN.    <u>Exit Facility</u>.  The Exit Facility is the best financing available to the Debtors following a competitive marketing and solicitation process commenced by the Debtors' investment banker, on behalf of the Debtors, to identify potential providers of fully-committed exit financing.  The availability of the Exit Facility is necessary to the consummation of the Plan and the operation of the Reorganized Debtors, and constitutes reasonably equivalent value and fair consideration.  The Exit Facility is supported by reasonably equivalent value and fair consideration and is in the best interests of the Debtors, the Reorganized Debtors, the Estates and their creditors.  The financial accommodations to be extended pursuant to the Exit Facility Documents are being extended in good faith, for legitimate business purposes, are reasonable, and shall not be subject to recharacterization for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any other applicable non-bankruptcy law.  The Exit Facility has been negotiated in good faith and at arm's length among the Debtors and lenders thereto, and any credit extended and loans made to the Reorganized Debtors pursuant to the Exit Facility, as applicable, and any fees paid thereunder are deemed to have been extended, issued, and made in good faith.

OO.    <u>Amended Organizational Documents</u>.  The Amended Organizational Documents are necessary to the consummation of the Plan and the operation of the Reorganized Debtors.  The Amended Organizational Documents are supported by reasonably equivalent value and fair consideration and are in the best interests of the Debtors, the Reorganized Debtors, the Estates and their creditors.  The Amended Organizational Documents are the result of good faith, arm's length negotiations among the Debtors, the Supporting Term Lenders, the Crossover Holder and the Supporting Noteholders, are appropriate and consistent with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, including sections 1123, 1129, and 1142 of the

01:24025305.3

Bankruptcy Code, and are necessary to the Debtors' successful emergence from chapter 11. The execution, delivery or performance by the Debtors or the Reorganized Debtors, as the case may be, of any documents in connection with the Amended Organizational Documents and compliance by the Debtors or the Reorganized Debtors, as the case may be, with the terms thereof is authorized by, this Order.

PP.    <u>New Stockholders' Agreement and Warrant Agreement</u>.  The New Stockholders' Agreement and the Warrant Agreement, as applicable, are essential elements of the Plan.  The Debtors have exercised sound business judgment in deciding to negotiate the New Stockholders' Agreement and the Warrant Agreement.  They were negotiated at arm's length and in good faith and without intent to hinder, delay or defraud any creditor of the Debtors, are supported by reasonably equivalent value and fair consideration, and are in the best interests of the Debtors, the Reorganized Debtors, the Estates and creditors.  The issuance of the New Common Stock and the Warrants by the Reorganized Debtors and the execution, delivery or performance by the Debtors or the Reorganized Debtors, as the case may be, of the New Stockholders' Agreement and the Warrant Agreement and any other documents in connection with the New Common Stock and the Warrants and compliance by the Debtors or the Reorganized Debtors, as the case may be, with the terms thereof is authorized by this Order.  The financial accommodations to be extended pursuant to the New Stockholders' Agreement and all related documents (the "**New Common Stock Documents**") and the Warrant Agreement and all related documents (the "**Warrant Documents**") are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes and are reasonable.

QQ.    <u>Exemption from Securities Laws</u>.  The offer, issuance and distribution of  the New Common Stock (including the Supplemental Securities) and the Warrants to holders of

Prepetition Term Loan Claims and Unsecured Notes Claims, as applicable, under Sections 4.4(c) and 4.5(c), respectively, of the Plan shall be exempt, pursuant to section 1145 of the Bankruptcy Code, without further act or action by any Entity, from registration under (i) the Securities Act and all rules and regulations promulgated thereunder, and (ii) any state or local law requiring registration for the offer, issuance, or distribution of securities. The New Common Stock and the Warrants shall be freely tradable by the recipients thereof, subject to (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, (ii) compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments, (iii) the restrictions, if any, on the transferability of the New Common Stock contained in the New Stockholders' Agreement, (iv) the restrictions, if any, on the transferability of the Warrants contained in the Warrant Agreement and (v) applicable regulatory approval. All securities described above were (or are designated to be) offered, issued and distributed pursuant to the Plan.

RR. <u>Conditions Precedent to Confirmation and Effective Date</u>. The conditions precedent to the confirmation of the Plan and the Effective Date, set forth in Section 9.1 and 9.2, respectively, of the Plan may be waived in writing by the Debtors with the prior written consent of the Required Supporting Term Lenders, the Crossover Holder, the Exit ABL Facility Agent (solely with respect to conditions related to the effectiveness of the Exit ABL Facility), the Priority Exit Facility Agent (solely with respect to conditions related to the effectiveness of the Priority Exit Facility) and the Takeback Term Loan Agent (solely with respect to conditions related to the effectiveness of the Takeback Term Loan) without leave of or order of the Bankruptcy Court; *provided, however,* that the condition in Section 9.2(e) of the Plan may be

waived with respect to a particular Definitive Document only to the extent that every party that maintains a consent right over the subject Definitive Document as set forth in the Restructuring Support Agreement agrees to waive such condition with respect to the subject Definitive Document.

SS.    <u>Retention of Jurisdiction</u>.  Upon the Effective Date, subject to applicable law, the Bankruptcy Court may retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases as set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code; *provided* that, on and after the Effective Date and after the consummation of the following agreements or documents, the Bankruptcy Court shall not retain jurisdiction over matters arising out of or related to each of the Exit Facility Documents, the Amended Organizational Documents, the New Stockholders' Agreement and the Warrant Agreement, and the Exit Facility Documents, the Amended Organizational Documents, the New Stockholders' Agreement and the Warrant Agreement shall be governed by the respective jurisdictional provisions therein.

TT.    <u>Waiver of Stay</u>.  Given the facts and circumstances of the Chapter 11 Cases, it is appropriate that this Order shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(g), 6006(d) or 7062, and this Order shall take effect immediately upon its entry.

## **<u>ORDER</u>**

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

1.    <u>Findings of Fact and Conclusions of Law</u>.  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be deemed so, and vice versa.

01:24025305.3

2.     <u>Combined Notice</u>.  The Combined Notice complied with the terms of the Scheduling Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code; the Bankruptcy Rules, the Local Rules and applicable non-bankruptcy law.

3.     <u>Solicitation</u>.  The solicitation of votes on the Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Scheduling Order and applicable non-bankruptcy law.

4.     <u>Ballots</u>.  The forms of Ballots annexed to the *Debtors' Motion for Entry of an Order (A) Scheduling Combined Hearing to Consider (i) Approval of Disclosure Statement, (ii) Approval of Solicitation Procedures and Forms of Ballots, (iii) Confirmation of Prepackaged Plan; (B)  Establishing an Objection Deadline to Object to Disclosure Statement and Plan; (C) Approving the Form and Manner of Notice of Combined Hearing, Objection Deadline, and Notice of Commencement; (D) Approving Notice and Objection Procedures for the Assumption of Executory Contracts and Unexpired Leases; (E) Extending Time, and Upon Plan Confirmation, Waiving Requirements to (i) Convene Section 341 Meeting, and (ii) File Statements of Financial Affairs and Schedules of Assets and Liabilities; and (F) Granting Related Relief* [Docket No. 11] (the "**Scheduling Motion**") are adequate and appropriate, are in compliance with Bankruptcy Rule 3018(c), substantially conform to Official Form B314, and are approved in all respects.

5.     <u>Tabulation Procedures</u>.  The procedures used for tabulations of votes to accept or reject the Plan as set forth in the Disclosure Statement, the Solicitation Procedures, the Voting Certification, and the Ballots are approved.

01:24025305.3

6.    <u>Plan Modifications and Amendments</u>.  The Plan Modifications constitute technical changes and do not materially and adversely affect or change the treatment of any Claims or Interests.  Accordingly, the Plan Modifications do not require additional disclosure or re-solicitation of votes under sections 1125, 1126 or 1127 of the Bankruptcy Code or Bankruptcy Rule 3019, nor do they require that holders of Class 4 Claims (Prepetition Term Loan Claims) and Class 5 Claims (Unsecured Notes Claims) be afforded an opportunity to change previously cast acceptances or rejections of the Plan.  Holders of Class 4 Claims (Prepetition Term Loan Claims) and Class 5 Claims (Unsecured Notes Claims) that voted to accept the solicitation version of the Plan are deemed to accept the Plan as modified.

7.    <u>Solicitation of Disclosure Statement</u>.  The    Disclosure    Statement    is approved in all respects.  The Disclosure Statement (a) contains adequate information of a kind that is consistent with the disclosure requirements of applicable non-bankruptcy law, including the Securities Act, (b) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan and the transactions contemplated therein, and (c) is approved in all respects.  To the extent that the Solicitation was deemed to constitute an offer of new securities, the Solicitation is exempt from registration pursuant to section 4(a)(2) and Regulation D of the Securities Act.  Specifically, section 4(a)(2) of the Securities Act provides an exemption from the registration requirements under the Securities Act for transactions not involving a "public offering."  15 U.S.C. § 77d(a)(2).  The Debtors have complied with the requirements of section 4(a)(2) of the Securities Act and the prepetition solicitation of acceptances would constitute a private offer of securities.  The solicitation to creditors was made only to those holders of Class 4 (Prepetition Term Loan Claims) and Class 5 Claims (Unsecured Notes Claims) that are "Accredited

Investors" (within the meaning of rule 501(a) of Regulation D of the Securities Act), as creditors were required to certify on their Ballots that they belonged to such category. Therefore, the Debtors have satisfied the requirements of section 1126(b)(1) of the Bankruptcy Code with respect to the prepetition Solicitation.

8.    <u>Confirmation of Plan</u>.  The Plan is hereby CONFIRMED under section 1129 of the Bankruptcy Code.  The documents contained in or contemplated by the Plan, including the Plan Supplement and the Definitive Documents, are hereby authorized.

9.    <u>Objections</u>.  All parties have had a full and fair opportunity to litigate all issues raised by objections to the Solicitation Procedures, the Disclosure Statement and confirmation of the Plan.  All objections, statements, informal objections and other responses or reservations of rights, if any, related to the Solicitation Procedures, notice of the Combined Hearing or the deadline for objecting thereto, the Disclosure Statement, the Ballots, and to confirmation of the Plan, and other responses or reservation of rights with respect to confirmation of the Plan (a) have been withdrawn, waived, or otherwise resolved by the Debtors prior to entry of this Order, or (b) to the extent that any objections (including any reservations of rights contained therein), statements, informal objections and other responses or reservations of rights, if any, related to the Solicitation Procedures, notice of the Combined Hearing, the Disclosure Statement, the Ballots and to confirmation of the Plan have not been withdrawn prior to entry of this Order, such objections, statements, informal objections and other responses or reservations of rights, if any, shall be, and hereby are, overruled on the merits.

10.    <u>Binding Effect</u>.  Upon the occurrence of the Effective Date, the terms of the Plan are immediately effective and enforceable and deemed binding on the Debtors, the Reorganized Debtors, and any and all holders of Claims or Interests (regardless of whether such

holders of Claims or Interests have, or are deemed to have, accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.   The Plan and this Confirmation Order shall be binding against and binding upon any Chapter 7 or Chapter 11 trustee appointed in any of the Chapter 11 Cases.

   11. <u>Free and Clear</u>.  On the Effective Date, pursuant to sections 1141(b) and 1141(c) of the Bankruptcy Code, all property of the Estates shall vest in the Reorganized Debtors free and clear of all Claims, Liens, encumbrances, charges and other interests, except as provided pursuant to the Plan, this Order and the Exit Facility Documents.   On and after the Effective Date, the Reorganized Debtors may operate their business, use, acquire, sell, lease and dispose of property, and enter into transactions, agreements, understandings or arrangements, whether in or other than in the ordinary course of business, and execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers or otherwise in connection with any of the foregoing, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as expressly provided in this Order or the Plan.  Without limiting the foregoing, the Reorganized Debtors may pay the charges that they incur on or after the Effective Date for professional fees, disbursements, expenses or related support services without application to the Bankruptcy Court.

   12. <u>Implementation of Plan</u>.  The Debtors' entry into the Plan Documents and Agreements is hereby authorized.  The Plan Documents and Agreements and all other relevant and necessary documents have been negotiated in good faith and at arm's length, are in the best

interests of the Debtors, the Reorganized Debtors, the Estates and their Creditors, and shall, upon completion of documentation and execution, be valid, binding, and enforceable documents and agreements.  The Debtors and Reorganized Debtors, as applicable, are authorized to take any action as may be or become necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including (i) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, financing, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may determine, (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan and having other terms to which the applicable parties agree, (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion or dissolution and the Amended Organizational Documents pursuant to applicable state law, (iv) the issuance of securities (including the New Common Stock (including the Supplemental Securities) and the Warrants), all of which shall be authorized and approved in all respects in each case without further action being required under applicable law, regulation, order or rule, and (v) all other actions that the applicable Entity determines to be necessary or appropriate, including making filings or recordings that may be required by applicable law, subject, in each case, to the Amended Organizational Documents.  Each officer, member of the board of directors, or manager of the Debtors and the Reorganized Debtors, as applicable, is and shall be authorized to issue, execute, deliver, file or record such contracts, securities, instruments, releases, indentures and other agreements or documents and take such actions as

may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan (including the New Common Stock (including the Supplemental Securities) and the Warrants) in the name of and on behalf of the Reorganized Debtors, all of which shall be authorized and approved in all respects, in each case, without the need for any approvals, authorization, consents or any further action required under applicable law, regulation, order, or rule (including any action by the stockholders or directors or managers of the Debtors or the Reorganized Debtors) except for those expressly required pursuant to the Plan.  All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, including the transactions described in Sections 5.1 and 5.10 of the Plan, to the extent applicable, or any corporate, limited liability company, or related action required by the Debtors or the Reorganized Debtors in connection herewith shall be deemed to have occurred and shall be in effect, without any requirement of further action by the stockholders, members or directors or managers of the Debtors or the Reorganized Debtors, and with like effect as though such action had been taken unanimously by the stockholders, members, directors, managers or officers, as applicable, of the Debtors or the Reorganized Debtors.

13.    <u>Restructuring Transactions</u>.

(a)    The Debtors or Reorganized Debtors, as applicable, are authorized to enter into and effectuate the Restructuring Transactions, including the entry into and consummation of the transactions contemplated by the Exit Facility Documents, the Amended Organizational Documents, the New Stockholders' Agreement, and the Warrant Agreement and may take any actions as may be necessary or appropriate to effect a corporate restructuring of their respective business or a corporate restructuring of the overall corporate structure of the Reorganized

Debtors, as and to the extent provided in the Plan, provided that, subject to Paragraph 29 of this Order, this Paragraph 13 and Paragraph 12 of this Order do not authorize the Debtors to violate the terms of any executory contract or unexpired lease assumed pursuant to the Plan.  Any transfers of assets or equity interests effected or any obligations incurred through the Restructuring Transactions are hereby approved and shall not constitute fraudulent conveyances or fraudulent transfers or otherwise be subject to avoidance.  Except as otherwise provided in the Plan, each Reorganized Debtor, as applicable, shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, under the applicable law in the jurisdiction in which such applicable Debtor is incorporated or formed.

(b)     In addition to, or instead of, the Restructuring Transactions, the Debtors or the Reorganized Debtors, subject to the respective consent rights of the applicable Restructuring Support Parties as set forth in the Restructuring Support Agreement prior to its termination hereunder, may cause any of the Debtors or the Reorganized Debtors to engage in additional corporate restructuring transactions necessary or appropriate for the purposes of implementing the Plan, including converting corporate entities into limited liability companies, forming new entities within the corporate organizational structure of the Debtors or Reorganized Debtors, cancelling the existing equity at another of the Debtor entities and issuing new equity therefrom, consolidating, reorganizing, restructuring, merging, dissolving, liquidating or transferring assets between or among the Debtors and the Reorganized Debtors.  The actions to effect these transactions may include (a) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, reorganization, transfer, disposition,

01:24025305.3

conversion, liquidation, or dissolution containing terms that are consistent with the terms of the Plan and such other terms to which the applicable Persons may agree; (b) on terms consistent with the terms of the Plan and having such other terms to which the applicable Persons may agree, the execution and delivery of appropriate instruments of transfer, conversion, assignment, assumption, or delegation of any asset, property, right, liability, duty, or obligation; (c) pursuant to applicable state law, the filing of appropriate certificates of articles of merger, consolidation, conversion, dissolution, or change in corporate form; and (d) the taking of all other actions that the applicable Persons determine to be necessary or appropriate, including (i) making filings or recordings that may be required by applicable state law in connection with such transactions and (ii) any appropriate positions on one or more tax returns.  For the avoidance of doubt, subject to Paragraph 29 of this Order, this Paragraph 13 and Paragraph 12 of this Order do not authorize the Debtors to violate the terms of any executory contract or unexpired lease assumed pursuant to the Plan.

14.     <u>Amended Organizational Documents</u>.  The Debtors and the Reorganized Debtors, as applicable, are authorized, without further approval of the Bankruptcy Court or any other party, to execute and deliver all agreements, documents, instruments and certificates relating to the Amended Organizational Documents and to take such other actions as reasonably deemed necessary to perform their obligations thereunder.

15.     <u>New Stockholders' Agreement and the Warrant Agreement</u>.  The Debtors and the Reorganized Debtors, as applicable, are authorized, without further approval of the Bankruptcy Court or any other party, to execute and deliver the New Stockholders' Documents and the Warrant Documents and to take such other actions as reasonably deemed necessary to perform their obligations thereunder.  On the Effective Date, Reorganized DB Investors, Inc. and

01:24025305.3

all of the holders of the New Common Stock shall be deemed to be parties to the New Stockholders' Agreement, as a condition to such holders' receipt of the New Common Stock pursuant to the Plan, without the need for execution by any such holder.  Each of the Supporting Term Lenders, the Crossover Holder and the Supporting Noteholders entitled to receive the New Common Stock under the Plan shall be required to execute the New Stockholders' Agreement and to provide such other documents as may be reasonably requested by the Debtors or Reorganized Debtors, as applicable, as a condition to receipt of such New Common Stock.  The New Stockholders' Agreement and the Warrant Agreement shall be binding on the Reorganized Debtors and all parties receiving, and all holders of, New Common Stock and the Warrants, as applicable; provided, that, regardless of whether such parties execute the New Stockholders' Agreement, such parties will be deemed to have signed the New Stockholders' Agreement, which shall be as binding on such parties as if they had actually signed it.

16. <u>Designation of Managers/Directors and Officers Approved</u>.  On the Effective Date, the initial board of managers/directors of the Reorganized Debtors shall be consistent with the terms of the Plan and the terms of the applicable Amended Organizational Documents of such Reorganized Debtors.  Such appointment and designation is hereby approved and ratified as being in the best interests of the Debtors and creditors and consistent with public policy, and such directors hereby are deemed elected and appointed to serve in their respective capacities as of the Effective Date without further action of the Bankruptcy Court, the Reorganized Debtors or their security holders.

17. <u>Authorization to Consummate</u>.  The Debtors are authorized to consummate the Plan after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in the Plan.

01:24025305.3

18.    <u>Exit Facility</u>.

(a)    On the Effective Date, the Reorganized Debtors shall be authorized to execute and deliver, as applicable, the Exit Facility Documents and all related documents, and pay any and all applicable fees, expenses and other payments, including the Backstop Payment, due in connection with the Exit Facility Documents and all related documents.   All such documents shall become effective in accordance with their terms and the Plan.

(b)    Upon their execution, the Exit Facility Documents shall constitute legal, valid, binding and authorized debt obligations of each of the Reorganized Debtors, and the Exit Facility Documents shall be enforceable in accordance with their terms.   The financial accommodations to be extended pursuant to the Exit Facility Documents are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, shall not be subject to challenge, avoidance, recharacterization or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law.

(c)    On the Effective Date, all of the Liens, mortgages, deeds of trust, pledges and other security interests to be granted in accordance with the Exit Facility Documents (i) shall be deemed to be approved and granted in good faith, for good and valuable consideration, for reasonably equivalent value, and for legitimate business purposes as an inducement to lenders to extend credit thereunder and are reasonable, (ii) shall be valid, legal, binding and enforceable Liens on, and security interests in, the collateral granted under and in accordance with the terms of the respective Exit Facility Documents, (iii) shall be deemed fully perfected on the Effective Date, and the priorities of such Liens, mortgages, deeds of trust, and other security interests shall

be as set forth in the respective Exit Facility Documents and (iv) shall not be subject to avoidance, recharacterization or subordination (whether equitable, contractual or otherwise) or any other challenge for any purposes whatsoever under the Bankruptcy Code or any applicable non-bankruptcy law and shall not constitute preferential transfers, fraudulent conveyances or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law.  The Reorganized Debtors and the secured parties (and their designees and agents (including the Priority Exit Facility Agent, the Exit ABL Facility Agent, and the Takeback Term Loan Agent)) under such Exit Facility Documents are hereby authorized to make all filings and recordings, and to obtain all governmental approvals and consents to evidence, establish, continue and perfect all such Liens, mortgages, deeds of trust and other security interests under the provisions of the applicable state, provincial, federal or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and this Order (it being understood that perfection of the liens and security interests granted under the Exit Facility Documents shall occur automatically on the Effective Date by virtue of the entry of this Order, and any such filings, recordings, approvals and consents shall not be necessary or required), and the Reorganized Debtors shall thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens, mortgages, deeds of trust and other security interests to third parties.

19.   <u>Compromise of Controversies</u>.   Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, the compromise and settlement of all Claims and controversies resolved under the Plan, as set forth in Article V of the Plan, is hereby approved in all respects as fair and equitable and in the best interests of the Debtors and the Estates.

20.    <u>Sources of Consideration for Plan Distributions</u>.    All consideration necessary for the Reorganized Debtors to make payments pursuant to the Plan shall be obtained from existing Cash balances of the Debtors and the proceeds of the Exit Facility.

21.    <u>Issuance of New Common Stock and the Warrants</u>.    On the Effective Date, the Debtors or the Reorganized Debtors, as applicable, are authorized to issue or cause to be issued and shall issue the New Common Stock (including the Supplemental Securities) and the Warrants in accordance with the terms of the Plan, the Amended Organizational Documents, the New Stockholders' Agreement and the Warrant Agreement, without the need for any further corporate, limited liability company or shareholder action.    All of the New Common Stock and the Warrants issuable under the Plan, when so issued, shall be duly authorized, validly issued, fully paid and non-assessable.

22.    <u>Compliance with Section 1123(a)(6) of Bankruptcy Code</u>.    The adoption and filing by each of the Reorganized Debtors of an amended certificate of incorporation, substantially in the form included in the Plan Supplement, is hereby authorized, ratified and approved.    The Debtors have complied in all respects, to the extent necessary, with section 1123(a)(6) of the Bankruptcy Code.

23.    <u>Exemption from Securities Laws</u>.    The offer, issuance and distribution of the New Common Stock and the Warrants to holders of the Prepetition Term Loan Claims or the Unsecured Notes Claims, as applicable, under Sections 4.4 and 4.5, respectively, of the Plan shall be exempt, pursuant to section 1145 of the Bankruptcy Code, without further act or action by any Entity, from registration under (i) the Securities Act and all rules and regulations promulgated thereunder and (ii) any state or local law requiring registration for the offer, issuance, or distribution of securities.    The New Common Stock and the Warrants will be freely

tradable by the recipients thereof, subject to (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, (ii) compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments, (iii) the restrictions, if any, on the transferability or ownership of the New Common Stock contained in the New Stockholders' Agreement, (iv) the restrictions, if any, on the transferability or ownership of the Warrants contained in the Warrant Agreement; and (v) applicable regulatory approval. All securities described above were (or are designated to be) offered, issued and distributed pursuant to the Plan. Notwithstanding anything to the contrary in the Plan, any entity (including, for the avoidance of doubt, DTC) may rely upon the Plan or Confirmation Order in lieu of a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the New Common Stock and the Warrants and the shares of the New Common Stock (including any other securities issuable upon exercise of the Warrants) issued upon the exercise of the Warrants are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services. DTC may accept and conclusively rely upon the Plan or Confirmation Order in lieu of a legal opinion regarding whether the New Common Stock and/or the Warrants and/or shares of the New Common Stock (including any other securities issuable upon exercise of Warrants) issued upon the exercise of the Warrants are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

24.     <u>Cancellation of Existing Securities and Agreements</u>.

(a)     Except for the  purpose of evidencing a right to a distribution under the Plan and except as otherwise set forth in the Plan, including with respect to executory contracts

01:24025305.3

or unexpired leases that shall be assumed by the Reorganized Debtors, on the Effective Date, all agreements, instruments and other documents evidencing any Prepetition ABL Facility Claims, Prepetition Term Loan Claims, Unsecured Notes Claims or Parent Interests (other than Intercompany Interests that are not modified by the Plan) and any rights of any holder in respect thereof shall be deemed cancelled, discharged and of no force or effect, and the obligations of the Debtors thereunder shall be deemed fully satisfied, released and discharged.  Notwithstanding such cancellation and discharge, the Prepetition ABL Agreement, the Prepetition Term Loan Agreement, and the Unsecured Notes Indenture shall continue in effect solely to the extent necessary to (a) allow the holders of Allowed Prepetition ABL Claims, Allowed Prepetition Term Loan Claims, and Allowed Unsecured Notes Claims to receive Distributions under the Plan, (b) allow the Debtors, the Reorganized Debtors, the Prepetition ABL Agent, the Prepetition Term Loan Agent, the Unsecured Notes Indenture Trustee, and the Disbursing Agent to make post-Effective Date Distributions or take such other action pursuant to the Plan on account of the Allowed Prepetition ABL Claims, Allowed Prepetition Term Loan Claims, and Allowed Unsecured Notes Claims, and to otherwise exercise their rights and discharge their obligations relating to the interests of the holders of such Claims in accordance with the Plan, and (c) permit the Prepetition ABL Agent, the Prepetition Term Loan Agent, and the Unsecured Notes Indenture Trustee to appear in the Chapter 11 Cases, *provided* that nothing in Section **Error! eference source not found.** of the Plan shall effect the discharge of Claims pursuant to the Bankruptcy Code, this Order or the Plan or result in any liability or expense to the Reorganized Debtors.

(b)     In addition to the foregoing, the Unsecured Notes Indenture shall continue in effect to the extent necessary to (i) permit the Unsecured Notes Indenture Trustee to assert its

Unsecured Notes Indenture Trustee Charging Lien; (ii) allow the Unsecured Notes Indenture Trustee to maintain any right of indemnification, contribution, subrogation or any other claim or entitlement it may have under the Unsecured Notes Indenture; (iii) exercise its rights and obligations relating to the interests of its holders under the Unsecured Notes Indenture; (iv) permit the Unsecured Notes Indenture Trustee to perform any functions that are necessary to effectuate the powers outlined in Section 5.8 of the Plan. Except for the foregoing, the Unsecured Notes Indenture Trustee and its respective agents shall be relieved of all further duties and responsibilities related to the Unsecured Notes Indenture and related documents and the Plan, except with respect to such other rights of the Unsecured Notes Indenture Trustee that, pursuant to the Unsecured Notes Indenture, survive the termination of the Unsecured Notes Indenture. Subsequent to the performance by the Unsecured Notes Indenture Trustee of its obligations pursuant to the Plan, the Unsecured Notes Indenture Trustee and its agents shall be relieved of all further duties and responsibilities related to the Unsecured Notes Indenture and shall be discharged.

25.     <u>Cancellation of Liens</u>.  Except as otherwise specifically provided in the Plan, the Exit Facility Documents (including in connection with any express written amendment of any mortgage, deed of trust, Lien, pledge or other security interest under the Exit Facility Documents), or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including pursuant to Section 5.8(b) of the Plan, upon the indefeasible payment in full in Cash of an Other Secured Claim or ABL Facility Claim or upon the conversion or exchange in accordance with the Plan of the Prepetition Term Loan Claims into the consideration set forth in Section 4.4(c) of the Plan, any Lien securing an Other Secured Claim or ABL Facility Claim that is indefeasibly paid in full, in Cash, and any Lien securing a

Prepetition Term Loan Claim that is converted or exchanged in accordance with the Plan for the consideration set forth in Section 4.4(c) of the Plan, in each case, shall be deemed released and discharged, and the holder of such Other Secured Claim, ABL Facility Claim or Prepetition Term Loan Claim (or the Prepetition ABL Agent or Prepetition Term Loan Agent on behalf of the respective holders of such ABL Facility Claims and Prepetition Term Loan Claims) shall be authorized and directed to release any Collateral or other property of the Debtors (including any Cash collateral) held by such holder and to take such actions as may be requested by the Reorganized Debtors to evidence the release or discharge of such Lien, including the execution, delivery and filing or recording of such releases or discharges as may be requested by the Reorganized Debtors or may be required in order to terminate any related financing statements, mortgages, mechanic's liens or lis pendens, and the Reorganized Debtors and their designees shall be authorized to file UCC-3 termination statements and other release or discharge documentation (to the extent applicable) with respect thereto.

      26.    <u>Preservation of Rights of Action</u>.  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Debtors or the Reorganized Debtors, as applicable, retain and may enforce all rights to commence and pursue any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, as set forth in the Plan.  The Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  For the avoidance of doubt, the Debtors' failure to list any Causes of Action in the Disclosure Statement, the Plan, the Plan Supplement, or otherwise in no way limits the rights of the Reorganized Debtors as set forth

above.   No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as indication that the Debtors or Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against it.

27.    Subordination.  Except as otherwise expressly provided in the Plan, this Confirmation Order, and any other order of the Court:   (a) the classification and manner of satisfying all Claims and Interests under the Plan takes into consideration all subordination rights, whether arising by contract or under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise; (b) all subordination rights that a holder of a Claim or Interest may have with respect to any distribution to be made under the Plan, including any subordination rights or lien priority rights, shall be discharged and terminated and all actions related to the enforcement of such subordination rights shall be enjoined permanently; and (c) the distributions under the Plan to the holders of Allowed Claims and Interests will not be subject to payment of a beneficiary of such subordination rights, including any subordination rights or lien priority rights, or to levy, garnishment, attachment, or other legal process by a beneficiary of such terminated subordination rights.

28.    Assumption of Contracts and Leases.

(a)    Pursuant to Article VIII of the Plan, as of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Amount, all executory contracts and unexpired leases to which any of the Debtors are parties, and which have not expired by their own terms on or prior to the Effective Date, including Employment Arrangements (subject to Section 5.12 of the Plan), shall be deemed assumed except for any executory contract or unexpired lease that (i) previously has been assumed, assumed and assigned or rejected pursuant

to a Final Order of the Bankruptcy Court, (ii) is the subject of a separate motion filed by the Debtors on or before the Confirmation Date seeking to assume, assume and assign, or reject pursuant to section 365 of the Bankruptcy Code, or (iii) is the subject of a pending Assumption Dispute.  Subject to the occurrence of the Effective Date, entry of this Order by the Bankruptcy Court shall constitute approval of the assumptions of the Debtors' executory contracts and unexpired leases provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code, and all objections, if any, are overruled, unless resolved, adjourned or continued.  Each executory contract and unexpired lease assumed pursuant to the Plan shall vest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as modified by any order of the Bankruptcy Court providing for its assumption, or applicable laws.

(b)     From and after the Effective Date, notwithstanding anything to the contrary in the Plan or this Order, including Sections 10.2, 10.3, 10.4, 10.5 and 10.6 of the Plan, nothing in the Plan or this Order shall affect the respective obligations of the Reorganized Debtors and the applicable counterparty to any executory contract or unexpired lease assumed pursuant to the Plan, this Order or another order of the Bankruptcy Court to comply with the terms of such assumed executory contract or unexpired lease (as applicable), except as modified by any order of the Bankruptcy Court providing for its assumption, and be liable (when and if applicable) for all obligations arising under such executory contracts or unexpired leases that are not otherwise due and owing as of the Effective Date and thus not required to be asserted as a Cure Amount, including (A) amounts owed or accruing under such leases that are unbilled or not yet due as of the Effective Date, regardless of when such amounts or obligations accrued, on account of common area maintenance, insurance, taxes, utilities and similar charges, (B) any regular or periodic adjustment or reconciliation of charges under such unexpired leases that are

not due or have not been determined as of the Effective Date, (C) any percentage rent that comes

due under such unexpired leases, (D) post-assumption obligations under such unexpired leases,

(E) any obligations to indemnify the non-Debtor counterparty under such unexpired leases for

any claims of third parties pursuant to the terms of such unexpired leases, which are not known

or liquidated by the time of the Confirmation Hearing (and therefore not yet payable as a cure

cost pursuant to section 365(b)(1)(a) of the Bankruptcy Code), (F) any applicable obligations

relating to the maintenance, replacement, and/or repair of the subject premises, including those

related to environmental conditions, the roof, the parking lot and the heating, ventilation and air

conditioning systems of the subject premises, and such deferred maintenance, replacement and

repair obligations that may have arisen or accrued or continued to accrue over a period of time,

both before and after the assumption of any such unexpired lease, and (G) any obligations arising

under such unexpired leases as they come due, including between the Confirmation Date and the

Effective Date.  Other than with respect to Cure Amounts fixed in the ordinary course, through

resolution of objections filed with the Bankruptcy Court prior to the Effective Date or

specifically in connection with the Plan, all rights of the Debtors or Reorganized Debtors and the

other counterparties to any assumed unexpired lease to dispute amounts due thereunder are

preserved.  For the avoidance of doubt, Cure Amounts are only required to be asserted in the

ordinary course of business.  In addition, for the further avoidance of doubt, the rights of the

Reorganized Debtors and the non-Debtor parties under assumed unexpired leases shall not be

improved by this Order or the Plan relative to such rights as they existed before the Petition Date.

(c)    Notwithstanding anything in the Plan to the contrary, if there is an

Assumption Dispute pertaining to the assumption of an executory contract or unexpired lease,

and such dispute is not resolved within 30 days after the later of the Confirmation Hearing or the

date of the asserted Cure Amount that is disputed, either the Debtors (or the Reorganized Debtors) or the non-Debtor party or parties under such executory contract or unexpired leases may schedule such matter to be heard by the Bankruptcy Court upon at least 21 days' notice to the other party.  If the Debtors or the Reorganized Debtors, as applicable, elect to assume the executory contract or unexpired lease that is the subject of an Assumption Dispute following the adjudication of such Assumption Dispute by the Bankruptcy Court (which right shall not be altered by this Order or the Plan) or agreement of the parties, the Debtors or the Reorganized Debtors (as applicable) shall pay any Cure Amounts determined by the Bankruptcy Court or agreed by the parties in connection with such adjudicated or resolved Assumption Dispute within 10 calendar days of such adjudication or as otherwise provided in an order of the Bankruptcy Court or agreement of the parties.  To the extent that specific Cure Amounts have been asserted by a non-Debtor party to an unexpired lease or executory contract on or before the deadline fixed by the Bankruptcy Court to object to the assumption or rejection of executory contracts and unexpired leases under the Plan (as may have been extended for certain parties by written consent of the Debtors) and such asserted Cure Amounts reflect amounts that are owed on account of existing defaults under an executory contract or unexpired lease, then the Debtors shall, on or before the Effective Date, inform in writing the non-Debtor party to such executory contract or unexpired lease (which may be an email to counsel for the non-Debtor party) of any disputes concerning such asserted Cure Amounts and pay the undisputed portion of such Cure Amounts on the Effective Date or as soon as reasonably practicable thereafter.

(d)    Notwithstanding anything to the contrary in the Plan, in the event the Debtors seek to assign certain executory contracts or unexpired leases to Affiliates prior to the Effective Date, the Debtors must provide at least 14 days' notice to the non-Debtor counterparty

to such executory contract or unexpired lease and opportunity to object to such assignment, which notice and opportunity to object must include adequate assurance information for the specific proposed assignee entity that evidences the assignee's ability to perform under the contract or lease designated for assignment.

(e)    Puerto Rico Lease.  For the avoidance of doubt, the lease dated as of May 20, 1999, by and between DDR Escorial LLC, S.E., as successor-in-interest to Plaza Escorial Partners, S.E. (the "**Puerto Rico Landlord**"), and David's Bridal, Inc., as successor-in-interest to David's Bridal of Puerto Rico, Inc., for the premises located at Plaza Escorial, 65th Infantry Avenue, KM 6.1 Carolina, PR 00985 (the "**Puerto Rico Lease**"), which the Debtors assert was terminated before the Petition Date, is not assumed under the Plan; if it is determined that the Puerto Rico Lease did not terminate before the Petition Date, then the Puerto Rico Lease shall be deemed rejected under the Plan and the Debtors would be responsible for payment of the Puerto Rico Landlord's allowed claim, if any, under section 502(b)(6) of the Bankruptcy Code, subject to the Debtors' right to dispute the validity and amount of any claim by the Puerto Rico Landlord.  In addition, the Debtors dispute the amounts that have already been asserted by the Puerto Rico Landlord as being owed in relation to the Puerto Rico Lease.  To the extent that the dispute over the Puerto Rico Lease cannot be resolved consensually within 30 days after the Effective Date, either party may seek the resolution of such dispute by the Bankruptcy Court on at least 21 days' notice to the other party.

(f)    Ballard Landlords.  Notwithstanding any provision of the Plan or this Confirmation Order to the contrary, with respect to the unexpired leases to which one or more of the Debtors and ARC CTCHRNC001, LLC, ARC SSSDLLA001, LLC, Brixmor Operating Partnership LP, Centerpoint Development Company, L.L.C., Federal Realty Investment Trust,

Gateway Pinole Vista, LLC, MANANA-DCIT, LLC, MT San Antonio I, LLC, PGIM Real

Estate, R46 Realty Associates, L.P., Starwood Retail Partners, LLC, and The Macerich Company

(collectively, the "**Ballard Landlords**") are parties (collectively, the "**Ballard Leases**"), the

Debtors and the Ballard Landlords have agreed upon the Cure Amounts as set forth in a side

agreement (the "**Side Agreement**"), with the exception of $1,775.82 asserted for the unexpired

lease located at the Stirling Slidell Center in Slidell, LA, which remains subject to further

investigation by the parties (the "**Slidell Cure**"), and all rights are reserved to schedule the

matter to be heard by the Bankruptcy Court should the parties fail to reach an agreement on the

Slidell Cure within thirty (30) days of the Confirmation Date.  Notwithstanding, in full resolution

of the remaining outstanding items with respect to the objections filed by the Ballard Landlords

[Docket Nos. 229 and 235], the Debtors and the Ballard Landlords agree that the Ballard Leases

shall be assumed under the Plan, as of and subject to the Effective Date, and the Debtors or the

Reorganized Debtors, as applicable, shall not have the ability to reject, or alter, modify, or

supplement the treatment of a Ballard Lease at any time following the Confirmation Date for any

reason, notwithstanding any provision of the Plan or this Confirmation Order to the contrary,

except as otherwise consented to by the applicable Ballard Landlord.  The Debtors are authorized

to enter into the Side Agreement, and in the event of a dispute between any provision of the Plan

or this Confirmation Order, and the matters addressed by the Side Agreement, the Side

Agreement shall control.

   29. <u>Notice of Assumption</u>.  On November 30, 2018, the Debtors filed and

served the *Notice of Assumption of Executory Contracts and Unexpired Leases of Debtors and*

*Related Procedures* (the "**Assumption Notice**") [Docket No. 138].  The Assumption Notice

states the Debtors' intent to assume all executory contracts and unexpired leases.  Pursuant to the

Plan, all obligations or Cure Amounts relating to executory contracts and unexpired leases shall be paid in the ordinary course. Any counterparty to an executory contract or unexpired lease had 14 days from the service of the Assumption Notice to object to the proposed assumption. Any non-Debtor counterparty to an executory contract or unexpired lease that failed to object timely to the Assumption Notice, is deemed to have assented to assumption of the applicable executory contract or unexpired lease notwithstanding any provision thereof that purports to (i) prohibit, restrict or condition the transfer, assignment or sublease of such executory contract or unexpired lease, (ii) terminate or modify, or permit the termination or modification of, an executory contract or unexpired lease as a result of any direct or indirect transfer or assignment of the rights of the Debtors under such contract or lease or a change, if any, in the ownership or control as contemplated by the Plan, (iii) increase, accelerate or otherwise alter any obligations or liabilities of the Debtors or the Reorganized Debtors under such executory contract or unexpired lease, or (iv) create or impose a Lien upon any property or asset of the Debtors or the Reorganized Debtors, as applicable. Each such provision shall be deemed to not apply to the assumption of such executory contract or unexpired lease pursuant to the Plan, and, upon entry of this Order, non-Debtor counterparties shall forever be barred and enjoined from objecting to the Debtors' proposed assumption pursuant to the Plan or to the validity of the Debtors' assumption pursuant to the Plan (including with respect to the provision of adequate assurance of future performance) or taking actions prohibited by the foregoing or the Bankruptcy Code on account of the transactions contemplated by the Plan. For the avoidance of doubt, Cure Amounts shall be satisfied in accordance with Section 8.3 of the Plan.

30.    <u>Reservation of Rights in Favor of the United States</u>. Notwithstanding any provision in the Plan, this Order or the related Plan Documents and Agreements: nothing

discharges or releases the Debtors, the Reorganized Debtors or any non-Debtor from any right, claim, liability or cause of action of the United States, or impairs the ability of the United States to pursue any claim, liability, right, defense or cause of action against any Debtor, Reorganized Debtor or non-Debtor.  Contracts, purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights agreements or other interests of or with the United States shall be, subject to any applicable legal or equitable rights or defenses of the Debtors or Reorganized Debtors under applicable non-bankruptcy law, paid, treated, determined and administered in the ordinary course of business as if the Debtors' bankruptcy cases were never filed and the Debtors and Reorganized Debtors shall comply with all applicable non-bankruptcy law.  All claims, liabilities, rights, causes of action or defenses of or to the United States shall survive the Chapter 11 Cases as if they had not been commenced and be determined in the ordinary course of business, including in the manner and by the administrative or judicial tribunals in which such rights, defenses, claims, liabilities or causes of action would have been resolved or adjudicated if the Chapter 11 Cases had not been commenced; provided that nothing in the Plan or this Order shall alter any legal or equitable rights or defenses of the Debtors or the Reorganized Debtors under non-bankruptcy law with respect to any such claim, liability or cause of action.  Without limiting the foregoing, for the avoidance of doubt: (i) the United States shall not be required to file any proofs of claim or administrative expense claims in the Chapter 11 Cases for any right, claim, liability, defense or cause of action; (ii) nothing shall affect or impair the exercise of the United States' police and regulatory powers against the Debtors, the Reorganized Debtors or any non-Debtor; (iii) nothing shall be interpreted to set cure amounts or to require the United States to novate or otherwise consent to the transfer of any federal or state contracts, purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights, agreements or

01:24025305.3

other interests; (iv) nothing shall affect or impair the United States' rights and defenses of setoff and recoupment, or ability to assert setoff or recoupment against the Debtors or the Reorganized Debtors and such rights and defenses are expressly preserved; (v) nothing shall constitute an approval or consent by the United States without compliance with all applicable legal requirements and approvals under non-bankruptcy law, and (vi) nothing shall relieve any party from compliance with all licenses and permits in accordance with non-bankruptcy law.

31.     <u>Reservation of Rights in Favor of Texas Comptroller of Public Accounts</u>. Notwithstanding anything to the contrary in the Plan or Confirmation Order, nothing in the Plan or Confirmation Order: (i) releases any person or entity other than the Debtors, the Debtors' Bankruptcy Estate, the Reorganized Debtors, or the Reorganized Debtors' assets from any Claim or cause of action held by the Texas Comptroller of Public Accounts; or (ii) enjoins, limits, impairs or delays the Texas Comptroller of Public Accounts from commencing or continuing any Claim, suit, action, proceeding, cause of action, or investigation against any person or entity other than the Debtors, the Debtors' bankruptcy Estates, the Reorganized Debtors, or the Reorganized Debtors' assets.  Moreover, nothing in the Plan or in the Confirmation Order shall discharge, release, enjoin or otherwise bar any valid right of setoff or recoupment of the Texas Comptroller of Public Accounts.

32.     <u>Conditions to Effective Date</u>.  The Plan shall not become effective unless and until the conditions set forth in Section 9.2 of the Plan have been satisfied or waived pursuant to Section 9.3 of the Plan.  In the event that one or more of the conditions specified in Section 9.2 of the Plan have not occurred and the Effective Date has not occurred on or before the first Business Day that is more than 60 days after the date on which this Order is entered or by such later date as set forth by the Debtors in a notice filed with the Bankruptcy Court prior to

the expiration of such period, the Plan shall be null and void in all respects and nothing contained

in the Plan or the Disclosure Statement shall (a) constitute a waiver or release of any Claims

against or any Interests in the Debtors or claims by the Debtors; (b) prejudice in any manner the

rights of any Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking by

the Debtors, any of the Supporting Term Lenders, the Crossover Holder, the Supporting

Noteholders or any other Entity.

33.    <u>Professional Compensation</u>.    All Entities seeking an award by the

Bankruptcy Court of Professional Fee Claims shall file and serve on counsel for the Reorganized

Debtors, the U.S. Trustee, counsel for the Supporting Term Lenders, counsel for the Crossover

Holder, counsel for the Supporting Noteholders, and such other Entities who are designated by

the Bankruptcy Rules, this Order, or other order of the Bankruptcy Court, on or before the date

that is 45 days after the Effective Date, their respective first and final applications for allowance

of compensation for services rendered and reimbursement of expenses incurred from the Petition

Date through the Effective Date.  Objections to any Professional Fee Claims must be filed and

served on counsel for the Reorganized Debtors, counsel for the Supporting Term Lenders,

counsel for the Crossover Holder, counsel for the Supporting Noteholders, and the requesting

party no later than 21 calendar days after the filing of the final applications for compensation or

reimbursement (unless otherwise agreed by the party requesting compensation of a Professional

Fee Claim).  Allowed Professional Fee Claims shall be paid in full, in Cash, in such amounts as

are Allowed by the Bankruptcy Court (a) upon the later of (i) the Effective Date, and (ii) the date

upon which an order relating to any such Allowed Professional Fee Claim is entered, in each

case, as soon as reasonably practicable, or (b) upon such other terms as may be mutually agreed

upon between the holder of such an Allowed Professional Fee Claim and the Debtors or the

Reorganized Debtors, as applicable.  On or about the Effective Date, holders of Professional Fee

Claims shall provide a reasonable estimate of their Professional Fee Claims incurred in rendering

services to the Debtors or the Estates as of the Effective Date; provided that such estimate shall

not be deemed to limit the amount of the fees and expenses that are the subject of the

Professional's request for payment of Professional Fee Claims.  The Debtors or the Reorganized

Debtors shall either escrow or separately reserve for and segregate such estimated amounts for

the benefit of the holders of the Professional Fee Claims until the fee applications related thereto

are resolved by order of the Bankruptcy Court or agreement of the parties.  In addition, to the

extent that Evercore Group L.L.C. has not been retained by the Debtors before the Effective

Date, the Debtors shall escrow the amount of any unpaid fee claims of Evercore Group L.L.C.

pending resolution of the disputes concerning its retention application.  The Reorganized Debtors

are authorized to pay compensation or services rendered or reimbursement of expenses incurred

after the Effective Date in the ordinary course and without the need for Bankruptcy Court

approval.

34.    Discharge of Claims and Termination of Interests.  Subject to Paragraph

39 of this Order, upon the Effective Date and in consideration of the distributions to be made

under the Plan, except as otherwise expressly provided in the Plan or this Order, each holder (as

well as any representatives, trustees or agents on behalf of each holder) of Claims or Interests

and any affiliate of such holder shall be deemed to have forever waived, released and discharged

the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from

any and all Claims, Interests, rights and liabilities that arose prior to the Effective Date.  Upon

the Effective Date, all such Entities shall be forever precluded and enjoined, pursuant to section

524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or

terminated Interest in the Debtors against the Debtors, Reorganized Debtors, or any of its or their

assets or property, whether or not such holder has filed a proof of Claim and whether or not the

facts or legal bases therefor were known or existed prior to the Effective Date.

35.    Injunction, Release and Exculpation Provisions.  Subject to Paragraph 39

of this Order, all injunctions and  releases set forth in the Plan, including those contained in

Sections 10.5 and 10.6 of the Plan, are approved and shall be effective and binding on all persons

and Entities, to the extent provided therein, as of the Effective Date; provided that nothing in this

Order or in the Plan shall in any way limit, reduce or otherwise bar, except to the extent limited

by the Bankruptcy Code, including section 502(b)(6), an otherwise valid and enforceable right of

setoff, subrogation or recoupment against the Debtors; provided further that notwithstanding

anything to the contrary in the Plan, the injunction provided for under Section 10.5 of the Plan

shall not take effect until the occurrence of the Effective Date.  All exculpation provisions set

forth in the Plan, including those contained in Section 10.7 of the Plan, are approved and

authorized to the fullest extent permitted under section 1125(e) of the Bankruptcy Code.

36.    Retention of Causes of Action/Reservation of Rights.  Except as otherwise

provided in the Plan, including in Sections 10.5, 10.6 and 10.7 of the Plan, nothing contained in

the Plan or this Order shall be deemed to be a waiver or relinquishment of any rights, claims,

Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the

Debtors had immediately prior to the Effective Date on behalf of the Estates or of themselves in

accordance with any provision of the Bankruptcy Code or any applicable nonbankruptcy law,

including any affirmative Causes of Action against parties with a relationship with the Debtors.

The Reorganized Debtors shall have, retain, reserve and be entitled to assert all such claims,

Causes of Action, rights of setoff or recoupment, and other legal or equitable defenses as fully as

if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights in respect of any Causes of Action may be asserted after the Confirmation Date and the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced. Notwithstanding the foregoing, the Debtors and the Reorganized Debtors shall not retain any Claims or Causes of Action released pursuant to Sections 10.5, 10.6, and 10.7 of the Plan against the Released Parties or arising under chapter 5 of the Bankruptcy Code (except that such Claims or Causes of Action may be asserted as a defense to a claim in connection with the claims reconciliation and objection procedures pursuant to section 502(d) of the Bankruptcy Code or otherwise).

37.    <u>Terms of Injunctions or Stay</u>.    Subject to Paragraph 39 of this Order, unless otherwise provided in the Plan or in a Final Order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, are hereby approved or confirmed and shall remain in full force and effect until the later of the Effective Date or the date indicated in the order providing for such injunction or stay.

38.    <u>Injunction Against Interference with Plan</u>.    Subject to Paragraph 39 of this Order, upon entry of this Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.    Except as expressly provided in the Plan, this Order or a separate order of the Bankruptcy Court or as agreed to by the Debtors and a holder of a Claim against or Interest in the Debtors, all Entities who have held, hold, or may hold Claims against or Interests in any or all of the Debtors (whether proof of such Claims or Interests has been filed or not and

whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are permanently enjoined, on and after the Effective Date, solely with respect to any Claims, Interests, and Causes of Action that will be or are extinguished, discharged or released pursuant to the Plan from (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Released Parties or the property of any of the Released Parties, (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Released Parties or the property of any of the Released Parties, (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Released Parties or the property of any of the Released Parties, (iv) asserting any right of setoff, directly or indirectly, against any obligation due the Released Parties or the property of any of the Released Parties, except as contemplated or allowed by the Plan, and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.  By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in Section 10.5 of the Plan.  The injunctions in Section 10.5 of the Plan shall extend to any successors of the Debtors and the Reorganized Debtors and their respective property and interests in property.

01:24025305.3

39.    <u>Limitation on Discharge and Modification of Automatic Stay and Injunction for Prepetition Actions</u>.  Notwithstanding anything to the contrary in the Plan or in this Order, (a) each Unimpaired Claim arising prior to the Effective Date (including Cure Amounts and Claims arising out of or relating to the rejection of an unexpired non-residential real property lease) of the Plan, shall not be deemed settled, satisfied, resolved, released, discharged, barred or enjoined by any provision of the Plan or any Definitive Documents as against the Debtors or the Reorganized Debtors, and (b) the property of the Estates that vests in the Reorganized Debtors pursuant to Section 10.1 of the Plan shall not be free and clear of such Unimpaired Claim, in each case, until such Unimpaired Claim has been (x) paid in full in accordance with applicable law, or on terms agreed to between the holder of such Claim and the Debtors or the Reorganized Debtors, or in accordance with the terms and conditions of the particular transaction giving rise to such Unimpaired Claim or (y) otherwise satisfied or disposed of as determined by a court of competent jurisdiction.  The Debtors, the Reorganized Debtors and any other Entity shall retain all defenses, counterclaims, rights of setoff and rights of recoupment, if any, as to Unimpaired Claims.  For the avoidance of doubt, the foregoing limitation shall not apply to any Claims or Causes of Action held by the Debtors, the Estates or the Reorganized Debtors that are released pursuant to Section 10.6(a) of the Plan (the "**Debtor Released Claims**").  Such Debtor Released Claims shall be deemed settled, satisfied, resolved, released, discharged, barred and/or enjoined by the applicable provisions under, and pursuant to the express terms of, the Plan and the Definitive Documents on the Effective Date.  For the avoidance of doubt, notwithstanding any other provision in this Order or the Plan, on or after the Effective Date, the injunction in Section 10.5 of the Plan shall not apply to the action entitled *Jenny Yoo Collection, Inc. v. David's Bridal, Inc. and Clayton, Dubilier & Rice, LLC*, U.S.

District Court for the Southern District of New York, Case No. 18-09926, and the injunction in Section 10.5(b) and (c) of the Plan shall not apply to (i) Jenny Yoo Collection, Inc., (ii) Cumberland Avenue Plaza, L.L.C., (iii) the holder of Unsecured Notes who exercised the opt-out election on its Ballot as indicated on the Voting Certification.  Further, nothing in the Plan, nor the entry of this Order, shall prejudice any rights of Jenny Yoo Collection, Inc. to file and pursue a motion to lift the stay with respect to its claims and the aforementioned lawsuit.

40.    <u>Survival of Debtors' Indemnification Obligations</u>.  Pursuant to Section 8.4 of the Plan, subject to the occurrence of the Effective Date, any obligations of the Debtors pursuant to their corporate charters, bylaws, limited liability company agreements or other organizational documents to indemnify current and former officers, directors, agents, and/or employees with respect to all present and future actions, suits and proceedings against the Debtors or such directors, officers, agents and/or employees, based upon any act or omission for or on behalf of the Debtors, shall not be discharged or impaired by confirmation of the Plan; provided, that the Reorganized Debtors shall not indemnify directors of the Debtors for any Claims or Causes of Action arising out of or relating to any act or omission that constitutes intentional fraud, gross negligence or willful misconduct.  All such obligations shall be deemed and treated as executory contracts to be assumed by the Debtors under the Plan and shall continue as obligations of the Reorganized Debtors.  Any claim based on such obligations shall not be a Disputed Claim or subject to any objection by reason of section 502(e)(1)(B) of the Bankruptcy Code.  None of the Reorganized Debtors shall amend and/or restate their respective governance documents before or after the Effective Date to terminate or adversely affect any obligations to provide such indemnification rights or such directors', officers', employees', or agents' indemnification rights.  In addition, after the Effective Date, the Reorganized Debtors

shall not terminate or otherwise reduce the coverage under any directors' and officers' insurance policies (including any "tail policy") in effect or purchased as of the Petition Date, and all members, managers, directors, and officers who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy, regardless of whether such members, managers, directors, and/or officers remain in such positions after the Effective Date, in each case, to the extent set forth in such policies.  On the Effective Date, all guarantees, indemnities or other credit support provided by a Debtor in support of the primary obligations of another Debtor described in Section 8.4(a) of the Plan shall be Unimpaired by the Plan and Reinstated to their position immediately prior to the Petition Date.

41.    <u>Survival of Debtor and Non-Debtor Lease Guarantee Obligations</u>. Notwithstanding anything in the Plan or this Order, or the releases contained in Article X of the Plan, on the Effective Date, (a) all guarantees, indemnities or other credit support provided by a Debtor in support of the obligations under an assumed lease of another Debtor shall be unaffected by the Plan, and (b) any liability or obligation of any non-Debtor third party to any landlord arising under or in connection with an assumed or rejected unexpired nonresidential real property lease shall remain unaffected.

42.    <u>Insurance Policies</u>.

(a)    Pursuant to Section 8.5 of the Plan, on the Effective Date, all insurance policies (including all directors' and officers' insurance policies and tail coverage liability insurance policies) pursuant to which any Debtor has any obligation in effect as of the date of the Confirmation Order and any related agreements, documents or instruments (collectively, the "**Insurance Contracts**") shall be deemed and treated as executory contracts pursuant to the Plan

01:24025305.3

and shall be assumed by the respective Debtors and the Reorganized Debtors and shall continue in full force and effect thereafter in accordance with their respective terms.  All other insurance policies shall vest in the Reorganized Debtors.

(b)     On and after the Effective Date, the Reorganized Debtors shall become and remain liable for all of the Debtors' obligations under the Insurance Contracts, regardless of whether such obligations arise before or after the Effective Date, without the requirement or need for any insurer to file a proof of claim or an Administrative Expense Claim, or object to any Cure Amount.

(c)     To the extent applicable, the automatic stay arising under section 362 of the Bankruptcy Code and the injunctions provided for in Section 10.5 of the Plan shall be deemed lifted without further order of the Bankruptcy Court, solely to permit: (i) claimants with valid workers' compensation claims or with valid direct action claims against an insurer under applicable non-bankruptcy law to proceed with their claims; (ii) the insurers to administer, handle, defend, settle and/or pay, in the ordinary course of business and without further order of the Bankruptcy Court, (A) workers' compensation claims, (B) claims where a claimant asserts a direct claim against any insurer under applicable non-bankruptcy law, or where an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay or the injunctions set forth in Article X of the Plan to proceed with its claim, and (C) all costs in relation to each of the foregoing; (iii) any insurer to draw against any or all of the collateral or security provided by or on behalf of the Debtors and/or the Reorganized Debtors, as applicable, and/or apply such proceeds to the obligations of the Debtors and/or the Reorganized Debtors, as applicable, under the Insurance Contracts; and (iv) the insurers to cancel any Insurance

01:24025305.3

Contracts, and take other action relating thereto and to  the extent permitted under applicable non-bankruptcy law and in accordance with the terms of the Insurance Contracts.

43.    <u>Intellectual Property Licenses and Agreements</u>.  All intellectual property contracts, licenses, royalties or other similar agreements to which the Debtors have any rights or obligations in effect as of the Confirmation Date shall be deemed and treated as executory contracts pursuant to the Plan and shall be assumed by the respective Debtors and shall continue in full force and effect unless any such intellectual property contract, license, royalty or other similar agreement otherwise is specifically rejected pursuant to a separate order of the Bankruptcy Court or is the subject of a separate rejection motion filed by the Debtors (with the consent of the Required Supporting Term Lenders and the Crossover Holder) in accordance with Section 8.1 of the Plan.  Unless otherwise noted under the Plan, all other intellectual property contracts, licenses, royalties, or other similar agreements shall vest in the Reorganized Debtors and the Reorganized Debtors may take all actions as may be necessary or appropriate to ensure such vesting as contemplated in the Plan.

44.    <u>Employee Matters</u>.

(a)    Except as provided in Section 5.12(c) of the Plan, on the Effective Date, the Reorganized Debtors shall be deemed to have assumed all Employee Arrangements.  None of the Benefit Plans provide for retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code) or is a defined benefit pension plan or multi-employer pension plan.  The consummation of the Plan shall not be treated as a change in control or change of control or other similar transaction under any Employment Arrangement.

(b)    Any Parent Interests granted prior to the Effective Date to a current or former employee, officer, director or contractor under an Employee Arrangement or otherwise

shall be deemed cancelled on the Effective Date.  For the avoidance of doubt, if a Benefit Plan or an Employee Arrangement is assumed and the Benefit Plan or Employee Arrangement provides in part for an award or potential award of Interests in the Debtors, such Benefit Plan or Employment Arrangement shall be assumed in all respects other than the provisions of such agreement relating to Interest awards.

45.    U.S. Trustee Matters. Notwithstanding anything set forth in the Plan or this Order to the contrary:

(a)    the U.S. Trustee's right to object to any filed proofs of claim or requests for payment of Administrative Expense Claims filed with the Bankruptcy Court is reserved;

(b)    confirmation of the Plan shall not be deemed to be approval of the terms and conditions of the Management Incentive Plan in any respect; provided that the foregoing shall not (i) prejudice or be deemed to prejudice the Reorganized Debtors' rights to enter into the Management Incentive Plan after the Effective Date, (ii) otherwise modify Sections 1.73 or 5.12(b) of the Plan, or (iii) modify the aggregate allocation of the New Common Stock to be reserved for issuance under the Management Incentive Plan as set forth in the Plan; and

(c)    after the occurrence of the Effective Date, the Reorganized Debtors shall serve all documents that they file in the Chapter 11 Cases on all parties whose rights are affected by such documents.

46.    Plan Implementation.

(a)    In accordance with section 1142 of the Bankruptcy Code and any provisions of the business corporation law of any applicable jurisdiction (collectively, the "**Reorganization Effectuation Statutes**"), including section 303 of the Delaware General Corporation Law, without further action by the Bankruptcy Court or the equity security holders,

officers, members, managers or directors of any Debtor or Reorganized Debtor, the Debtors and the Reorganized Debtors, as well as the officers of the appropriate Debtor or Reorganized Debtor are authorized to: (i) take any and all actions necessary or appropriate to implement, effectuate and consummate the Plan, the Plan Documents and Agreements, the Definitive Documents, this Order and the transactions contemplated thereby or hereby, including the transactions identified in Section 5.10 of the Plan; and (ii) execute and deliver, adopt or amend, as the case may be, any contracts, instruments, releases, agreements and documents necessary to implement, effectuate and consummate the Plan.

(b)     Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan, the Plan Documents and Agreements, and the Definitive Documents, including, but not limited to, (i) the adoption or assumption, as appropriate, of any executory contracts, (ii) selection of the managers, directors and officers, as appropriate, for the Reorganized Debtors, (iii) issuances and distributions of the New Common Stock (including the Supplemental Securities) and the Warrants, and (iv) entry into any contracts, instruments, releases, agreements and documents (including the Exit Facility Documents) necessary to implement, effectuate and consummate the Plan, shall be effective prior to, on, or after the Effective Date pursuant to this Order, without further notice, application to, or order of the Bankruptcy Court, or further action by the respective managers, officers, directors, members or equity holders of the Debtors or the Reorganized Debtors.

(c)     To the extent that, under applicable non-bankruptcy law, any of the foregoing actions would otherwise require the consent or approval of the equity security holders, members, managers or directors of any of the Debtors or the Reorganized Debtors, this Order shall, pursuant to section 1142 of the Bankruptcy Code and the Reorganization Effectuation

Statutes (including section 303 of the Delaware General Corporation Law), constitute such consent or approval, and such actions are deemed to have been taken by unanimous action of the directors, managers, members and equity holders of the appropriate Debtor or Reorganized Debtor, as applicable.

(d)    Each Governmental Unit is hereby authorized to accept any and all documents, mortgages, security agreements, financing statements and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan, the Exit Facility Documents, the New Common Stock Documents, the Warrant Documents, the Amended Organizational Documents and this Order.

(e)    All implementation steps necessary for consummation of the Plan taken prior to entry of this Order are hereby authorized.

47.    <u>Intercompany Claims</u>.  On the Effective Date, or as soon as practicable thereafter, all Intercompany Claims shall be paid, adjusted, continued, settled, Reinstated, discharged, contributed to capital, or eliminated, in each case to the extent determined to be appropriate by the Debtors (with the consent of the Required Supporting Term Lenders and the Crossover Holder) or the Reorganized Debtors, as applicable, subject to the terms of the Restructuring Transactions.

48.    <u>Documents, Mortgages, and Instruments</u>.    Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan (including the Amended Organizational Documents and the Exit Facility Documents) and this Order.

49.    <u>Retention of Jurisdiction</u>.  On and after the Effective Date, pursuant to sections 105(c) and 1142 of the Bankruptcy Code, the Bankruptcy Court, except as otherwise provided in the Plan or this Order, shall, to the extent permitted by applicable law, retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, including jurisdiction over the matters set forth in Article XI of the Plan; *provided* that on and after the Effective Date and after the consummation of the following agreements or documents, the Bankruptcy Court shall not retain jurisdiction over matters arising out of or related to each of the Exit Facility Documents, the Amended Organizational Documents, the New Stockholders' Agreement and the Warrant Agreement, and the Exit Facility Documents, the Amended Organizational Documents, the New Stockholders' Agreement and the Warrant Agreement shall be governed by the respective jurisdictional provisions therein.

50.    <u>Post-Confirmation Modifications</u>.  Without the need for further order or authorization of the Court, the Debtors are authorized and empowered, prior to the Effective Date, to make any and all modifications to any and all documents that are necessary to effectuate the Plan that do not materially modify the terms of such documents and are consistent with the Plan (subject to any applicable consents or consultation rights set forth therein) and the Restructuring Support Agreement (subject to any applicable consents or consultation rights set forth therein).  Subject to the requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, and those restrictions on modifications set forth in the Plan and the Restructuring Support Agreement, the Debtors expressly reserve their respective rights to revoke or withdraw, or to alter, amend, or modify materially the Plan, one or more times after Confirmation and prior to the Effective Date, and, to the extent necessary, may, prior to the Effective Date, initiate proceedings in the Court to so alter, amend, or modify the Plan, or

remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Section 12.5 of the Plan and subject to the terms of the Restructuring Support Agreement.

51.    <u>Provisions of Plan and Confirmation Order Nonseverable and Mutually Dependent</u>.  Each provision of the Plan is:  (a) valid and enforceable in accordance with its terms; (b) integral to the Plan and may be deleted or modified only prior to the Effective Date and with the Debtors' consent, consistent with the terms set forth in the Plan, the Plan Supplement and the Restructuring Support Agreement; and (c) nonseverable and mutually dependent.

52.    <u>Headings</u>.  Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

53.    <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement or a Definitive Document provides otherwise, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

54.    <u>Applicable Non-Bankruptcy Law</u>.  Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Order, the Plan and related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

55.    <u>Waiver of Filings</u>.  Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with the Bankruptcy Court or the Office of the U.S. Trustee (except for monthly operating reports or any other post-confirmation reporting obligation to the U.S. Trustee) is hereby waived as to any such list, schedule or statement not filed as of the Confirmation Date.

56.    <u>Compliance with Tax Requirements</u>.  In connection with the Plan, to the extent applicable, the Reorganized Debtors and the Disbursing Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including at the Debtors', Reorganized Debtors', and Disbursing Agent's option, liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes and withholding distributions pending receipt of information necessary to facilitate such distributions. The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

57.    <u>Exemption from Certain Taxes</u>.  Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan and the issuance, transfer, or exchange of notes or debt or equity securities under the Plan shall not be subject to any law imposing a stamp tax or similar tax, and appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and are authorized

01:24025305.3

to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.  All recording and filing officers and clerks wherever located are authorized to accept for filing or recording upon presentation thereof, any mortgage, deed of trust or other instrument of transfer related to the transactions described in the Plan without payment of any stamp tax or similar tax.  The Debtors are hereby authorized to deliver a notice or short form of this Confirmation Order to any state recording officer to the effect that such officer may accept for filing such security interests without charging any stamp tax or other similar tax or fee within the scope of section 1146(a) of the Bankruptcy Code.

58.     _Governmental Approvals Not Required_.  Subject to Paragraph 30 of this Order, this Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and the Disclosure Statement, any documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

59.     _Resolution of Comenity Capital Bank's Objection._   Notwithstanding anything to the contrary in this Order or the Plan, in full resolution of the objections of Comenity Capital Bank ("Comenity") as set forth in _Comenity Capital Bank's Limited Objection and Reservation of Rights with Respect to (1) the Notice of Assumption of Executory Contracts and Unexpired Leases of Debtors and Related Procedures and (2) the Proposed Joint Prepackaged Plan of Reorganization under Chapter 11 of the Bankruptcy Code_ (D.I. 246):

(a)     as of and subject to the occurrence of the Effective Date, the Private Label Credit Card Plan Agreement dated May 27, 2010, between David's Bridal, Inc. and Comenity (as

amended, the "**Program Agreement**") is assumed by David's Bridal, Inc. (including such Entity as reorganized pursuant to the Plan; individually and/or collectively, "**David's**"), in accordance with 11 U.S.C. § 365(a), and David's shall remain liable for all obligations and amounts due Comenity under the Program Agreement and all of Comenity's rights, interests and defenses under the Program Agreement and/or applicable law (including setoff, recoupment and indemnification) shall not be affected, modified, waived or impaired in any way and are expressly preserved and reserved, while recognizing that Comenity is not now claiming nor shall it in the future claim that David Bridal's filing for bankruptcy on November 19, 2018 constituted a default of the Program Agreement;

   (b) within fourteen (14) business days after Effective Date, David's shall cause the issuance of a letter of credit on commercially reasonable terms for the benefit of Comenity in the amount of $3 million and in form and substance reasonably acceptable to Comenity and David's (the "**LC**") as adequate assurance and to protect Comenity in connection with any cardholder dispute and/or failure of a cardholder to pay amounts due Comenity arising from or related to the fact that the past or future underlying transaction was a Pre-Funded Special Order. A "**Pre-Funded Special Order**" is a purchase of merchandise in which the cardholder does not receive such merchandise at the time of the transaction. The LC shall be issued pursuant to and in accordance with the terms of the Exit ABL Facility. David's will ensure the LC (or a renewed or replacement letters of credit of equivalent amount and terms) remains in place until the date that is six (6) months after the termination or expiration of the Program Agreement's term, as such term may be extended from time to time. For the avoidance of doubt, if the LC is not received by Comenity within fourteen (14) business days after the Effective Date, then the failure to deliver the LC shall be an event of default under the Program Agreement;

01:24025305.3

(c)    David's processing of Pre-Funded Special Orders shall not be treated as a default of the Program Agreement or Comenity's Operating Procedures so long as the LC remains in full force and effect; and

(d)    Except as set forth in this paragraph 59, nothing in the Plan or this Order shall affect any liability or defenses thereto of David's for obligations and amounts coming due at any time under the Program Agreement, and David's rights are fully preserved in respect thereof.

60.    <u>Notice of Entry of Confirmation Order</u>.    On or before the 14th day following the date of entry of this Order, the Debtors shall serve notice of entry of this Order (which may be combined with the Notice of Effective Date (as defined below)) pursuant to Bankruptcy Rules 2002(f)(7), 2002(k) and 3020(c) on all known Creditors and Interest holders, the U.S. Trustee and other parties in interest, by causing notice of entry of this Order (the "**Notice of Confirmation**") to be delivered to such parties by first-class mail, postage prepaid. The Debtors shall also post the Notice of Confirmation on the website maintained by Donlin, Recano & Company, Inc., at www.donlinrecano.com/davidsbridal (the "**Case Website**"). The notice described herein is adequate under the circumstances, and no other or further notice is necessary.

61.    <u>Notice of Effective Date</u>.    On the Effective Date, the Debtors shall file a notice of the occurrence of the Effective Date (the "**Notice of Effective Date**") with the Bankruptcy Court. As soon as practicable after the occurrence of the Effective Date, the Reorganized Debtors shall serve the Notice of Effective Date on all holders of Claims and Interests, the U.S. Trustee, and other parties in interest, by causing the Notice of Effective Date

to be delivered to such parties by first-class mail, postage prepaid. The Reorganized Debtors shall also post the Notice of Effective Date on the Case Website.

62.    [RESERVED]

63.    Termination of the Restructuring Support Agreement. On the Effective Date, the Restructuring Support Agreement will terminate in accordance with Section 6 thereof.

64.    [RESERVED]

65.    Waiver of Section 341(a) Meeting. As of the Confirmation Date, the Section 341(a) Meeting has not been convened. The convening of the Section 341(a) Meeting is hereby waived in accordance with the Scheduling Order.

66.    Termination of Challenge Period. The time within which to commence a Challenge (as defined in the Final DIP Order) is terminated as of the date hereof, and the stipulations, admissions, findings, and release contained in the Final DIP Order shall be binding on the Debtors' estates and all parties in interest.

67.    Final Order. This Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

68.    Inconsistency. To the extent of any inconsistency between this Order and the Plan, this Order shall govern.

69.    No Stay of Confirmation. The requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of 14 days after entry of the order are hereby waived. This Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(g), 6006(d), 7062 or otherwise.

70.    No Waiver. The failure to specifically include any particular provision of the Plan in this Order shall not diminish the effectiveness of such provision nor constitute a

01:24025305.3

waiver thereof, it being the intent of the Bankruptcy Court that the Plan is confirmed in its entirety.

LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE

01:24025305.3    **Dated: January 4th, 2019**
**Wilmington, Delaware**